# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

## AT BRIDGEPORT

FILED

JAN 26   4 55 PH '04

U.S. DISTRICT COURT
BRIDGEPORT, CONN.
CLERK

| | |
|---|---|
| HADLEY MACPHERSON (EGAN) | NO.  3:02CV1973 JCH |
| PLAINTIFF | |
| VS. | JANUARY 24, 2004 |
| DR. JOHN PERSING | CIVIL ACTION |
| and | |
| YALE NEW HAVEN HOSPITAL | |
| and | AMENDED COMPLAINT |
| YALE UNIVERSITY | |
| DEFENDANTS | |
| YALE MEDICAL GROUP *hm* | JURY TRIAL DEMANDED |

## Allegation of Diversity Jurisdiction

1.        The plaintiff alleges the following to the best of her belief and knowledge:

2.        The plaintiff claims diversity jurisdiction under 28 U.S.C. 1332, and alleges:

3.        The plaintiff, Hadley Macpherson, (Lisa Egan), is a citizen of the state of Pennsylvania.

4.        The plaintiff currently resides at 3710 Hancock Lane, Doylestown, Pennsylvania, and receives her mail at P.O. Box 501, Lahaska, Pennsylvania, 18931.

5.        At the time of the events which form the basis of this Complaint, the plaintiff resided at 2597 Street Road, Lahaska, Pennsylvania, and received her mail at P.O. Box 501, Lahaska, Pennsylvania, 18931.

6.        This suit, filed in November 2002, was filed in the previous legal name of "Lisa Egan", along with "Hadley Macpherson", as all medical documents drafted at the time of the events in question were under the legal name of "Lisa Egan", and the plaintiff's medical and automobile insurance policies still referred to the plaintiff as "Lisa Egan".

7.        The plaintiff, historically known as "Hadley", though carrying the given first name of "Lisa", dropped the un-used "Lisa" along with the married name of "Egan" following her 1999 divorce.

8.        The defendant, Dr. John Persing, is a citizen of the state of Connecticut.

9.        The defendant, Dr. John Persing, currently resides in the state of Connecticut, but his personal home street address is unknown, as it is unlisted.

10        The defendant, Dr. John Persing, is a surgeon licensed to practice medicine in the state of Connecticut.

1

11.        The defendant, Dr. John Persing, is employed by the Yale Medical Group, Yale University, and Yale-New Haven Hospital, which are all located in New Haven Connecticut.

12.        The defendant, Dr. John Persing, practices medicine on a daily basis at the Yale Physicians Building, located at 800 Howard Avenue, New Haven, Connecticut, at Yale University, located at 333 Cedar Street, New Haven, Connecticut, and at Yale-New Haven Hospital, located at 20 York Street, New Haven, Connecticut.

13.        The defendant, Yale Medical Group, is a citizen of the state of Connecticut.

14.        The defendant, the Yale Medical Group is corporately headquartered at 300 George Street, New Haven, Connecticut, and operates its business through its medical offices and the physicians it employs at the Yale Physicians Building located at 800 Howard Avenue, New Haven Connecticut..

15.        The defendant, Yale University, is a citizen of the state of Connecticut.

16.        The defendant, Yale University, is corporately headquartered at 333 Cedar Street, New Haven, Connecticut, and operates its business of the teaching and practice of medicine in New Haven, Connecticut, at both the Yale Physicians Building located at 800 Howard Avenue, and Yale-New Haven Hospital, located at 20 York Street, in New Haven Connecticut.

17.        The defendant, Yale-New Haven Hospital, is a citizen of the state of Connecticut.

18.        The defendant, Yale-New Haven Hospital, is corporately headquartered at 20 York Street, New Haven, Connecticut, and operates its business of providing medical treatment through its facilities and the physicians it employs, in New Haven, Connecticut..

19.        The amount the plaintiff seeks to recover in damages from the defendants named above, is over $75,000.

2

**Cause of Action**

20.    On October 23, 2000, the plaintiff, previously referred to as Lisa Egan for medical insurance purposes, met for the first time with the defendant, Dr. John Persing, in his offices at the Yale Physicians Building, located at 800 Howard Avenue, New Haven Connecticut, in order to enlist his professional services for the performance of plastic/cosmetic surgery on her eyelids and nose.

22.    The plaintiff was referred to the defendant, Dr. John Persing, by the defendant, Yale-New Haven Hospital.

23.    The plaintiff told the defendant, Dr. John Persing, that she wished to have plastic surgery to remove the excess skin just above her eyes, in the area above each eye and below the eyebrows, as it was causing impairment to her visual field, and was aesthetically unattractive.

24.    The plaintiff told the defendant, Dr. John Persing, that she had had a visual field test, and that she had tested as being visually impaired by the hooding effect of the excess skin in the area between the eye and eyebrow.

25.    The plaintiff told the defendant, Dr. John Persing, that the insurance company, as a result of the visual field test, had agreed to pay for the procedure known as a Blepharoplasty to cure the hooding, as the procedure was deemed medically necessary, and not just for aesthetic purposes.

26.    The plaintiff further told the defendant, Dr. John Persing, that she wished to have her deviated septum repaired, which was causing some hindrance to her breathing.

27.    The plaintiff told the defendant, Dr. John Persing, that she had suffered injury to her nose in an automobile accident almost ten years earlier, her face having gone into a

3

windshield on impact.

28.        The plaintiff told the defendant, Dr. John Persing, that her automobile insurance company had agreed to pay for a Septoplasty to correct the plaintiff's deviated septum, as it was part of her automobile policy benefits still leftover and available from the January 1991 car accident.

29..       The plaintiff told the defendant, Dr. John Persing, that she wanted and needed both procedures performed at the same time, and as soon as possible, as the plaintiff's Cobra insurance, awarded as part of her 1999 Divorce Settlement, was due to expire in January 2001, after and without which she would not have the means on her own to be able to pay for the Blepharoplasty.

30..       The defendant, Dr. John Persing, examined the plaintiff's face, determined that her nose was asymmetrical, that her eyes were hooded by excess skin, and that her septum was deviated and impairing her breathing.

31.        The defendant, Dr. John Persing, required the plaintiff to undergo preliminary physical tests prior to making any decisions regarding the surgery, and instructed her to return for another consultation in the weeks to come.

32.        On November 27, 2000, the plaintiff returned to meet with the defendant, Dr. John Persing, for a second pre-op consultation, at his offices in the Plastic Surgery Department of the Yale Physician's Building at 800 Howard Avenue, in New Haven, Connecticut.

33.        During the appointment, the defendant, Dr. John Persing, agreed to perform the procedure known as a Septoplasty on the plaintiff's nose to correct the plaintiff's deviated septum..

34.        The defendant, Dr. John Persing, and the plaintiff, also discussed for the first

4

the, the possibility of performing the procedure known as a Rhinoplasty, as a means to gain aesthetic improvement of the plaintiff's nose.

