UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA EGAN (a/k/a HADLEY MACPHERSON), | : |
| Plaintiff, | : |
| | : CASE NO. 302CV1973 (JCH) |
| v. | : |
| | : |
| YALE MEDICAL GROUP, YALE-NEW HAVEN HOSPITAL, YALE PLASTIC SURGERY and DR. JOHN PERSING, | : |
| | : APRIL 7, 2004 |
| Defendants. | : |

MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

On March 6, 2003, the plaintiff Lisa Egan (a/k/a Hadley MacPherson) filed an action against Yale University [1], Yale New Haven Hospital ("Hospital") and Dr. John Persing ("Defendants") claiming that they failed to obtain her informed consent to cosmetic surgery performed by Dr. Persing at the Hospital on December 6, 2000. On March 26, 2003, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiff's failure to file a certificate of good faith as required by Connecticut General Statutes § 52-190a(a) mandated dismissal of the action. Ten months later, plaintiff filed a thirty-six page Amended Complaint, which now includes a good faith certificate. *See* January 24, 2004 Amended Complaint.

Plaintiff's Amended Complaint is a two-count complaint. In each Count, the plaintiff alleges that the defendants failed to obtain her consent to a portion of the cosmetic surgery that

---

[1] The plaintiff named Yale Medical Group and Yale Plastic Surgery as defendants in this action. Neither of these groups are independent entities susceptible to suit, but rather are departments within Yale University. Yale University has appeared in this action.

Dr Persing performed in December 2000. In the First Count, the plaintiff alleges inadequate consent to the "Brow Lift"; in the Second Count, she claims inadequate consent to the Septoplasty and Rhinoplasty on her nose. *See id.* at Count One, pp.25 to 31, ¶¶177-193 ("surgical actions taken without consent") and Count Two, pp. 31 to 36, ¶¶ 215-224 ("surgical actions taken without consent"); *see also* Certificate of Good Faith at p. 38 ("this is an action based not solely on Lack of Informed Consent, but wholly on total Lack of Consent, it is not merely a Medical Malpractice action, and the plaintiff, did not need to verify that she did not give her Consent to the surgical actions taken . . . .")

The Defendants have now moved to dismiss the Amended Complaint, in whole or in part, because plaintiff has failed to assert a viable cause of action against them.

## I. YALE-NEW HAVEN HOSPITAL DID NOT OWE A DUTY TO MS. EGAN TO OBTAIN OR INSURE HER INFORMED CONSENT

### A. The Existence Of A Duty Is A Question Of Law.

"The existence of a duty is a question of law and '[o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.'" *Petriello v. Kalman*, 215 Conn. 377, 382–83 (1990) (quoting *Shore v. Stonington*, 187 Conn. 147, 151–52 (1982)); *accord Mendillo v. Bd. of Educ. of East Haddam*, 246 Conn. 456, 483 (1998); *Jaworski v. Kiernan*, 241 Conn. 399, 404 (1997); *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 384 (1994). "If the court determines, as a matter of law, that a defendant owes no duty to a plaintiff, a verdict should be directed because '[i]t is merely reaching more speedily and directly a result which would inevitably be reached in the end.'" *Petriello*, 215 Conn. at 383 (quoting *People's Sav. Bank v. Borough of Norwalk*, 56 Conn. 547, 556 (1889), and *Simmons v. S. Conn. Gas Co.*, 7 Conn. App. 245, 250 (1986)).

**B.     The Hospital Had No Duty To Obtain Ms. Egan's Consent Itself Or To Guarantee That Her Physician Obtained Her Consent.**

It is well settled in Connecticut, and across the country, that a hospital has "no duty to obtain [a patient's] informed consent for surgery to be performed by a nonemployee physician" or "that a hospital, whose facilities are utilized by independent physicians, as a kind of surety, must guarantee that informed consent is obtained prior to the commencement of any surgical procedure." *Petriello v. Kalman*, 214 Conn. 377, 384–85 (1990) (citing *Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 292, 306 (1983)).[2] Rather, it is the non-employee surgeon's "responsibility, and his responsibility alone, to obtain the informed consent of his patient, prior to commencing any surgical procedure." *Petriello*, 214 Conn. at 387–88. As the Court in *Goss v. Oklahoma Blood Institute*, 856 P.2d 998, 1001, 1006–07 (Okla. Ct. App. 1990), explained, there is *no authority* "imposing a like duty on *hospitals* to inform patients of potential risks and/or available alternatives to a particular procedure or treatment." *Id.* at 1007 (emphasis in original). Instead, it found that authority from other jurisdictions "reveals a consistent rejection of imposition of the duty to inform on hospitals, even in the presence of a statutorily mandated duty to inform." *Id.* (collecting cases). It therefore held that the plaintiff could not proceed against the hospital:

> Like these jurisdictions, we now refuse to impose upon hospitals the duty to inform patients of the material risks of a procedure prescribed by the patient's physician. To impose upon a hospital the duty to inform would be to require a

---

[2] Connecticut law is in accord with the law of other jurisdictions. *See, e.g., Giese v. Stice*, 567 N.W.2d 156, 162–64 (Neb. 1997) (holding that hospital has no duty to secure informed consent of patient of non-employee physician); *Howell v. Spokane & Inland Empire Blood Bank*, 785 P.2d 815, 822–23 (Wash. 1990) (same); *Goss v. Oklahoma Blood Inst.*, 856 P.2d 998, 1001, 1006–07 (Okla. Ct. App. 1990) (same); *Pauscher v. Iowa Methodist Med. Ctr.*, 408 N.W.2d 355, 362 (Iowa 1987) (same); *Lincoln v. Gupta*, 370 N.W.2d 312, 318 (Mich. Ct. App. 1985) (same); *Cross v. Trapp*, 294 S.E.2d 446, 458–59 (W. Va. 1982) (same); *Cox v. Haworth*, 283 S.E.2d 392, 395–96 (N.C. Ct. App. 1981) (same); *Roberson v. Menorah Med. Ctr.*, 588 S.W.2d 134, 137 (Mo. Ct. App. 1979) (same); *Cooper v. Curry*, 589 P.2d 201, 204 (N.M. Ct. App. 1978) (same); *Parr v. Palmyra Park Hosp.*, 228 S.E.2d 596, 598 (Ga. Ct. App. 1976) (same); *Fiorentino v. Wenger*, 19 N.Y.2d. 407, 415–16 (N.Y. 1967) (same).

