RECEIVED
JUL 12 2004

FILED
2004 JUL 16 P 2:59

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

### AT BRIDGEPORT

| | |
|---|---|
| HADLEY MACPHERSON (EGAN) | NO. 3:02CV1973 JCH |
| PLAINTIFF | |
| VS. | JULY 8, 2004 |
| DR. JOHN PERSING | LETTER TO THE |
| and | COURT |
| YALE NEW HAVEN HOSPITAL | |
| and | CIVIL ACTION |
| YALE UNIVERSITY | |
| DEFENDANTS | |
| | JURY TRIAL DEMANDED |

*[Handwritten judge's note in margin:]* Treating this as a motion to extend, it is granted to August 22, 2004. However, plaintiff must file her opposition brief by that date in this court. Will consider defendants' motion without opposition. So Ordered. [signature] 7/15/04

# **LETTER TO THE COURT**

To the Honorable Judge Hall,

On Friday, June 11, 2004, the plaintiff, Hadley Macpherson, saw the genetic specialist at Children's Hospital who is evaluating and treating both of the plaintiff's children.

The appointment, and the information that the plaintiff received as to the genetic basis of the disease, the prognosis, and the peripheral issues involved, was devastating. The plaintiff was unable to work given the news. Besides her own personal grief, the plaintiff had to phone her relatives and siblings, and transmit what she had hoped she would never have to.

At that time, it was however, verified to the plaintiffs, that a warmer climate would work to the benefit of the childrens' health, and possibly reduce some of the discomfort of the Dystonia.

The plaintiff, in anticipation of the news regarding climate, had already sent Loyal Egan's application in to a very fine private school located in Charlotte North Carolina, where he was immediately accepted. The plaintiff was only waiting for the doctors go ahead before making the final decision.

Immediately after the June 11, 2004, appointment, the plaintiff made plans to leave with her children and go down to North Carolina in search of possible housing, and so that Loyal Egan could also look at his school and meet with administration.

On Monday, June 14, 2004, the plaintiff spoke at length with Attorney Bonnie Patten, as Attorney Penny Seaman was unavailable, and explained in detail the nature of the news received.

Attorney Bonnie Patten re-iterated to the plaintiff, that the firm of Wiggins and Dana has no objection to any extension the plaintiff seeks to ask for, particularly under the present circumstances.

Further, Attorney Bonnie Patten again re-iterated that she and Penny Seaman had not changed their position as far as any extensions requested, in that they would still never be opposed to any extensions of time that the plaintiff, Hadley Macpherson, might seek in the future.

That statement had been said to the plaintiff many times since the case was originally filed, but precisely because of the length of time that has passed in the case, the plaintiff, Hadley Macpherson specifically questioned Attorney Bonnie Patten about it again that day of June 14, 2004, just to make sure that Wiggins and Dana had not changed their position on the issue, which Attorney Bonnie Patten assured the plaintiff they had not.

The plaintiff, based on that statement, made her Motion to the Court requesting until June 28, 2004, to bring her documents in. The plaintiff, and her children then immediately left for North Carolina, and returned on June 21, 2004.

When the plaintiffs returned home there was a letter from Wiggins and Dana telling the plaintiff not to contact any employees of Yale New Haven Hospital.

The attorneys for the defendants had learned that the plaintiff, Hadley Macpherson, had spoken by telephone with the Administrative Head of Anesthesiology, and ascertained the exact nature of the hospital's policy on nurses administering anesthesia without an Anesthesiologists supervision.

During the course of the phone call, after giving the plaintiff the requested information, the administrator asked the plaintiff why it was she wanted the information. At that point, the

plaintiff openly and courteously informed the administrator that she was a litigant in suit against the hospital, that a nurse had administered the anesthesia without an Anesthesiologist present, and that the medical record had fraudulently identified the nurse as a doctor, labeling her Dr. Aseidu in the medical record.

No threats or heated words were ever uttered in that phone call between the administrator and the plaintiff, even after the plaintiff identified herself and the purpose of the phone call. The plaintiff was merely asking a policy question, which the administrator had been happy to answer.

There was nothing illegal, threatening, or harassing, about the plaintiffs phone call, or the manner in which she made it. The administrator and the plaintiff had an extremely pleasant conversation.