35.     The defendant, Dr. John Persing asked the plaintiff what it was she specifically wanted to have done to her nose, and what ultimate aesthetic effect she wished to achieve.

36.     The plaintiff expressly stated the specific aesthetic goals she wished to be achieved by a Rhinoplasty if it were performed.

37.     The plaintiff expressly stated that she wished her nose to be made more symmetrical, the hump on the ridge of the nose to be reduced, the tip made less bulbous, the hanging columnella corrected and reshaped, and the nose made more narrow and refined.

38.     The plaintiff questioned the defendant, Dr. John Persing, as to whether the goals she defined were attainable goals if he were to perform a Rhinoplasty on her particular nose.

39.     The defendant, Dr. John Persing, expressly stated that the goals as specified and defined by the plaintiff were attainable for her particular nose if he were to perform the Rhinoplasty on her particular nose.

40.     The plaintiff went on to expressly state that she would not want her nose shortened in the process.

41.     The defendant, Dr. John Persing, agreed that in the plaintiff's particular case, shortening of her nose would be counterproductive to the attempt  to attain a positive aesthetic result from the Rhinoplasty.

42.     The defendant, Dr. John Persing, however stated that in correcting the hanging columnella, a slight reduction in length might be necessary, but that he would avoid that reduction if at all possible.

5

43.         The plaintiff in response, told the defendant, Dr. John Persing, that she would want to forego the correction of the hanging columnella if it would lead to any reduction in length but the slightest reduction.

44.         Before finally consenting to the procedure, the plaintiff specifically asked the defendant, Dr. John Persing, whether given her particular nose, the Rhinoplasty would be in any way unusual or difficult, or require anything out of the ordinary to effect the goals defined.

45.         The plaintiff further specifically asked the defendant, Dr. John Persing, whether there were any risk that the Rhinoplasty, could in any way become complex during the course of the operation, and result in the plaintiff's nose being physically and aesthetically worse off than it started.

46.         The plaintiff expressly stated to the defendant, Dr. John Persing, that if such a complexity or risk existed, she would forego the Rhinoplasty entirely, as she already disliked her nose, and would never want to take the risk of making it more unattractive than it already was.

47.         In response to the plaintiff's questions and statement, the defendant, Dr. John Persing, expressly promised after again examining the plaintiff's nose, that the Rhinoplasty in her case would not be unusual, complex or difficult, that nothing out of the ordinary would be required to achieve the goals defined, that he performed such routine procedures regularly with no complications or untoward results, and that the plaintiff could rest assured that there was nothing that would make this operation any different from the rest.

48.         The defendant, Dr. John Persing, having participated in the discussion averred in items 34 through 47 , fully understood the terms and conditions under which the plaintiff was consenting to the Rhinoplasty being performed on her nose, and fully understood that in the event of anything complex , difficult, or unusual the plaintiff would forego the Rhinoplasty, as

6

she had expressly stated she would not want to take the risk ending up physically or aesthetically worse off than she was.

49.     The defendant, Dr. John Persing, and the plaintiff, then jointly agreed to the defendant performing the Rhinoplasty in order to achieve those goals specifically defined and laid out by the plaintiff, and under the terms expressly stated by the plaintiff and understood by the defendant.

50.     The defendant, Dr. John Persing, expressly promised to make the plaintiff's nose more symmetrical, reduce the hump on the bridge of the nose, make the tip less bulbous, correct and reshape the hanging columnella, and make the nose more narrow and refined.

51.     The defendant, Dr. John Persing, expressly promised to not reshape or correct the hanging columnella if it appeared that it would require a significant shortening of the nose, and that he would forego that portion of the Rhinoplasty altogether if that were the case.

52.     During that same appointment on November 27, 2000, the plaintiff and the defendant, Dr. John Persing, discussed the possibility of the defendant performing the procedure known as a Blepharoplasty on the plaintiff's eyelids, to eliminate the excess skin and correct the resultant hooding of the eyes.

53.     The plaintiff specifically questioned the defendant, Dr. John Persing, as to the placement of the incision made to remove the excess skin above the eyelids.

54.     The defendant, Dr. John Persing, drew a picture of where the incision would be made, from one side of the eye to the other, and explained that the excess skin and tissue would be removed, and the scar hidden in the fold of the eyelid.

55.     The defendant, Dr. John Persing, however at that time, told the plaintiff that in her particular case, the Blepharoplasty alone would not result in a complete cure of the excess

7

in above the plaintiffs eyes due to her particular degree of ptosis, and that only if combined with another procedure could a complete cure of the hooding be obtained, a procedure known as a Brow Lift .

56.        The defendant, Dr. John Persing, told the plaintiff that a Brow Lift would raise the plaintiff's eyebrows and tighten the excess skin below them which was hooding the plaintiff's eyes, thereby eliminating the excess skin and resultant hooding when performed in conjunction with the Blepharoplasty.

57..       The defendant, Dr. John Persing, also told the plaintiff that the Brow Lift would have the added benefits of opening up the plaintiff's eye area to create a brighter younger look to her face and expression, and eliminating some of the lines on her forehead.

58.        The plaintiff questioned the defendant, Dr. John Persing, as to the possibility of his doing the Brow Lift at the same time as the other procedures so as to have complete examination of the hooding and excess skin over the eyes, as she would not have the financial resources to pay for a second operation at a later date and would not want to undergo surgery a second time.

59.        The defendant, Dr. John Persing, told the plaintiff that the performance of the Brow Lift would make the operation longer, and physically harder on the plaintiff as to pain and length of recovery, but that he would discuss it further with the plaintiff in the coming days.

60.        The defendant, Dr. John Persing, left the examination room to obtain a Consent Form.

61.        When the defendant, Dr. John Persing, returned with the Consent Form, he handed it to the plaintiff without discussion about the contents of the Form and , left the examination room again, stating he would return in a moment.

8

62.        The plaintiff was alone when she read the Consent Form.

63.        The plaintiff saw that the Blepharoplasty, Septoplasty, and Rhinoplasty were named on the Consent Form as the three surgical procedures she was consenting to.

64.        The plaintiff read the Consent Form, and the sentence contained therein referring to the patient having been informed of the risks, side effects, and alternative procedures associated with the procedures being consented to.

65.        The defendant, Dr. John Persing, had at no time during either of the two pre-surgery consultations, on October 23, 2000, or on November 27, 2000, informed the plaintiff of any risks or side effects to the Blepharoplasty, Septoplasty, and Rhinoplasty.

66.        The defendant, Dr. John Persing, had at no time during either of the two pre-surgery consultations, on October 23, 2000, or on November 27, 2000, informed the plaintiff of any available alternatives to the Blepharoplasty, Septoplasty, and Rhinoplasty.

67..        The plaintiff believed that  the defendant, Dr. John Persing, an expert surgeon practiced in his craft, would certainly have known of any risks and side effects if they existed, and would certainly have informed the plaintiff of their existence, in advance of going forward with the procedure.