> hospital to intervene into the physician/patient relationship, more disruptive than beneficial to [the] patient.

*Id.* (internal quotation marks and citations omitted).

In refusing to impose a duty on hospitals to inform patients of the risks and alternatives involved with procedures performed by non-employee physicians, courts have consistently explained that such a duty would force hospitals to interject themselves unwisely into the physician-patient relationship, to the possible detriment of the patient. *Goss v. Oklahoma Blood Inst.*, 856 P.2d 998, 1001, 1007 (Okla. Ct. App. 1990) (citing *Howell v. Spokane & Inland Empire Blood Bank*, 785 P.2d 815, 822 (Wash. 1990), and *Alexander v. Gonser*, 711 P.2d 347, 351 (Wash. Ct. App. 1985)); *accord, e.g., Giese v. Stice*, 567 N.W.2d 156, 164 (Neb. 1997); *Cooper v. Curry*, 589 P.2d 201, 204 (N.M. Ct. App. 1978); *Parr v. Palmyra Park Hosp.*, 228 S.E.2d 596, 598 (Ga. Ct. App. 1976). As the court in *Roberson v. Menorah Medical Center* explained:

> The presentation to the patient of risks involved in prospective surgery cannot but call for some very nice judgments. On the one hand the patient is entitled to such information as he needs to make an intelligent decision and to give an informed intelligent consent. And yet the patient may have his apprehensions unnecessarily and unduly heightened if risks are unwisely presented, leading him to an imprudent choice. Risks must be placed in perspective. The one dealing with the patient at this point must have knowledge of the patient, his temperament, his intelligence, his mental condition and his physical condition. He must also have a knowledge of the surgery itself, its risks, whether imminent or remote, and whether it is pressing, deferrable or optional. He must know the availability of conservative methods of treatment, if any, and their promises for success as compared to the surgery. All these factors must be placed in the equation. The physician alone is equipped to make the delicate judgments called for.

588 S.W.2d 134, 137 (Mo. Ct. App. 1979) (citing *Fiorentino v. Wenger*, 280 N.Y.S.2d 373 (1967)).[3]

---

[3] Regardless of the distinction between the torts of lack of informed consent or failure to obtain any consent, one element remains common to both – the need to establish a duty on the part of the alleged tortfeasor to obtain consent. In this case, however, as has been clearly articulated above, the Hospital had

4

Because case law makes clear that the Hospital owed Ms. Egan no duty to obtain her consent itself or to ensure that her private treating physician did so, this Court should grant the Motion to Dismiss with regard to Yale-New Haven Hospital.

### II. COUNT TWO OF PLAINTIFF'S COMPLAINT APPEARS TO BE DUPLICATIVE OF COUNT ONE AND THEREFORE SHOULD BE DISMISSED

In each of the counts of the complaint, the plaintiff raises an informed consent claim against each of the defendants. It appears that the plaintiff has separated her claims into two counts because the December 6th surgery performed by Dr. Persing involved several procedures on her face, including a "Brow Lift", Septoplasty and Rhinoplasty. Although the plaintiff might have a different basis for her assertion that she was not adequately informed about different aspects of the procedure, there was a single surgery, a single requirement that consent be obtained, and a single claim for lack of consent. While different factual allegations are asserted in the First and Second Counts, the claim remains the same for both: that Dr. Persing performed facial surgery on December 6, 2000 without the plaintiff's informed consent. Thus, defendants move to dismiss the Second Count to the extent that it purports to be an independent cause of action from the First Count.

---

no duty to obtain Ms. Egan's consent or to insure that such consent had been obtained by her private physician. *See supra*. Therefore, this Court should grant the Hospital's Motion to Dismiss the plaintiff's Amended Complaint.

5

### III. CONCLUSION

For the forgoing reasons, the defendants request that the claims against Yale-New Haven Hospital be dismissed in their entirety and that Count Two of the Amended Complaint be dismissed as against the remaining defendants.

                                        DEFENDANTS,
                                      YALE MEDICAL GROUP
                                      YALE-NEW HAVEN HOSPITAL
                                      YALE PLASTIC SURGERY
                                      JOHN PERSING, M.D.

By: _____
      Penny Q. Seaman (ct05813)
      Bonnie L. Patten (ct12931)
      Wiggin and Dana LLP
      P.O. Box 1832
      New Haven, CT  06508-1832
      Tel: (203) 498-4400
      Fax: (203) 782-2889
      Email: pseaman@wiggin.com
             bpatten@wiggin.com

## CERTIFICATION

This is to certify that on this 7th day of April 2004, a copy of the foregoing was sent via certified mail, return receipt requested and first class mail, postage prepaid, to the pro se plaintiff:

Lisa Egan, n/k/a Hadley Macpherson
P.O. Box 501
Lahaska, PA  18931

_____
Bonnie L. Patten

\487\5009\450592.2