Any individual is free to call any hospital to gain information about policies or procedures. The hospital itself maintains phone lines for just that purpose, which any person off the street is free to call and ask questions of at any time, whether they are a patient, have ever been a patient, or will ever be a patient.

Any litigant or attorney, is free to contact any staff of any company in suit they are against, in order to gather information. The litigant or attorney is not required to only ask for information through the attorneys of the defendants, as obviously the information given might not be from the best source, nor be complete, and would certainly be coming from a source that would carry bias and might have intention to distort or be discriminatory as to the information related back.

Further, if an attorney or plaintiff relied only on getting their answers through the opposing defendants' attorneys, the question might not be answered at all, or answered less openly and honestly, particularly if the employee ultimately being asked has been informed in

advance by the defendant's attorneys that there is a lawsuit pending. And the questions would not be answered in the plaintiff's time, but in the defendants.

It is not illegal to ask questions. It is the plaintiffs understanding that she is free to question any person she likes. Certainly, if any person contacted ever directly stated to the plaintiff that they did not wish to speak to her, or answer her, she would immediately go no further with them. But that has never been the case. Every conversation with every employee that the plaintiff has spoken with at Yale New Haven Hospital, has been extremely pleasant.

If the defendant's wish to inform their employees not to speak to the plaintiff, Hadley Macpherson, they can do so. But as long as the employees are willing to talk, the plaintiff, Hadley Macpherson, does not believe that she is doing anything wrong or illegal, and has free right to investigate her own case as she sees fit.

It was after Attorney Penny Seaman and Attorney Bonnie Patten's learning of the plaintiff's conversation with the administrative head of anesthesiology, that they mailed their letter to the plaintiff telling her that she should not be contacting anyone at the hospital for any reason, and that all questions must be answered only through their office.

On Thursday July 24, 2004, and through the weekend, the plaintiff, Hadley Macpherson became sick with a fever, nausea, and visual discomfort and irritation. The plaintiff believed she just had the flu again, and thought the eye discomfort was from the sickness itself, allergens, eyestrain from the computer screen, or her contact lenses. The plaintiff missed the Monday July 28, 2004 deadline due to that physical condition.

The plaintiff however, was not overly distressed about the date because she had the assurance of the defendants that they would be unopposed to any extension she might ask for, so she continued to try to finish the documents, as well as the document in the two other cases in

this Court, which were also due on June 28, 2004.

At the same time, however, the plaintiff, Hadley Macpherson's symptom's worsened so that on Thursday July 1, 2004, the plaintiff went to the doctor. The doctor assumed the plaintiffs symptoms were a flu also.

On Friday July 2, 2004, the plaintiff received a letter from Wiggins and Dana telling her that although they had told her they had been unopposed to any extensions she might ask for, they now were opposed to any extension the plaintiff would be seeking in the future.

The attorneys for the defendants did not mail that letter to the plaintiff, Hadley Macpherson, until June 28, 2004, knowing that the plaintiff, would be under the mistaken belief that if she missed June 28, 2004, that the defendant's attorneys would be unopposed to a further extension under the circumstances, as Attorney Bonnie Patten had just told her so on June 14, 2004. The attorneys waited to inform the plaintiff that they now felt differently until they knew that she had already blown the date.

[see Exhibit A - Attorney Bonnie Pattens letter dated June 28, 2004]

The plaintiff realizes that the defendant's attorneys are free to change their mind at any time, but not free to give an assurance that brings reliance upon, only to renig once the plaintiff relied on that assurance, and made a decision based on that assurance.

The plaintiff could not have known until July 2, 2004, that the missing of the requested June 28, 2004, would now bring opposition to her filing later. If the defendants wish to object to any further extensions they of course are free to do so, but the plaintiff feels they should not be free to object to this request for extension, since they already gave their assurance to the plaintiff of their agreement to it, an assurance she relied on, and only informed her otherwise once she had relied on it.

On Saturday morning, July 3, 2004, the plaintiff, Hadley Macpherson, still feeling ill, and suffering from more eye discomfort and lack of visual acuity, went to the Optometrists to pick up a new pair of contacts, in hopes that the eye pain could at least be abated so she could finish the documents. The left eye had begun to look a little red.