68..        In the absence of the defendant, Dr. John Persing divulging any risks, side effects, and available alternative treatments, the plaintiff believed that his silence on the issue was a statement that there weren't any associated risks, side effects, or available alternative treatments to the Septoplasty, Rhinoplasty, and Blepharoplasty, and she relied on that statement.

69..        The Consent Form was a generic Yale-New Haven Hospital Consent Form, and there were no risks, side effects, or alternative treatments specifically named, listed, or written any where on the Consent Form, pertaining to the Blepharoplasty, Septoplasty, and Rhinoplasty.

9

70.        The generic Consent Form was used as a tool to ensure that the hospital rules and regulations were complied with in accordance with law, as every patient was required to sign the Consent form before any performance of a surgical procedure could be begun, regardless of the actual existence of any material risks, side effects, or alternative treatments, and therefore was not in and of itself assumed to be a statement affirming the actual existence of material risks, side effects and alternative treatments inherent to any given procedure.

71.        The plaintiff believed that the defendant, Dr. John Persing, gave her the Consent Form so that she would grant the defendant, Dr. John Persing, the right to do whatever was needed to save her life in case of a life and death emergency, and grant Yale-New Haven Hospital the right to use her body and organs as a donation to other patients if she should die on the operating table.

72.        The plaintiff signed the Consent Form authorizing the performance of the three procedures known as a Septoplasty, Rhinoplasty, and Blepharoplasty.

73.        The plaintiff was alone in the room when she signed the Consent Form.

74.        When the defendant, Dr. John Persing, returned to the examination room, the plaintiff handed the Consent Form to him without any discussion passing between them regarding the content of the Consent Form.

75.        On November 29, 2000, the plaintiff had a brief discussion with the defendant, Dr. John Persing in the hallway of the Yale Physicians Building, again regarding the benefits of the Brow Lift, and the possibility of the procedure being performed on the plaintiff.

76.        The defendant, Dr. John Persing, reiterated to the plaintiff that a complete examination of the plaintiffs excess skin and resultant hooding would not be possible without a Brow Lift procedure being done in conjunction with the Blepharoplasty.

10

77..          On November 30, 2000, the plaintiff had another discussion with the defendant, Dr. John Persing, in his private office, in the Plastic Surgery Department of the Yale Physicians Building, regarding the benefits of the Brow Lift, the possibility of it being performed to effect a complete elimination of the excess skin and resultant hooding, and the possibility of adding the Forehead Lift procedure to the other three procedures already slotted for the December 6, 2000 operation.

79.          The defendant, Dr. John Persing, during that discussion on November 30, 2000, _again reiterated that due to the degree of the plaintiff's ptosis, a Blepharoplsty would not result in  complete elimination of the plaintiff's excess skin and resultant hooding, and that only with the Brow Lift  procedure being done in conjunction with the Blepharoplasty, either at the same time, or at a later time, would there be complete elimination of the excess skin and resultant hooding.

80..          The plaintiff questioned the defendant, Dr. John Persing, as to the nature and placement of incision employed to effect the Brow Lift, and the nature of the scar she would be left with from that incision.

81.          The defendant, Dr. John Persing, told the plaintiff that an incision would need to be made across the top of her forehead from one side to the other, in front of the hairline, leaving a slight very thin scar.

82          When the plaintiff asked the defendant, Dr. John Persing, to show her photographs of his patients who he had performed the procedure upon so that she could see the nature of the scar she would be left with, the defendant, Dr. John Persing, told the plaintiff that he had no photographs of any patients he had performed a Brow Lift upon.

83.          The defendant, Dr. John Persing, however then retrieved a book from the

11

okcase, stating that though it was a little outdated, it contained representative pictures of women who had had a Brow Lift performed.

84        The defendant, Dr. John Persing, showed the plaintiff two pages in the book that he removed from the shelf, pertaining to the Brow Lift.

85.        The first page showed two women who had had the procedure done, but the pictures did not adequately show the scar as their hair was covering it, so the plaintiff asked to see another.

86.        The defendant, Dr. John Persing, then showed the plaintiff a picture with markings indicating the shape of the incision that would be made across the top of the forehead.

87.        When the plaintiff saw the nature and shape of the incision, having been made in an obvious zigzagged or scalloped fashion across the top of the forehead, she specifically asked the defendant, Dr. John Persing, if that were the way her incision would be made if she were to have the Brow Lift.

88.        The plaintiff explicitly told the defendant, Dr. John Persing, that if what was pictured was the nature and shape of the incision and resultant scar, she would not want the procedure performed on her, as she would never want that type of incision being done to her, or to be left with that type of scar across the top of her forehead.

89.        The defendant, Dr. John Persing, responded to the plaintiff's question and statement by telling the plaintiff that the picture wasn't indicative of the actual incision that would be made, that things had changed and improved since the book was printed.

90.        .The defendant, Dr. John Persing, went on to expressly state and promise that he would not employ the technique or method pictured, and that any incision he would make if he were to perform the Brow Lift on the plaintiff, would not be in a scalloped or zigzagged fashion,

12

and would not result in a scalloped or zigzagged scar.

91.    The defendant, Dr. John Persing, expressly promised the plaintiff that the incision he would make would instead follow the plaintiff's natural hairline across the top of her forehead, and that her scar would therefore follow the natural hairline also, without any scalloped or zigzagged effect.

92.    Due to her worry over the picture, and the fact that the book offered up as a representation of the procedure appeared to be a medical manual or textbook, the plaintiff exacted a promise from the defendant, Dr. John Persing, at least three more times during that conversation, that the defendant would not use the technique or method of incision pictured, and that the incision pictured was not indicative of the scar the plaintiff would be left with.

93.    The defendant, Dr. John Persing, each time he was asked, expressly promised the plaintiff that she would be left with only a slight scar following her natural hairline at the top of her forehead where the hair meets the scalp, and that it would not be scalloped, or zigzagged.

94.    The plaintiff also specifically questioned the defendant, Dr. John Persing, as to whether he would cut into her natural hairline when making the incision at the top of her forehead, as the picture in the book seemed to indicate that also.

95.    The plaintiff expressly stated that she did not want her hairline cut into, hair removed, or her hairline altered by it being cut into and having hair removed.

96.    The defendant, Dr. John Persing, told the plaintiff that in making the incision along her natural hairline, unlike the incision pictured in the book, there would be no cutting into the natural contour and line of the plaintiff's hairline, and no hair removal.

97.    The defendant, Dr. John Persing, expressly promised the plaintiff that he would not cut into the natural contour of her hairline, alter the shape of her hairline, heighten her

13

hairline, or remove hair from her hairline.

98.        The defendant, Dr. John Persing again expressly promised the plaintiff that she would have a complete elimination of the excess skin and resultant hooding if the Brow Lift were performed in conjunction with the Blepharoplasty, and again represented to the plaintiff, that without the Forehead Lift, a complete elimination of the excess skin and resultant hooding, would not be possible by the performance of the Blepharoplasty alone.