When the optometrist looked into the plaintiffs left eye with the instruments to check to see the reason for the discomfort, blurriness, tearing, and light sensitivity, the optometrist told the plaintiff that she needed to immediately go to the hospital because she would go blind if she did otherwise  The plaintiff had a bacterial infection and corneal ulcer sitting just below the center of the pupil, which would lead to blindness in two days, if not stopped.

The plaintiff, Hadley Macpherson since that day of Saturday, July 3, 2004, has been unable to work at the filings or documents at all. The eye itself is swollen due to edema, which causes both pain, blurred vision, and photophobia, which is extreme sensitivity to light. The iris is inflamed, and the cornea is infected with a bacterial infection which was the source of the nausea, the fever, and the eye pain the earlier week.

The plaintiff is being treated by a top ophthamologist, in the area, one Dr. Kristina Longshore, whose medical letter explaining the condition in greater detail is attached to this Letter to the Court, as an Exhibit.

The plaintiff, Hadley Macpherson, has waived privilege to the Court to speak to Dr. Longshore, if the Court needs to verify the information in her medical letter.

The plaintiff, Hadley Macpherson, needs at least two weeks more of treatment before she can work again without impairment at the computer screen, read, or drive. The photophobia inherent in both the Corneal Ulcer condition and the Iritis condition, and the eye strain associated with looking at a computer screen, as well as the blurred vision are all prohibitive of the plaintiff

accomplishing any real visual activity. And the Iritis itself cannot yet be treated at this time, because the steroid needed to cure that condition would interfere with the antibiotic currently being used to treat the bacterial infection of the corneal ulcer.

The plaintiff does not want to in any way risk the loss of her left eye by trying to force herself to visually perform with it before it is healed, as it is her only working eye, and without it she would be permanently disabled, and unable to drive, read, or walk without a cane for the remainder of her life.

Therefore, the plaintiffs are requesting an extension of time by which to allow the plaintiffs to bring their documents in.

Though the plaintiffs daughter, Rachel Egan, a nineteen year old, is capable of being dictated to, she does not in any way have the understanding of the law, the knowledge of the case in detail, or the understanding of the legal information needed to be contained in the documents, in order to complete the documents herself.

For the plaintiff, Hadley Macpherson to dictate that level of specificity and detail to Rachel Egan, would not only be a slow, painstaking, and almost impossible process, but a process which would most likely result in serious errors.

The attorneys for the defendants are opposed to this request, as evidenced by the Exhibit A letter, though the plaintiff argues that they have a right to oppose all future extensions, but not to an extension which they already led the plaintiff to believe would be unopposed, by not telling her they changed their mind until after she missed the previous date.

Wherefore, the plaintiff, Hadley Macpherson, respectfully requests an extension of time of by which to bring the documents in. The plaintiff, Hadley Macpherson does not know if she

will be able to complete the documents in ten days, or whether she will need three weeks to complete them. She only knows that she cannot see or look at anything at this moment in time, without pain and blurred vision.

Therefore, unable to ascertain an exact date to request, the plaintiffs ask for whatever amount of time that the Court feels is appropriate under the circumstances.

Respectfully Submitted,

*Hadley Macpherson*

Hadley Macpherson, plaintiff

P.O. Box 501

Lahaska, Pa 18931

(215) 325 - 1001

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this day, July 8, 2004, to Attorney Penny Seaman, of Wiggins and Dana, 265 Church Street, P.O. Box 1832, New Haven Connecticut, 06508 - 1832..

Plaintiff Pro Se

*Hadley Macpherson*

Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 325 -1001

Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, Connecticut
06508-1832
www.wiggin.com

Bonnie L. Patten
203.498.4367
203.782.2889 fax
bpatten@wiggin.com

# WIGGIN AND DANA

*Counsellors at Law*

June 28, 2004

Lisa Egan (a/k/a Hadley Macpherson)
P.O. Box 501
Lahaska, PA 18931

Re:   Egan v. Yale Medical Group, et al.

Dear Ms. Egan:

In the past, we have represented to you that we would not oppose any request for an extension of time that you sought. However, given that this case has been pending for two years and you have been granted numerous extensions, we can no longer continue to agree to your seeking further extensions of time. Consequently, in the future, we will oppose any extensions of time that you may seek.

If you have any questions, please feel free to contact me.

Very truly yours,

Bonnie L. Patten

BLP/saf

\487\5009\475094.1

*New Haven   Stamford   New York   Hartford   Philadelphia*