99.        Throughout the course of that discussion in the private office of the defendant, Dr. John Persing on November 30, 2000, the plaintiff specifically asked the defendant several times whether there were any alternative procedures to the Brow Lift as he had described it to be.

100.        The defendant, Dr. John Persing, expressly told the plaintiff that there was no available alternative procedure to the classic Brow Lift he had described.

101.        At no time prior or during that meeting on November 30, 2000, did the defendant, Dr. John Persing,  ever inform the plaintiff of any risks or side effects associated with, or inherent to, the Brow Lift procedure that he had described.

102.        The plaintiff and the defendant, Dr. John Persing, both agreed to think it over further as to whether to have the Brow Lift procedure performed, and whether to perform it at the same time as the other three procedures already booked for December 6, 2000.

103.        On December 1, 2000 the plaintiff phoned the defendant's office from Pennsylvania, and told the defendant, Dr. John Persing's secretary, Helen Roginiel, that the plaintiff had decided that she wanted to have the Brow Lift performed, and performed at the same time as the other three procedures, on December 6, 2000.

104.        The plaintiff however, was informed by Helen Roginiel, that the defendant,

14

Dr. John Persing, was not willing to add the Brow Lift procedure to the other three procedures already booked for December 6, 2000.

105    The plaintiff asked Helen Roginiel to have the defendant, Dr. John Persing, please return the plaintiff's phone call as soon as possible to discuss reconsidering the issue, because the plaintiff wanted a complete elimination of the excess eyelid skin and hooding, and did not want to have to endure a second operation at a later date, risk anesthesia a second time, particulary since she would have no insurance at a later date.

106    The defendant, Dr. John Persing,  returned the plaintiff's call, phoning her at her home in Pennsylvania.

107.    During that phone call, the defendant, Dr. John Persing, expressed his concern over the added physical stress of a fourth procedure, but ultimately agreed to perform the Brow Lift procedure along with the other three procedures on December 6, 2000.

108.    During that phone call, the defendant, Dr. John Persing, expressly promised that the performance of the Brow Lift procedure would be in the specific manner which the plaintiff and he had discuss in the defendant's office previously on or about November 30, 2000.

109.    During that phone call, the defendant, Dr. John Persing, again expressly promised, at the plaintiff's insistence, that he would not make the incision on the plaintiff's scalp in a scalloped or zigzagged fashion, and that it would not be accomplished through the method pictured in the textbook that he had shown the plaintiff previously in his office.

110    During the phone call, the defendant, Dr. John Persing, again expressly promised that he would not alter her hairline, or cut into her hairline.

111.    The defendant, Dr. John Persing, when questioned once more by the plaintiff as to the existence of any available alternative to the Brow Lift to eliminate the excess skin above

15

the eyes and resultant hooding, again expressly stated that there was no alternative treatment or procedure available as a means to raise the eyebrows, and aid in the effecting an elimination of the excess skin and resultant hooding, other than the Brow Lift.

112.    At no time during the office consultations or long distance telephone call, did the defendant, Dr. John Persing ever inform the plaintiff of any risks or side effects , material or otherwise, associated with the performance of a Brow Lift.

113.    The plaintiff believed that the silence of the defendant, Dr. John Persing, on the issue of any risks and side effects was an affirmative statement that there were no risks and side effects inherent to the Brow Lift procedure, and the plaintiff relied on that statement.

114    At no time during office consultations or long distance telephone call, did the defendant, Dr. John Persing, ever inform the plaintiff of any of the following:

A.    that the defendant, Dr. John Persing, was going to make lengthwise incisions down the sides of the plaintiff's skull.

B.    that the defendant, Dr. John Persing, was going to remove the muscle and tissue from the front of the plaintiff's forehead, and remove it down to her eyebrows.

C.    that the defendant, Dr. John Persing was going to remove that muscle in order to intentionally cause the plaintiff to lose her ability to move the muscles in her face and forehead.

D.    that as a result of the removal of the muscle tissue in the central portion of the forehead, the plaintiff would risk a visible depression of the central portion of her forehead.

E.    that the plaintiff would risk permanent injury to the nerves of her forehead, scalp, and face..

F.    that the plaintiff would risk permanent numbness and paralysis, and pain to her skull and forehead.

16

G.     that the plaintiff would suffer the uncomfortable and painful permanent sensation of wearing a rubber bathing cap on her forehead, scalp, and skull.

H..    that the plaintiff would risk a permanent inability to raise her eyebrows, or raise them in a normal fashion to the same degree.

I.     that the plaintiff would risk the forehead scar spreading and becoming wider.

J.     that the plaintiff would suffer hair loss along the incision.

K.     that the plaintiff would risk even more permanent hair loss if the scar were to spread, thereby causing further disfigurement by the hair-loss, and the scar being made more obvious..

115.     At no time during the office consultations or long distance telephone call, did the defendant, Dr. John Persing, ever inform the plaintiff of the following:

L.     that there was an alternative procedure to the Brow Lift, known as an Endoscopic Brow Lift.

M.     that an Endoscopic Lift would have resulted in raising the eyebrows, but with only two small incisions being made which would have been hidden back in the plaintiff's hair with no visible scar on the hairline.

N.     that an Endoscopic Lift was the most modern method and common procedure employed for raising a patients eyebrows.

O.     that the plaintiff could have had a complete cure and elimination of the hooding without having to endure the permanent and obvious visible scarring associated with the performance of a Brow Lift..

115.     The plaintiff believed that the defendant, Dr. John Persing's silence on the issue of any material risks and side effects was a statement that there were no material risks, or side effects inherent to the Brow Lift procedure, and the plaintiff relied on that statement.

116.     The plaintiff believed the defendant, Dr. John Persing, an expert surgeon practiced in his craft, would certainly have known of any risks and side effects if they existed, and

would certainly have informed the plaintiff of their existence, in advance of going forward with the procedure.

117.    The plaintiff understood the defendant, John Persing's silence as to any risks or side effects to the Brow Lift, to be a statement that there was no risks or side effects assoicate with the Brown lift, and no risk of any harm occurring to her, other than the normal risk assumed to be associated with anesthesia, and she relied on that statement.

118.    At the end of the long distance telephone call, the plaintiff orally agreed to the Brow Lift procedure being performed on her, because she relied on the representation of the defendant, Dr. John Persing, that there was no alternative method, procedure, or operation available to eliminate the excess skin above the eyes and effect a complete elimination of the resultant hooding, and that the Brow Lift in combination with the Blepharoplasty was necessary in order to obtain a complete elimination of the excess skin and resultant hooding.

119.    The defendant, Dr. John Persing, having participated in the discussion averred in items 52 through 59 and items 75 through 119, fully understood the terms and conditions under which the plaintiff was consenting to the Brow Lift, and fully understood that the plaintiff would not have wanted the procedure to be performed if the method of incision and resultant scar was of the type and shape of the incision and scar depicted in the textbook that the defendant, Dr. John Persing, had previously shown her, and promised her he would not make.

120.    The telephone conversation averred in items 75 through 119 was the last discussion ever had between the defendant, Dr. John Persing, and the plaintiff, regarding the Brow Lift procedure, before it was performed on December 6, 2000.

121.    The plaintiff was never given any Consent Form outlining the risks, side effects, or alternative procedures for the Brow Lift procedure.

18

122.        The plaintiff never signed any Consent Form for the performance of the Brow

Lift procedure.

123.        The plaintiff, when making her decision to undergo the surgery, wholly relied

on the representations that the defendant, Dr. John Persing, had made to her during those office

consultations and telephone calls, and wholly believed that the defendant, Dr. John Persing, would

honor the terms and conditions explicitly discussed and expressly agreed to during those office

consultations and telephone calls.

124.        On December 6, 2000, the plaintiff, was admitted into Yale-New Haven

Hospital, under the care of the defendant, Dr. John Persing, for outpatient surgery..

125.        The plaintiff underwent general anesthesia.

126..       The defendant, Dr. John Persing, surgically operated on the plaintiff's body,

making incisions on the plaintiff's face scalp and head, and altering the plaintiff's tissues and

bones.

127.        The operation was scheduled for a block of time four and a half hours in

length.

128.        The operation lasted six and a half hours.

129..       During the course of the operation, the defendant, Dr. John Persing, surgically

operated on portions of the plaintiff's face and head, that he had no consent to operate on.

130.        The defendant, Dr. John Persing, had full and complete knowledge at the time

of his taking those unauthorized surgical actions upon the plaintiff's face and head, that he was

acting without the plaintiff's consent.

131.        The defendant, Dr. John Persing, had full and complete knowledge existed at

the time of his taking of his unauthorized surgical actions upon the plaintiff's face and head, that no

19

life threatening emergency existed which would have granted him the authority to take those surgical actions without the plaintiff's consent.

132.    The defendant, Dr. John Persing, in taking those surgical actions without authority, and without the plaintiff's consent, deliberately superceded the previously expressed will of the plaintiff, and her constitutional right to determine her own destiny. .

133    The defendant, Dr. John Persing, took those unauthorized surgical actions upon the plaintiff's face and head, in direct contravention to the previously agreed to terms and conditions under which the surgery was expressly contracted for and commenced, and in direct contravention to the representations and promises the defendant, Dr. John Persing, had expressly made to the plaintiff in order to gain her agreement to the surgery.

134..    The defendant, Dr. John Persing, an expert surgeon, had full and complete knowledge, and could at all times foresee, that in taking those unauthorized surgical actions upon the plaintiff's face and head, he was subjecting the plaintiff to both a greater risk of physical and emotional harm, and an unauthorized risk of physical and emotional harm.

135..    The defendant, Dr. John Persing, an expert surgeon, had full and complete knowledge of, and could at all times foresee, the consequences, risks, and types of harm that could and would result from the unauthorized surgical actions he was taking upon the plaintiff's face and head.

136.    The defendant, Dr. John Persing, in taking surgical actions that he had no authority or consent to take, put the plaintiff's psychological and physical health and welfare at greater risk, and unnecessary risk, and ultimately caused the plaintiff physical and psychological damage by the surgical actions taken and the greater risks assumed.

137.    The defendant, Dr. John Persing, in the course of his taking those

20

unauthorized surgical actions upon the plaintiff's face and head, directly and proximately caused permanent physical damage to the plaintiff's face, head, scalp, forehead, eyelids, nose, and facial muscles, scarring her and disfiguring her.

138.    The defendant, Dr. John Persing, in the course of his taking those unauthorized surgical actions upon the plaintiff's face and head, directly and proximately caused severe emotional damage to the plaintiff's mind and sense of self.

139.    But for the unauthorized surgical actions taken by the defendant, Dr. John Persing,  the plaintiff would not have suffered the physical and emotional damage that she did..

140..    The plaintiff did not herself, in any way, contribute to the unauthorized surgical acts being wrongfully committed against her and her body, and was not in any way responsible for the harm she suffered as a result of those unauthorized surgical acts being wrongfully committed against her and her body.

141.    At no time during the operation was the plaintiff ever awake, ever aware of the unauthorized surgical acts being wrongfully committed against her and her body, or ever able to prevent those unauthorized surgical acts from being wrongfully committed against her and her body.

142.    Had the plaintiff been awake during the operation, and made aware of  the unauthorized surgical acts were being committed against her and her body, the plaintiff would have told the defendant, Dr. John Persing, to stop what he was doing.

143.    Had the plaintiff been awake during the operation, and asked to give her consent to those unauthorized surgical actions which now form the basis of this Complaint and the events and harm averred in items 1  through  144  , the plaintiff as a reasonable person, a reasonable patient, and her own particular person and patient, would not have given her consent, and would have unequivocally told the defendant, Dr. John Persing, "No.".

21

144.         As a direct and proximate result of the unauthorized surgical actions taken by the defendant, Dr. John Persing, during the course of his performance of surgery on the plaintiff's head and face, the plaintiff suffered permanent physical damage, psychological damage and trauma, severe mental and emotional distress, pecuniary damage, lost chance, and loss of enjoyment of life's pleasures as averred in Counts One through Counts       of this Complaint.

145..        At all times relevant to the events and wrongful acts alleged in this Complaint, the defendant, Dr. John Persing, was employed by the defendant, the Yale Medical Group, and acting in the scope of his employment.

146.         At all times relevant to the events and wrongful acts alleged in this Complaint,   the defendant, Dr. John Persing, was employed by the defendant, Yale University, and acting in the scope of his employment.

147.         At all times relevant to the events and wrongful acts alleged in this Complaint,  the defendant, Dr. John Persing, was employed by the defendant, Yale-New Haven Hospital, and acting in the scope of his employment.

148..        At all times relevant to the events alleged in this Complaint, the defendant, Dr. John Persing, acting as a common man, had a reasonable duty, to not harm the plaintiff physically or emotionally, and to not unlawfully touch the plaintiff.

149.         When the defendant, Dr. John Persing, took his unauthorized surgical actions upon the plaintiff's body without her consent, and harmed the plaintiff physically and emotionally in the process, he breached that reasonable duty of care owed to the plaintiff.

150.         At all times relevant to the events alleged in this Complaint, the defendant, Dr. John Persing, acting as a common man, had a moral duty to not unlawfully touch the plaintiff, to not deliberately and knowingly cause harm to the plaintiff, to not take actions upon her body in

22

complete indifference to the plaintiff's welfare, and to not take actions against the plaintiff's body which the defendant knew were in direct contravention to the plaintiff's express wishes.

151.        When the defendant, Dr. John Persing, took his unauthorized surgical actions upon the plaintiff's body without her consent, and took those harmful actions knowingly and deliberately with complete indifference to the plaintiff's welfare , and in direct contradiction to the plaintiff's expressed wishes, the defendant, Dr. John Pesing, breached that moral duty of due care he owed to the plaintiff. .

152.        At all times relevant to the events alleged in this Complaint, the defendant, Dr. John Persing, acting as the plaintiff's surgeon, had a fiduciary duty to protect the plaintiff's physical and emotional well-being, to not harm the plaintiff physically or emotionally, to not deliberately and knowingly cause harm to the plaintiff with complete indifference to the plaintiff's welfare, and to not take actions against the plaintiff's body which the defendant knew were in direct contravention to the plaintiff's express wishes. .

153.        When the defendant, Dr. John Persing, took his unauthorized surgical actions upon the plaintiff's body without her consent, and took those harmful actions knowingly and deliberately with complete indifference to the plaintiff's welfare , and in direct contradiction to the plaintiff's expressed wishes, the defendant, Dr. John Pesing, breached that fiduciary duty of care he owed to the plaintiff. .

154.        At all times relevant to the events alleged in this Complaint, the defendant, Dr. John Persing, acting as the plaintiff's physician, had a moral duty to not take surgical actions upon the plaintiff's body without her consent, to not deliberately and knowingly cause harm to the plaintiff in complete indifference to the plaintiff's welfare, and to not take actions against the plaintiff's body which the defendant knew were in direct contradiction to the plaintiff's expressed

23

wishes.

155.    When the defendant, Dr. John Persing, took his unauthorized surgical actions upon the plaintiff's body without her consent, and took those harmful actions knowingly and deliberately with complete indifference to the plaintiff's welfare , and in direct contradiction to the plaintiff's expressed wishes, the defendant, Dr. John Pesing, breached that moral duty of care he owed to the plaintiff. .

156.    At all times relevant to the events alleged in this Complaint, the defendant, Dr. John Persing, acting as a common man, owed a reasonable duty , and a legal duty, to not take actions that were in direct contravention to the terms of the contract for medical services previously agreed to, and entered into, by the defendant, Dr. John Persing and the plaintiff, and upon which terms and agreement the December 6, 2000 surgery was commenced..

157.    When the defendant, Dr. John Persing, took his unauthorized surgical actions upon the plaintiff's body without her consent, and took those actions both in direct contravention to the terms of the contract for medical services previously agreed upon and entered into, and in direct contravention to the plaintiff's expressed wishes, the defendant, breached the reasonable duty  that he owed to the plaintiff as a common man, and the legal duty he owed the plaintiff under the legal terms of the contract.

158.    The defendants, the Yale Medical Group, Yale University, and Yale-New Haven Hospital, as common corporations, had a duty to not cause harm to the plaintiff physically or emotionally, to not cause that harm deliberately and knowingly, and with complete indifference to the plaintiff's welfare, and to not take actions against the plaintiff's body in direct contravention to the plaintiff's expressed wishes, and in direct  contravention to the terms of the contract for services jointly entered into, and upon which terms the December 6, 2000 surgery was commenced.

24

159.     The defendants, the Yale Medical Group, Yale University, and Yale-New Haven Hospital, as medical institutions offering their services with the promise of special care, had a fiduciary duty to protect the plaintiff's physical and emotional well-being, to not harm the plaintiff physically or emotionally, to not deliberately and knowingly cause that harm with complete indifference to the plaintiff's welfare, and in direct contradiction to the plaintiff's expressed wishes and the terms of the contract for services jointly entered into, and upon which terms the December 6, 2000 surgery was commenced.

160.     The defendants, the Yale Medical Group, Yale University, and Yale-New Haven Hospital, as the employers of the defendant, Dr. John Pesing, had a reasonable duty, a fiduciary duty, and a moral duty to ensure that their employee, the defendant, Dr. Jonn Persing, would not physically and emotionally harm the plaintiff, and would not deliberately and knowingly cause harm that harm with complete indifference to the plaintiff's welfare, and in direct contradiction to the plaintiff's expressed wishes and the terms of the contract expressly agreed to and jointly entered into, and upon which terms the December 6, 2000 surgery was commenced. .

## **Count One**

161.     The plaintiff incorporates the allegations averred in items 1 through 160 and further alleges:

162.     During the course of his performance of the Brow Lift, the defendant, Dr. John Persing, surgically operated in the very manner he had expressly promised the plaintiff he would not operate, making the type of scalloped or crenalated or zig zagged incision across the plaintiff's hairline that he had previously expressly promised the plaintiff he would not make, and

25

for which promise he had obtained the plaintiff's oral consent to that procedure.

163.    The defendant, Dr. John Persing, in making the incision in the scalloped or crenelated or zig zag fashion, in direct contravention to the expressed wishes of the plaintiff and the express promise that the defendant himself had made to her, vitiated any oral agreement to the Forehead Lift previously given, as the surgical action taken was not the same surgical action promised to be taken, and was in fact the surgical action promised not to be taken..

164.    When the defendant, Dr. John Persing, obtained the plaintiff's oral agreement to the Brow Lift by promising not to make the surgical incision in a scalloped or crenalated manner, or zig-zag fashion, he fraudulently misrepresented the nature of the incision he was going to make, and in doing so immediately made void any oral agreement to the Forehead Lift that the plaintiff previously made while under the belief of that fraudulent misrepresentation.

165.    The defendant, Dr. John Persing, an expert surgeon, had full knowledge of the type of incision he intended to make, and knew that the statements and promises he was making to the plaintiff regarding the type of incision and resultant scar, were false when he was making them.

166.    When the defendant, Dr. John Persing, obtained the plaintiff's oral agreement to the classic Brow Lift by telling her there was no alternative procedure by which to raise the eyebrows and effect an elimination of the excess skin beneath and associated hooding other than the classic Forehead Lift,  the defendant obtained the plaintiff's agreement to the procedure by further fraudulent misrepresentation, as another procedure known as an Endoscopic Forehead Lift, was the alternative procedure most often used to effect the same goal.

167.    The defendant, Dr. John Persing, an expert surgeon, had full and complete knowledge when he told the plaintiff that there was no alternative procedure to the classic Brow

26

In fact, that the Endoscopic Lift was an available alternative procedure, and it was the most modern method used to lift the eyebrows, requiring only a few small incisions hidden well back behind the hairline at the top of the head, and that it was the method most often preferred by patients since it leaves the patient with no visible scarring, crenalated or not, at the hairline..

168.    During the course of his performance of the Brow Lift procedure, the defendant, Dr. John Persing, without the plaintiff's knowledge or consent, made two other surgical incisions running lengthwise down both sides of the plaintiff's head, extending vertically from the top of her forehead down to just above her ears, further scarring the plaintiff down both sides of her head.

169.    The defendant, Dr. John Persing, in making the surgical incisions down both sides of the plaintiff's head down to her ears without the plaintiff's consent, vitiated any oral agreement to the Brow Lift procedure previously given, as the portion of the body operated upon was not the portion of the body previously agreed to be operated on..

170    By taking the surgical action averred in items 161 and 169, the defendant, Dr. John Persing, permanently scarred the plaintiff without her consent to do so.

171.    During the course of his performance of the Brow Lift, the defendant, Dr. John Persing, without the plaintiff's knowledge or consent, surgically removed the corrogator and frontilis muscles from the plaintiff's forehead.

172.    The defendant, Dr. John Persing, without the plaintiff's knowledge or consent, deliberately removed the plaintiff's corrugator and frontilis muscles to intentionally and permanently significantly reduce the mobility of portions of the plaintiffs face.

173.    In taking the surgical actions averred in items 171 through 172 , the defendant, Dr. John Persing, performed a surgical procedure which was wholly different than the

27

procedure orally agreed to, and therefore vitiated any oral agreement to the Brow Lift procedure previously given by the plaintiff..

174      In taking the surgical actions averred in item 161 through 173 , the defendant, Dr. John Persing, surgically operated on portions of the plaintiff's face and head that he had no consent to operate on, and doing so vitiated all oral agreement to the procedure previously given.

175.      The defendant, Dr. John Persing, performed the Brow Lift, and the surgical actions averred above in items 161 through 173 , without the plaintiff's consent, and without any signed Consent Form authorizing him to do so, in violation of the State and Federal law,  hospital rules, regulations, policies, and procedures, The Patients Bill of Rights, the Code of Medical Ethics, and the JCAHO standards for accreditation.

176.      The defendant, Dr. John Persing's performance of the Brow Lift procedure without a signed Consent Form was in direct contravention of Code of Medical Ethics that the defendant, Dr. John Persing, is required to practice by in order to retain his license and professional standing, a Code which requires the defendant to obtain the plaintiff's Consent prior to taking any surgical actions upon her , ..

177.      As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's head, scalp, face and forehead, the plaintiff suffered and continues to suffer physical damage.

178.      As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffers the disfigurement of a permanent visible scar that is scalloped or crenalated or zigzagged  across the top of her forehead at the hairline.

179.      As a direct and proximate result of the surgical actions taken without consent

28

by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffers the disfigurement of a permanent visible scar that runs down both sides of her head extending down to just above her ears.

180.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffered and continues to suffer the disfigurement of a permanent visible scar that has since spread and widened both on the top of her head and all the way down both sides of her skull extending to her ears

181.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffers a permanent visible depression in the central portion of her forehead from where the muscle was surgically removed.

182.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffered permanent nerve damage to her facial nerves.

183.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffered the permanent loss of 80 percent of all movement of the muscles in her forehead and eyebrows.

184.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff cannot use the upper portion of her face to form expressions, and cannot wrinkle her forehead at all.

185.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff can barely move her eyebrows, and no longer raise her eyebrows to a normal degree.

29

186.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff's eyebrows now lay flat, and at the same level they were before the operation, and are now asymmetrical.

187.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffered the permanent loss of sensation of the top of her head and upper sides of her head.

188.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffers and continues to suffer the permanent sensation of a rubber bathing cap squeezing her forehead, head and scalp.

189.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff suffered and continues to suffer the disfigurement of permanent hair loss over the areas of the scar, which has since widened and spread .

190.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff's eyebrows were not raised or elevated by the Brow Lift procedure as promised, and for which promise the defendant had acquired the plaintiff's oral agreement to the Brow Lift procedure.

191.        As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's scalp and forehead, the plaintiff did not obtain the complete elimination of the excess skin above her eyes, and elimination promised by the defendant, and upon which promise the plaintiff had given her oral agreement to the Forehead Lift.

192.        As a direct and proximate result of the surgical actions taken without consent

by the defendant, Dr. John Persing, upon the plaintiff's head, face, scalp, and forehead, the plaintiff suffered and continues to suffers severe emotional distress.

193.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. Jonn Persing, upon the plaintiff's head, face, scalp, and forehead, the plaintiff suffered and continues to suffer the loss of enjoyment of life

194.    Though the defendant, Dr. John Persing, surgically operated on the plaintiff's eyelid area and forehead upon an express promise to eliminate the excess skin above the plaintiff's eyes and resultant hooding, he failed to fulfill that contractual promise to the plaintiff, and illegally and unnecessarily physically and emotionally damaged the plaintiff in the process.

195.    Though the defendant, Dr. John Persing, surgically operated on the plaintiff's scalp, face, and forehead upon an express contractual promise to raise the plaintiff's eyebrows to a higher position,  the defendant failed to fulfill his contractual promise to lift the plaintiff's eyebrows to a higher position, and illegally and unnecessarily damaged the plaintiff physically and emotionally in the process.

196.    Wherefore, the plaintiff requests that the defendants be held joint and severally liable for compensatory, punative, general, and special damages in the amount averred in item 228 of this Complaint, or an amount deemed fair by a jury of her peers.


## Count Two

196.    The plaintiff incorporates the items alleged in items 1 through 160 and further alleges:

197.    During the course of his performance of the Septoplasty and Rhinoplasty on the plaintiff's nose, the defendant, Dr. John Persing, took surgical actions upon the plaintiff's nose

31

that he had no legal authority or consent to take.

198..        Upon opening up the plaintiff's nose, the defendant, Dr. John Persing, found that the plaintiff had a rare congenital defect/deformity in the structure of her nose, a defect that both he and the plaintiff had been unaware of at the time consent for the Septoplasty and Rhinoplasty was given.

199.        The plaintiff's particular rare congenital defect/deformity was one which the defendant, Dr. John Persing, had never personally seen or operated on before in his career.

200.        The defendant, Dr. John Persing, an expert surgeon, knew how rare the plaintiff's particular defect/deformity was, and knew that his attempt at performing the Rhinoplasty under that rare condition, without any personal experience with that particular defect/deformity, would be for him not only a first time attempt, but an experimental attempt.

201.        The defendant, Dr. John Persing, went forward with performing the Rhinoplasty under the increased risk and complexity of the rare congenital defect/deformity anyway, without the plaintiff's knowledge of that increased risk and complexity, and without her consent to the performance of the Rhinoplasty under that increased risk and complexity..

202.        The defendant, Dr. John Persing, went forward with the Rhinoplasty in direct contravention to the express terms under which he had gained the plaintiffs consent for the procedure, terms which vitiated the consent were anything unusual or out of the ordinary to occur that would make the procedure more difficult, or put the plaintiff at greater risk of an untoward outcome.

203.        The existence of the rare congenital defect changed the nature of the Rhinoplasty procedure, and the conditions under which it was taking place, making the consent which the plaintiff had previously given void, as it was not the same procedure under the same

conditions, circumstances, or level of risk previously thought and assumed at the time consent was given.

204.        The Rhinoplasty procedure as explained to the plaintiff by the defendant, Dr. John Persing on November 27, 2000, and consented to by the plaintiff, was a procedure in which tissue was to be removed from the plaintiff's nasal dome and tip to make the nose less bulbous and more narrow and refined.

205.        The defendant, Dr. John Persing, in his performance of the Rhinoplasty took surgical actions directly opposite to those the plaintiff consented to, and grafted tissue and cartilage to the area of the plaintiff's nose dome and tip which had been born without the  underlying structure normally present.

206.        The defendant, Dr. John Persing, further bulked the tip with more cartilage when he found, later in the operation, that the nose would not support itself, the tissue he had already grafted, or the work he had already done.

207 .       The defendant, Dr. John Persing, significantly shortened the plaintiff's nose in the process of performing the Rhinoplasty under the condition of the rare congenital defect/deformity, in direct contravention to the aesthetic goals discussed and expressly agreed to.

208.        The defendant, Dr. John Persing, elevated the plaintiff's nose and created a turned up nose, in the process of performing the Rhinoplasty under the condition of the rare congenital defect/deformity, in direct contravention to the aesthetic goals discussed and expressly agreed to.

209.        The defendant, Dr. John Persing, in the process of performing the Rhinoplasty under the condition of the rare congenital condition, created a hanging columnella greater and more asymmetrical than the one before, and made the nose more bulbous, less refined,

33

and more asymmetrical than it was before.

210.     Though the defendant, Dr. John Persing, surgically operated on the plaintiff's nose upon an express contractual promise to make the nose less bulbous, reshape and correct the hanging columnella, make the plaintiffs nose more narrow and refined, and make the nose more symmetrical, the defendant failed to fulfill that contractual promise to the plaintiff, and unnecessarily damaged the plaintiff physically and emotionally in the process .

211     The defendant, Dr. John Persing, in attempting to correct a rare congenital defect that he had no consent to pursue the correction of, took surgical actions directly opposite to those actions he had described to the plaintiff.

212.     The defendant, Dr. John Persing, in attempting to correct a rare congenital defect that he had no consent to pursue the correction of, took surgical actions in direct contravention to the aesthetic goals explicitly laid out by the plaintiff and expressly agreed to by the defendant, vitiating all consent previously given.

213.     The defendant, Dr. John Persing, in performing a Rhinoplasty under the condition of a rare congenital defect/deformity that he had no personal experience or expertise dealing with, performed an experimental operation on the plaintiff.

214.     The defendant, Dr. John Persing, was required by law to obtain a written Consent Form,  before ever experimentally operating on the plaintiff, and to inform the plaintiff of the risks and side effects of any experimental operation about to be done to her prior to ever operating on the plaintiff, which the defendant, Dr. John Persing, did not do.

215.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the plaintiff suffered physical and aesthetic damage to her nose.

34

216.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the plaintiff's nose is more bulbous than it was before the operation took place.

217.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the nasal dome is now more misshapen and asymmetrical than it was before the operation.

218.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the plaintiff's nose now sits off-centered on her face, sitting to the right of her face.

219.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the plaintiff's nose is now significantly shorter than it was before the operation.

220.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the footplate is now overly pronounced on one side of the nose.

221.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the columnella still hangs, hangs to a greater degree, and is larger and more misshapen than it was before the operation.

222.     As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. John Persing, upon the plaintiff's nose, the angle of the elevation of the plaintiff's nose is higher than it was before the operation, and higher than it aesthetically should be for the plaintiff's particular face.

223.     As a direct and proximate result of the surgical actions taken without consent

35

by the defendant, Dr. John Persing, upon the plaintiff's nose, the plaintiff suffered and continues to suffer severe emotional distress.

224.    As a direct and proximate result of the surgical actions taken without consent by the defendant, Dr. Jonn Persing, upon the plaintiff's nose, the plaintiff suffered and continues to suffer loss of enjoyment of life.

225.    The defendant, Dr. John Persing, performed the Forehead Lift, and the surgical actions averred above in items 128 and 133 - 138 , without the plaintiff's consent, and without a signed Consent Form authorizing him to do so, in violation of state and federal law, hospital rules, regulations, policies, and procedures, The Patients Bill of Rights, and JCAHO standards..

226..    The defendant, Dr. John Persing's performance of the Forehead Lift procedure without the plaintiff's consent, was in direct contravention of the Code of Medical Ethics that the defendant, Dr. John Persing, is required to practice in compliance with in order to retain his medical license and professional standing, a Code which required the defendant to obtain the plaintiff's Consent prior to taking any surgical actions upon her body.

227.    Wherefore, the plaintiff requests that the defendants be held joint and severally liable for compensatory, punative, general and special damages in the amount averred in item 228 of this Complaint, or an amount deemed fair by a jury of her peers.

36

## **Prayer for Relief**

228.        Wherefore, the plaintiffs demands judgment against the defendants, Dr John

Persing, Yale Medical Group, Yale University, and Yale-New Haven Hospital, and requests that

they be held  joint and severally liable to the plaintiff for compensatory, punitive damages, general

and special damages,  in the amount of  $5,000,000 .


Respectfully Submitted,


*Hadley Macpherson*

Hadley Macpherson

P.O. Box 501

Lahaska, Pennsylvania

18931

(215) 872 - 2194

(215) 325 - 1001


:

# **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this day, January 24, 2004, to Attorney Penny Seaman, of Wiggins and Dana, Trumbull Street, New Haven Connecticut.

Plaintiff Pro Se

*Hadley Macpherson*

Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 872 - 2194
(215) 325 -1001

# **CERTIFICATE OF GOOD FAITH**

The plaintiff hereby swears that before she filed this Complaint for suit against the defendants, Dr. John Persing, Yale Medical Group, Yale University, and Yale-New Haven Hospital, she made an in depth investigation as to whether or not they had committed a wrong against her, and as to whether the wrongs committed constituted Medical Malpractice.

The plaintiff had appointment with four separate plastic and cosmetic surgeons in the months of March, April, and May of 2001, who all affirmed the plaintiff's belief that her suit was not frivolous and that she had a valid claim against the defendant's.

All four of the plastic/cosmetic surgeons seen were Board Certified, and are of good standing and the highest credentials.

The four surgeons are from the states of Connecticut, Pennsylvania, and New Jersey.

Further, as this is an action based not solely on Lack of Informed Consent, but wholly on total Lack of Consent, it is not merely a Medical Malpractice action, and the plaintiff, did not need to verify that she did not give her Consent to the surgical actions taken by the defendant, Dr. John Persing, as she herself knows she did not, and knows she has the Constitutional right to make her own decisions about her body, and therefore knows when that right was denied.

Finally, in the months immediately following the operation of December 6, 2000, the plaintiff contacted both the Risk Management department of Yale-New Haven Hospital, and the Patient Relations department, and spoke with them many times over the issues alleged in this Complaint, to which they agreed that if what the plaintiff claimed was true, she had been wronged.

38

The plaintiff is able if necessary to deliver the names of the physicians contacted to prove the truth of this Certificate of Good Faith.

Respectfully Submitted

*Hadley Macpherson*

Hadley Macpherson

P.O. Box 501

Lahaska, Pa  18931

(215) 872 - 2194

(215) 325 - 1001

39

# **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this day, January 24, 2004, to Attorney Penny Seaman, of Wiggins and Dana, Trumbull Street, New Haven Connecticut.

Plaintiff Pro Se

Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 872 - 2194
(215) 325 -1001