FILED

2004 AUG 24  A 10: 15

U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

---

## AT BRIDGEPORT

| | |
|---|---|
| **HADLEY MACPHERSON (EGAN)** | **NO.   3:02CV1973 JCH** |
| PLAINTIFF | |
| | **AUGUST 22, 2004** |
| **VS.** | |
| | |
| **DR. JOHN PERSING** | ~~MEMORANDUM OF LAW~~ Motion |
| and | **IN OPPOSITION TO** |
| **YALE NEW HAVEN HOSPITAL** | **DEFENDANTS' MOTION TO** |
| and | **DISMISS ALL CLAIMS** |
| **YALE UNIVERSITY** | **AGAINST YALE-NEW HAVEN** |
| DEFENDANTS | **HOSPITAL, AND COUNT TWO** |
| | **AGAINST DR. JOHN PERSING** |
| | **AND YALE UNIVERSITY** |
| | |
| | **CIVIL ACTION** |

# MOTION IN OPPOSITION TO DEFENDANTS' MOTION

# TO DISMISS ALL CLAIMS AGAINST YALE-NEW HAVEN HOSPITAL,

# AND COUNT TWO AGAINST DR. JOHN PERSING

# AND YALE UNIVERSITY

## History

On November 6, 2002, the plaintiff, Lisa Egan, (aka Hadley Macpherson) filed an action against the defendants Yale-New Haven Hospital, Dr. John Persing, and Yale University, for claims arising out of cosmetic procedures that were surgically performed on the plaintiff's body on December 6, 2000, without her consent and against her will.

On January 26, 2004, the plaintiff, Lisa Egan, filed an Amended Complaint, averring with specificity the events and allegations upon which she believed, in good faith, that she was entitled to recovery.

The defendants, Yale-New Haven Hospital, Dr. John Persing, and Yale University, filed a subsequent Motion to Dismiss dated February 17, 2004, seeking the following relief:

1.  The defendants request the dismissal of all claims against the defendant, Yale-New Haven Hospital, on the contention that the hospital owed no legal duty to the plaintiff, Hadley Macpherson, as it cannot be held liable for acts committed by a non-employee physician.

1

2.    The defendants request the dismissal of Count Two against the remaining

defendants, Dr. John Persing, and Yale University, on the following contentions

as quoted from their Motion to Dismiss:

    a.    "there was a single surgery"

    b.     "a single requirement that consent be obtained"

    c.     "a single claim for lack of consent"

    d.    "the claim remains the same for both (counts): that being that Dr.

       Persing performed facial surgery on December 6, 2000, without

       the plaintiff's informed consent"

    e.    the Second Count "purports to be an independent cause of action

       from the First Count".

    f.     "there is no basis upon which a single negligence claim can be

       separated into two counts."


In determining whether the defendants are entitled to the relief they seek, there are

therefore the following issues before the Court:

1.    Is the defendant, Dr. John Persing, an actual employee of the defendant, Yale-

New Haven Hospital, for whose actions they are responsible under the theory of

Respondeat Superior, or was the defendant, Dr. John Persing, an independent

contractor?

2.    Did the defendant, Yale-New Haven Hospital, owe a duty to the plaintiff, Lisa

Egan, as an independent tortfeasor, and/or under the theory of Respondeat

Superior, or Ostensible Agency?

3.    Was there a single requirement that Consent be obtained?

4.    Was there a single claim for "lack of consent"?

5.    Was the plaintiff's claim the same for both counts, "that being that Dr. Persing

Persing performed facial surgery on December 6, 2000, without

the plaintiff's informed consent" ?        (as quoted from Motion to Dismiss)

6.    Was the plaintiff's claim merely a claim for lack of <u>informed</u> consent, or was the

plaintiff making a claim for <u>total lack of consent</u>?

7.    Was the plaintiff's claim a Negligence Claim, or an Intentional Tort Claim?

8.    Do the facts alleged in the Amended Compliant, if taken as true, support the

existence and occurrence of separate transactions, or tortious events, that would

each then carry their own separate and distinct liabilities based on the different

facts surrounding each transaction and event, entitling the plaintiff to claim them

in separate counts?

## <u>ARGUMENT</u>

### <u>As to Question #1</u>

#### <u>Yale-New Haven Hospital As Employer of Dr. John Persing</u>

In their Motion to Dismiss, the attorneys for the defendants argue that the defendant,

Yale-New Haven Hospital cannot be held liable for any failure to obtain a patient's consent to a

surgical procedure, or acts surgically committed against a patient without the patient's consent,

3

when the physician performing the operation is a <u>non-employee</u> physician. However, that argument can only be legitimately made if the physician alleged against is in fact a <u>non-employee</u> of the defendant hospital.

If the defendant, Dr. John Persing, were in actuality an employee of the defendant, Yale-New Haven Hospital, and alleged against for torts committed while acting in the scope of his employment, then the argument offered by the defendants would be moot. The established law, and cases cited by the defendants in their Motion to Dismiss, only provide legal support for the insulation of a hospital from liability where the relationship of the defendant physician to the defendant hospital is that of an independent contractor.

Nowhere in the defendants' Motion to Dismiss did the attorneys for the defendants ever make the claim that the defendant, Dr. John Persing is a non-employee physician. While non-employee status is implied by the argument put forth in the Motion to Dismiss, the defendants make no attempt to directly state that the defendant physician, Dr. John Persing, is not employed by the defendant hospital, Yale-New Haven Hospital.

The plaintiff argues that the reason for that omission of what would be the most material fact needed to support the defendants' argument, is that the defendant, Dr. John Persing, <u>is in fact</u> an employee of the defendant, Yale-New Haven Hospital, and was so at the time he operated on the plaintiff on December 6, 2000.

To the best of the plaintiff's belief and knowledge, the defendant, Dr.John Persing, is Chief of Plastic Surgery of Yale New Haven Hospital.

The plaintiff, Lisa Egan, is certain of the employment status of the defendant, Dr. John Persing, because she validated that employment status through the defendant, Yale-New Haven Hospital's own Medical Staffing Office, and own Office of Risk Management, on several

occasions.

Further, the defendant, Yale-New Haven Hospital, made representations to the plaintiff, Lisa Egan, back in the autumn of 2000, that led her to believe before she had ever met the defendant, Dr. John Persing, that he was their actual employee, and those representations were continually made throughout the period of time that the plaintiff was under the care of the defendant, Dr. John Persing.

The plaintiff, Lisa Egan, attaches to this Memorandum of Law, her Affidavit, which lays out with specificity the information that she was given by the defendant, Yale-New Haven Hospital, all of which support the assertion that the defendant, Dr. John Persing, is in fact an employee of the defendant, Yale-New Haven Hospital, and was so in December of 2000.

(Exhibit A:  Affidavit of Lisa Egan)

Therefore, the defendant, Yale-New Haven Hospital, which stands in the position of actual employer to the defendant, Dr. John Persing, can be held liable under the theory of Respondeat Superior for acts that its employee, the defendant, Dr. John Persing, committed while acting in the scope of his employment, and is therefore not entitled to be insulated from that liability and granted the relief sought in the defendants' Motion to Dismiss.

If, as a defense, the defendants wish to assert  that though the defendant, Dr. John Persing was an employee of the defendant, Yale-New Haven Hospital, in December 2000, the relationship between he the plaintiff, Lisa Egan, was formed privately, and therefore any acts committed by the defendant, Dr. John Persing, were committed outside the scope of his employment to the defendant, Yale New Haven Hospital,  that assertion would involve facts in dispute.

The conditions under which the defendant, Dr. John Persing, was chosen and employed,

and under which he surgically proceeded, and the representations made to the plaintiff, Lisa

Egan, which would have induced her to believe that the defendant, Dr. John Persing, was acting

in the scope of his employment to the defendant, Yale-New Haven Hospital, when he operated

on her, would have to be heard and decided on documentary and testimonial proofs, and as

matters of fact, are entitled to be heard and decided by the jury.

Further, if the defendant, Dr. John Persing, is in actuality <u>not</u> an employee of the

defendant, Yale-New Haven Hospital, as the attorneys for the defendants imply by their Motion

to Dismiss, then there is still the issue of whether or not the defendant, Yale-New Haven

Hospital, negligently held out, or misrepresented to the plaintiff, Lisa Egan, that the defendant,

Dr. John Persing, was their employee, and which misrepresentation caused her to hire him in the

first place.

If a reasonable man would have believed that the defendant, Dr. John Persing, was an

employee of the defendant, Yale-New Haven Hospital, given the representations made, then the

the defendant, Yale-New Haven Hospital can be held liable under the theory of Ostensible

Agency, regardless of whether the defendant, Dr. John Persing, were ever there actual employee

or not.

If the plaintiff, Lisa Egan, believed the representations of the defendant, Yale-New Haven

Hospital, regarding the employment of the defendant, Dr. John Persing, and relied on those

representations when choosing the defendant, Dr. John Persing to be her physician, and those

representations were false, then her trust, her body, and her freedom to choose who should touch

her, and who should not, were all violated.  And though that violation would be unintentional if

the misrepresentation were unintentional, the defendant, Yale-New Haven Hospital, <u>can</u> be held

liable for any harm suffered as a result of the misrepresentation.

6

As stated in the plaintiff's Affidavit, the plaintiff, Lisa Egan believes, and has always believed, that the defendant, Dr. John Persing, is the employee of the defendant, Yale-New Haven Hospital, and was so when he operated on her on December 6, 2000.

The plaintiff, Lisa Egan, would never have chosen the defendant, Dr. John Persing, if he were not who and what the defendant, Yale-New Haven Hospital represented him to be, the Chief of Plastic Surgery, of Yale-New Haven Hospital.

The representations made to the plaintiff, by the defendant, Yale-New Haven Hospital, which cause her now to contend that the defendant, Dr. John Persing, is an employee of the defendant, Yale-New Haven Hospital, are listed below. (see also Exhibit A:  Affidavit of Lisa Egan)

1.     Yale-New Haven Hospital's Medical Staffing Office verified to the plaintiff, Lisa Egan, on several occasions, that the defendant, Dr. John Persing, was an employee of the defendant, Yale-New Haven Hospital, and that he was Chief of Plastic Surgery at the hospital..

2.     Yale-New Haven Hospital's internal legal department, known as the Office of Risk Management, verified to the plaintiff, Lisa Egan, on several occasions, that the defendant, Dr. John Persing was an employee of the hospital, and Chief of Plastic Surgery.

3.     Yale-New Haven Hospital's Physician Referral line, told the plaintiff, Lisa Egan, back in the autumn of 2000, that Dr. John Persing, was on staff as their Chief of Plastic Surgery.

7

4..    Yale-New Haven Hospital is made up of several buildings which are connected by open hallways, where there is no actual internal division between buildings, and one can freely walk from portion of the hospital to another through those buildings.

5.    The building that the defendant, Dr. John Persing, has his office in, and sees his patients in, is named and referred to as the "Yale Physicians Building".

6.    The Yale Physicians Building is connected internally by a short glass hallway that runs over Howard Avenue to the main building of Yale-New Haven Hospital, with no doors or walls dividing the two.

7.    There is no indication that one is not inside Yale-New Haven Hospital, or has left the hospital, when one is standing in the Yale Physicians Building.

8..    The causeway itself is not an indication of ownership, separation, or domain, as it was merely created to overcome the road beneath. Many companies and hospitals have causeways that lead people from one part of a company or hospital to another.

9..    The Yale Physicians Building is connected internally to the parking garage that is Yale-New Haven Hospital's parking garage, and in order to get to the garage from the main building of Yale-New Haven Hospital one must cross the causeway

8

into the Yale-Physicians building and go down the elevators, unless one wants to walk outside and cross the street.

10.    Yale-New Haven Hospital's Plastic Surgery Department, is located in the Yale Physicians Building.

11.    The offices, examination rooms, and seating area, of Yale-New Haven Hospital's Plastic Surgery Department are one and the same as the defendant, Dr. John Persing's offices, examination rooms, and lobby area.

12.    There is no other location within Yale-New Haven Hospital that is referred to as the Plastic Surgery Department.

13.    When phoning Yale-New Haven Hospital, and asking for the Plastic Surgery Department, you are transferred to the defendant, Dr. John Persing's telephone extension, which is located in the Yale Physicians Building.

14.    On the wall in the seating area of Yale-New Haven Hospital's Plastic Surgery Department, located in the Yale Physicians Building, where Dr. John Persing has his office and examination rooms, there is a sign which lists the plastic surgeons of the Plastic Surgery Department.

15.    The defendant, Dr. John Persing, is listed on that sign as Chief of Plastic Surgery.

9

16. The title of Chief of Plastic Surgery is not normally used in a private practice, but in a hospital. To be Section Chief, one must have something they are Chief of.

17. On any fax coming from the defendant, Dr. John Persing's offices, the name "Yale Plastic Surgery" is stamped from the fax machine itself, as indicating where it came from.

18. Documents from the plaintiff's file that were faxed from Dr. Persing's office to the Medical Record Department of Yale-New Haven Hospital, carry the fax machine stamp at the top of the document stating that the fax came from "Yale Plastic Surgery", which is one and the same as the Plastic Surgery Department of Yale-New Haven Hospital.

19. The Consent Form handed to Lisa Egan by Dr. John Persing, on November 27, 2000 was entitled "Yale-New Haven Hospital", and there was no other Consent Form offered with it, under any other name.

If a consumer goes into a Gap store, they have a reasonable belief that the product they are about to purchase inside is a Gap product. Whether it be Gap clothing, Honda automobiles, or Coach handbags, the brand name held out to the consumer on the storefront sign identifies the product within, and offers promises and assurances about that product.

If it were found that retailers were using inappropriate names to induce consumers to

10

enter, and then selling them a product that was wholly different and less than what was stated on the storefront, then the use of the name as a lure, and the sale of the product under the false name, would constitute fraud.

A car sold as a Honda, but which is actually not a Honda, and comes without a warranty from Honda, is not a Honda, cannot be misrepresented to the consumer as a Honda, and that misrepresentation cannot be made profit from.

Further, in any mall in America, when one finds a Gap store directly next to another Gap store, or a Victoria Secret Store directly next to another Victoria Secret store, the reasonable consumer believes that though the products within may be different by type, (such as children's clothing versus adult clothing, or lingerie vs. perfume), they are still none the less what they proclaim to be, products of the same brand name, and products that bring with them the security and guarantee associated with the name brand offered.

This is no different.

The defendant, Yale-New Haven Hospital, was previously called Yale Medical Center, and is commonly referred to as "Yale" by both its own staff, and the community and patients it serves.  The defendant, Yale-New Haven Hospital, itself, defines and advertises their "Yale" product as "world class" on their website.   The name "Yale" therefore, when used in a medical context, or used to refer to medical facilities, is referring to a brand name of medical treatment, a very specific brand, and a "world class" brand.

A prospective patient phoning Yale-New Haven Hospital in search of a physician in a particular field, is in no way  looking to enroll in an ivy league university. . They are looking to obtain a physician who will offer them the world class medical treatment that the defendant, Yale-New Haven Hospital claims that it offers.

11

Therefore, when a prospective patient phones "Yale-New Haven Hospital" or walks into the "Yale Physicians Building", they do not believe that they are entering Yale University, and would have no logical reason to believe they are entering Yale University, as they entering a medical facility for medical purposes, and not a college for academic purposes.

When a potential patient telephones the defendant, Yale-New Haven Hospital's main, phone number, 203 - 688 - 4242, asking for a particular department of the hospital, whether that be Orthopedics or Plastic surgery, and are unknowingly transferred over to the Yale Physicians Building, they have the reasonable belief that they are still speaking the to defendant, Yale-New Haven Hospital's staff and physicians. No one tells them any different.  The staff in those medical departments located in the Yale Physicians Building, never indicate to the patient that they have been transferred to staff and physicians who are not actually employed by the hospital.

When one phones IBM they have reasonable expectation that when they are transferred from the main trunk line, that they are still speaking to the employees of IBM.

This is no different.

Therefore, if it is true that the staff and physicians in the Yale Physicians Building are not in reality Yale-New Haven Hospital employees, then the defendant, Yale-New Haven Hospital is intentionally drumming up business for particular outside physicians by inducing a belief in the caller that the physicians answering their query are "world class" physicians employed by their "world class" hospital, and in making that misrepresentation are taking away the free choice and will of the would be patient to hire who he wishes, know who he is hiring, and understand under what guarantee of services he has hired him.

While that misrepresentation may occur without malice or deliberate intent to misrepresent or defraud, it is misrepresentation just he same, and if the plaintiff, Lisa Egan,

12

believed in the name, the signs, and the transfers of the telephone switchboard, then she must not
be the first and only one deceived.

Common sense dictates that the common man believes what he is told, and what he sees,
and does not presume things to be other than what they are represented to be, or question whether
what appears to be blatantly true and logical, is in actuality blatantly false and illogical.

If the defendant, Dr. John Persing, is not in actuality in the employ of the defendant,
Yale-New Haven Hospital, then the defendant, Yale-New Haven Hospital is liable for willful,
reckless, and wanton conduct.

The defendant, Yale New Hospital, is an institution made up of professionals who deal
with the general public on a daily basis, an often times uneducated or non-English speaking
public. As such, the hospital has a responsibility to be aware, and must be aware, of how things
appear to the common and reasonable man, and therefore must fully expect that a fair number of
patients will seek treatment from a physician who has his practice in the Yale-Physicians
Building, believing they are being treated by Yale-New Haven Hospital, and a physician in their
employ.

The common man is not going to directly question a physician, never mind a Chief of a
surgical department, as to whether he is what he appears and holds himself out to be. Neither is
the common man going to question whether the offices he is sitting in actually belong to Yale-
New Haven Hospital, when the physical signs around him, and telephone operators, have already
informed him that he is in the domain of Yale-New Haven Hospital, and under the care of
physicians they actually employ.

Nor should the common man have to.

The common and reasonable man has believed the storefront representation. Ask a patient

13

leaving the hospital or offices they were just in, and they will say "Yale".

Therefore, the "Yale Physicians Building", by its name, and its direct physical proximity to "Yale-New Haven Hospital", deceives the patient who enters it. The patient believes he is protected by the "world class" name brand, only to learn after injury that he has no protection at all.

The common man has not studied medical malpractice law, and has no idea what an independent contractor is, or that an independent contractor can work and maintain offices in the very facility that carries the name of the hospital. The common man is reasonable, and believes that a shingle hung under a larger shingle, is in fact purporting itself to be under the authority and guarantee of that larger shingle.

The plaintiff, Lisa Egan, was led to a reasonable belief that the defendant, Dr. John Persing, was an employee of the defendant, Yale-New Haven Hospital. As a result of that reasonable belief, the plaintiff, Lisa Egan, was induced to put her to trust in the defendant, Dr. John Persing's expertise, and hired him based on that belief and trust, fully expecting the guarantee of protection and assumption of responsibility by his employer, Yale-New Haven Hospital, if anything were to go wrong with her surgery or treatment.

The defendant, Yale-New Haven Hospital, therefore, whether actually the employer of the defendant, Dr. John Persing, or not, is able to be held vicariously liable for any harm stemming from their misrepresentation, under the theory of Ostensible Agency, if a jury were to agree that the defendant, Yale-New Haven Hospital, held itself out as being the defendant, Dr. John Persing's employer, and that the plaintiff, Lisa Egan, relied on that representation.

14

**As to Question # 1 and # 2**

**The Yale-New Haven Hospital Consent Form**

The contents of the defendant Yale-New Haven Hospital's Consent Form, and the circumstances under which it was signed, established a separate duty owed to the plaintiff, Lisa Egan by the defendant, Yale-New Haven Hospital, and provides a further basis for liability which the defendant, Yale-New Haven Hospital, should not be insulated from.

The defendant, Yale-New Haven Hospital, and the defendant, Dr. John Persing, knowingly made and endorsed reckless misrepresentations through the use of the defendant, Yale-New Haven Hospital's Consent Form, misrepresentations that mislead the plaintiff, Lisa Egan into believing that the defendant, Dr. John Persing, was the employee of the defendant, Yale-New Haven Hospital, and that she was under the protection, authority, and guarantee of the defendant, Yale-New Haven Hospital, when she was being operated on by the defendant, Dr. John Persing.

The defendant, Yale-New Haven Hospital, can and should be held liable for those misrepresentations and any harm resulting from those misrepresentations whether or not they were in actuality the direct employer of the defendant, Dr. John Persing.

The defendant, Dr. John Persing held out the defendant, Yale-New Haven Hospital's Consent Form as establishing an agreement of consent between all parties referred to and represented on that Consent Form, those being the plaintiff, Lisa Egan,, the defendant, Dr. John Persing, and the defendant, Yale-New Haven Hospital.

The defendant, Dr. John Persing, in holding out the defendant, Yale-New Haven

15

Hospital's Consent Form, further represented that he himself was an employee of the defendant, Yale-New Haven Hospital.

The name "Yale-New Haven Hospital" is clearly typed at the top of the Consent Form that the plaintiff, Lisa Egan, signed on November 23, 2000.

When the defendant, Dr. John Persing, induced the plaintiff, Lisa Egan, to sign the Consent Form, he was representing to the plaintiff, Lisa Egan, that he was acting not only on his own behalf, but as the defendant, Yale-New Haven Hospital's agent, and employee.

When the defendant, Dr. John Persing, handed the plaintiff, Lisa Egan the Consent Form to sign, he did not tell the plaintiff to go seek the advice of an attorney to explain to her that the Consent Form merely fulfilled the defendant, Dr. John Persing's requirement to the defendant, Yale-New Haven Hospital, or that the Consent Form in no way represented any reciprocal duty that the defendant, Yale-New Haven Hospital, had to the plaintiff, Lisa Egan.

The defendant, Dr. John Persing, did not inform the plaintiff, Lisa Egan, that she should disregard the name "Yale-New Haven Hospital" on the top of the Consent Form, and that they were not a party to the agreement she was signing.

As in the signing of any form, contract, or agreement between parties, the party signing reasonably believes that they are establishing an agreement with the other parties represented on the form, contract, or agreement.

The defendant, Yale-New Haven Hospital, was represented by the use of its letterhead, as having a legal interest in the agreement written on the Consent Form.

The signing of the Consent Form established a legal agreement, or contract, directly between the plaintiff, Lisa Egan, the defendant, Dr. John Persing, and the defendant, Yale-New Haven Hospital, as those are the names and parties represented on the Form.

16

The defendant, Yale-New Haven Hospital, was present when the agreement was formed, right along with the defendant, Dr. John Persing, and the plaintiff, Lisa Egan, as they not only allowed, but insisted that their Consent form be used in the act of obtaining a patient's consent.

Therefore, the defendant, Yale-New Haven Hospital, not only held itself out to be the employer of the defendant, Dr. John Persing, but also held itself out to being a party to the act of consent being sought and given under the terms listed.

If the defendant, Yale-New Haven Hospital, as well as the defendants, Dr. John Persing and Yale University, seek to hold the plaintiff, Lisa Egan, to the Consent Form, and use the Consent Form as proof of the plaintiff, Lisa Egan's having given permission to the surgical acts listed on the Consent Form, due to her being a party to the agreement represented on the Consent Form, then they must conversely hold themselves to being a party also, and to ensuring that what was surgically performed on the plaintiff, Lisa Egan, was no more and no less than what was consented to on the Consent Form.

A contract, or agreement, written on a corporate or company letterhead, induces the reader to believe that the corporation or company are themselves being held to the terms of the four corners of the contract or agreement, regardless of the individual signers who put their names to that contract.

A contract signed by the sales manager of a company is just as binding as a contract signed by the president of that company, and both signatures, under the company letterhead, bind the company or corporation to the terms agreed to by the signers.

If that were not so, no one would never agree to sign contracts with corporations, as they would be voluntarily waiving the corporation's responsibility to fulfill their portion and duties of the contract. The making of the contract would only succeed in insulating and completely

17

releasing one party from liability, while wholly binding the other party to terms that are not reciprocated.

A Consent Form is a contract which makes an agreement that allows for the touching of one party by another, but only under certain conditions.

The defendant, Yale-New Haven Hospital should be held to the four corners of that contract, regardless of the subject of the contract, or whether the subject involves matters of consent, as they held themselves out to be a party to that consent.

If the common man signing a Consent Form is not made aware of the insulation and release of the other represented parties before he signs the Consent Form, then his consent is vitiated, as it was obtained under false pretenses, and he himself cannot be held to the terms of the Consent Form either.

The Yale-New Haven Hospital Consent Form established a contract with the plaintiff, Lisa Egan, as to how she would be touched and under what terms.

The Consent Form itself, by its letterhead induced a reasonable belief in the mind of the plaintiff, Lisa Egan, that she had entered an agreement with the defendant, Yale-New Haven Hospital, and their employee surgeon, the defendant, Dr. John Persing, as to that consent.

If the defendant, Yale-New Haven Hospital, is released from their responsibility under that contract, then the plaintiff, Lisa Egan, must be released from her responsibility under that contract, and no consent was given or agreed to in any way shape or form, by any party.

The terms of the Consent Form, or agreement, were that the plaintiff would give her Consent to be operated on by the defendant, Yale-New Haven Hospital's employee, the defendant, Dr. John Persing, but only for the procedures listed, and only under the terms to which that consent was given.

18

Any procedures not listed on the Consent Form are not consented to by that Consent Form.

Further, the procedures listed on the Consent Form, are only legally consented to if the defendant, Dr. John Persing apprised the plaintiff of the risks, side effects, and alternatives to the procedures about to be performed.

As the defendant, Dr. John Persing, did not apprise the plaintiff of any risks, side effects, or alternatives to the procedures listed, an omission that indicated that there were none, then the consent was obtained under false pretenses, and is therefore vitiated.

Finally, as the defendant, Dr. John Persing, went beyond the scope of what was consented to on the Consent Form, the consent was further vitiated.

.    If the defendant, Yale-New Haven Hospital,  seeks to maintain that they were never a party to the act of Consent in the first place, then they are admitting that they are willfully luring patients to believe that when they have signed the Consent Form they have placed themselves under the hospital's protection, and if acts are committed beyond what is consented to, that the hospital will assume responsibility for those acts, and any harm suffered.

To induce that belief and reliance in the mind of the patient, a reliance that they then suffer damage from, constitutes a misrepresentation that is wilfull, wanton, and reckless.

The defendant, Yale New Hospital, is an institution made up of professionals who deal with the general public on a daily basis, an often times uneducated or non-English speaking public.  As such, the hospital has a responsibility to be aware, and must be aware, of  how things appear to the common and reasonable man, and therefore must fully expect that a fair number of patients will sign the Consent Form, believe they are signing an agreement with the defendant, Yale-New Haven Hospital.

19

Further, the Consent Form offered by the defendant, Yale-New Haven Hospital, is the same form whether an actual employee physician, or an independent contractor physician is the surgeon being used.

Therefore, the common and reasonable man, about to sign a Consent Form, is under the reasonable presumption that the defendant, Yale-New Haven Hospital, is being held to the terms of that Consent Form, right along with the defendant, Dr. John Persing, regardless of his actual employment.

The common man is not going to question the existence of the corporate name at the top of the Consent Form, when the name of "Yale-New Haven Hospital" already informs him of its identity and presence in the agreement.

The common and reasonable man believes the storefront representation.

Therefore, the Consent Form, by the use of the name "Yale-New Haven Hospital" listed at the top, deceives the patient into believing that the defendant, Yale-New Haven Hospital, is promising to protect and guard them from unwanted touches, and agreeing to take responsibility if unwanted touches occur.

It is only after the patient is harmed, that he learns that the defendant, Yale-New Haven Hospital, merely uses the Consent Form to protect itself from liability.

The common man has not studied medical malpractice law, and has no idea that the Consent Form is designed to insulate the hospital, and provide release from responsiblity if an independent contractor physician performs the surgery.

The common man is reasonable, and believes that a larger shingle hung over a smaller shingle, is in fact purporting itself to be guaranteeing the acts and promises of the smaller shingle, and is ready and willing to take responsibility for those actions should they cause harm.

20

The issue of whether the defendant, Yale-New Haven Hospital's Consent Form established an actual agreement between the defendant hospital and the plaintiff, Lisa Egan, or whether as a result of a misrepresentation, the plaintiff, Lisa Egan, believed that she had formed an agreement with the defendant hospital, a misrepresentation that the defendant, Yale-New Haven Hospital, should be held liable for, is a matter to be decided by a jury.

The issue of whether the defendant, Yale-New Haven Hospital's Consent Form held out the defendant, Dr. John Persing, to be their employee, and whether the defendant, Yale-New Haven Hospital, should be held liable under the theory of Ostensible Agency if the defendant, Dr. John Persing, should turn out to be an independent contractor instead, is a matter to be decided by a jury.

The issue of whether the misrepresentations made by the defendant, Dr. John Persing, on the face of the defendant, Yale-New Haven Hospital's Consent Form, are misrepresentations that the defendant, Yale-New Haven Hospital, should be held responsible for under the theory of Respondeat Superior or Ostensible Agency, is a matter to be decided by a jury.

Finally, the issue of whether the misrepresentations involved in the signing of the defendant, Yale-New Haven Hospital's Consent Form, vitiates all consent, and what portions of those misrepresentations the defendant, Yale-New Haven Hospital, should be held liable for is a matter to be decided by a jury.

## As to Question # 1

## Yale-New Haven Hospital Received Direct Compensation

21

The defendant, Yale-New Haven Hospital, billed, and received direct compensation from the plaintiff, Lisa Egan's automobile insurance company, and medical insurance company, for the services performed by the defendant, Dr. John Persing, on December 6, 2000.

If the defendant, Dr. John Persing, were an independent contractor, he would have collected the money himself, and then disbursed it to the defendant, Yale-New Haven Hospital. In this case, the defendant, Yale-New Haven Hospital, sought payment for itself, and therefore considered itself a party to the transaction that is the subject of this suit.

**As to Question #2**

**Yale-New Haven Hospital's Responsibility for Dr. Gopal Grandhige**

The plaintiff, Lisa Egan, only recently learned that another physician operated on her without her consent on December 6, 2000.

The plaintiff, Lisa Egan, intends to amend her Complaint to include allegations against that physician, and that physician was the employee of the defendant, Yale-New Haven Hospital.

The plaintiff, Lisa Egan, prior to the surgery date, had obtained the defendant, Dr. John Persing's express promise that he would not allow any other physicians, or medical residents, to assist him in the performance of any of the four procedures done to the plaintiff, Lisa Egan's face.

22

Yet a medical first year resident, one Dr. Gopal Grandhige, assisted the defendant, Dr. John Persing, during the plaintiff, Lisa Egan's surgery on December 6, 2000

The presence and identity of Dr. Gopal Grandhige was never disclosed to the plaintiff, Lisa Egan, until she read it in the hospital medical record only a few months ago.

In the Operative Report that the defendant, Dr. John Persing, sent to the plaintiff, Lisa Egan, back in March of 2001, upon learing that he was to be sued, as well as in the identical Operative Report that the plaintiff, Lisa Egan, retrieved from Medical Records back in March 2001, there is no mention of any assisting physician.

The defendant, Dr. John Persing, omitted all reference to any assisting physician, and the fraudulent non-disclosure was only discovered after the plaintiff, Lisa Egan, made her fourth attempt to get the complete medical record from the defendant, Yale-New Haven Hospital.

Dr. Gopal Grandhige was a medical resident at the time that he assisted the defendant, Dr. John Persing, on December 6, 2000, and as such, was a paid employee of the defendant, Yale-New Haven Hospital.

Therefore, the defendant, Yale-New Haven Hospital  is liable for any wrongs committed by Dr. Gopal Grandhige, under the theory of Respondeat Superior.

**As to Question #2**

**Yale-New Haven Hospital's Responsibility for Nurse Rosemary Asiedu**

The plaintiff, Lisa Egan, only recently learned that a nurse rather than an anesthesiologist, placed her under general anesthesia, and without supervision or the authority to do so.

The plaintiff, Lisa Egan, leaned of that nurse's true identity because she was listed as a Doctor in the medical record that the defendant, Yale-New Haven Hospital,  recently sent to her.

When the plaintiff, Lisa Egan, tried to call to find out more about Dr. Asiedu, she learned that Rosemary Asiedu was not a doctor at all, but only a nurse.

The plaintiff, Lisa Egan, intends to amend her Complaint to include allegations against Nurse Rosemary Asiedu, and as Nurse Rosemary Asiedu is an employee of the defendant, Yale-New Haven Hospital, they are liable for any wrongs she committed while acting in the scope of that employment.

## As to Question # 2

## Yale-New Haven Hospital's Responsibility for the Dr. Peter Atanassoff

Upon learning of the true identity of Rosemary Asiedu, the plaintiff learned that Dr. Peter Atanassoff fraudulently signed the medical record, stating that he was present and supervising Nurse Rosemary Asiedu when she placed the plaintiff, Lisa Egan, under anesthesia, a fraudulent statement, as he was not in the room at all.

The plaintiff, Lisa Egan, intends to amend her Complaint to include allegations against Dr. Peter Atanassoff.

Dr. Peter Atanassoff is both an employee of the defendant, Yale-New Haven Hospital, and of the defendant, Yale University, and therefore, they are both liable for any wrongs he committed while acting in the scope of that employment.

## As to Question #3

## Separate Consent for Every Surgical Procedure is Required

Under the law, a surgeon must obtain consent for every procedure he performs, and therefore the law itself is stating that each procedure is separate from the other, and that the consent to one procedure does not give permission for the performance of another procedure.

The defense cannot be made that permission to operate on an eye gives permission to operate on a nose or a foot.

Even the type of procedure on a particular body part must be specified as consent to a radical mastectomy is wholly different from consent to removal of a lump.

Further, each procedure has its own ICD Code, and is billed for separately under different identification codes, and under different terms.

The defendant, Yale-New Haven Hospital, the defendant, Yale University, and the defendant, Dr. John Persing, each billed for the surgical procedures as separate procedures, under separate codes, and to separate responsible parties.

In this case, the plaintiff, Lisa Egan's automobile insurance, known as AMICA, was

25

covering the Septoplasty, and was billed for only that procedure by the defendant, Yale-New Haven Hospital, the defendant, Yale University, and the defendant, Dr. John Persing.

The plaintiff, Lisa Egan,'s medical insurance, known as Anthem Blue Cross Blue Shield, was covering the Blepharoplasty, and was billed for only that procedure by the defendant, Yale-New Haven Hospital, the defendant, Yale University, and the defendant, Dr. John Persing.

The Rhinoplasty and Forehead Lift (or Brow Lift) were not covered by any insurance company, but were billed only to the plaintiff, Lisa Egan.

Therefore, the defendant, Yale-New Haven Hospital's own billing department treated the four procedures separately when billing for them, an acknowledgment that the procedures are treated as separate and distinct.

Further, the terms under which each procedure was consented to, and the times and places at which those procedures were discussed were wholly different.

The statements made by the defendant, Dr. John Persing, which were indicative of Fraud were specific to each separate time and place, and to each specific procedure.

Finally, the Consent Form itself requires that each and every procedure be separately listed and named on its face, as the word "surgery", or "procedure", if encompassing all surgeries or procedures, would give a physician permission to touch anywhere and everywhere without restraint as to place or manner.

In this case, one of the procedures is not even listed on the Consent Form. The Forehead Lift, (also known as Brow Lift) was never written on the Consent Form. The decision to go forward was made after the Consent Form was signed to the other three procedures, and therefore the Consent Form could not have been giving consent to a procedure not even agreed to or fully discussed at the time the Consent Form was signed. .

Therefore, in this case, the requirement of Consent is a requirement that must be met four times, one for each and every procedure that was to be performed.

That there is only one Consent Form handed to the patient to sign, is only to perpetuate efficiency, and a conservation of paper.


## As to Question #4


### Separate Claims for Lack of Consent


The specific time, place, and terms of Consent to a procedure are what defines the measure of consent given, whether it was actually given at all, and whether it was overstepped.

In this case, the time, place, and terms of consent were different for the separate procedures, and therefore, there cannot be a single claim of "lack of consent".

Further, the procedures, which were wholly different from each other, and were billed for separately were individually overstepped or not consented to at all, depending on which procedure being addressed in this suit.

That the four procedures were performed on the same day does not make them one and the same, nor the lack of consent for them only one claim, as their performance on four separate days would make the performance no different, and claims just as separate as they are though performed in one six hour period for convenience.

The plaintiff, Lisa Egan, ought to be able to recover for the four distinct procedures under different claims, and the defendant, Dr. John Persing, not allowed to escape liability by throwing them together as if only one wrong were committed.

27

Further, the fraudulent statements made by the defendant, Dr. John Persing, with regards to the Brow Lift, were not the same fraudulent statements made by the defendant, Dr. John Persing, with regards to the Rhinoplasty or Septoplasty.

Since Fraud is proved by specificity of time and place, and the exact words and misrepresentations specific to that time and place, it cannot be proved if the specific facts and allegations surrounding the transaction are done away with.

The defendant's in stating that the second count is the same as the first, are merely attempt to thwart the plaintiff, Lisa Egan's ability to recover for those fraudulent statements, and resulting lack of consent to the Brow Lift, as those statements and allegations of time and place would be erased from the face of the Complaint, and the elements of Fraud defeated as to the issue of the Brow Lift.

Finally, the second count alleges that there is no Consent Form to the Brow Lift at all, so the transaction alleged in the first count does not cover the transactions alleged in the second count as to the Brow Lift.

Consent was given or not given under separate circumstances, on different occasions, therefore there is not a single claim of "lack of consent".

**As to Question #5 and #6**

**Lack of Informed Consent not the Full Actual Claim**

28

Lack of Informed Consent is not the larger issue alleged in the plaintiff, Lisa Egan's Amended Complaint.

The plaintiff, Lisa Egan, alleges a complete Lack of Consent, amounting to an Assault and Battery, given the allegations of intentional misrepresentation and Fraud that she made against the defendant, Dr. John Persing, and the further allegations that all consent was vitiated due to those fraudulent statements, and the acts he then took that went beyond what the plaintiff, Lisa Egan, had even consented to.

Under the law, Lack of informed Consent, has different elements to be met than the element of total Lack of Consent. Total Lack of Consent gives way to the intentional Torts of Invasion of Privacy, Assault and Battery, and False Imprisonment.

**As to Question #7**

**Claim for Intentional Tort Not Negligence**

While the defendant, Dr. John Persing, happens to be physician, the plaintiff, Lisa Egan's claims against him are obviously read as being those indicitive of an intentional tort, and are therefore not negligence.

**As to Question #8**

**Separate Transactions and Occurances each Carrying Separate Liabilities**

29

The plaintiff, Lisa Egan, in drafting her Amended Complaint, clearly stated the elements of Fraud, Breach of Contract, Invasion of Privacy, and Assault and Battery as well as others.

The plaintiff, Lisa Egan, went into a great deal of specificity to ensure that the time and place of each occurrence were specific to itself.

That the transactions and occurrences are separate is obvious, and they should therefore be treated as separate and allow for separate recovery.

Respectfully Submitted

*Hadley Macpherson*

Hadley Macpherson

P.O. Box 501 Lahaska

Pa  18931

30

# CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this

day, August 22 2004, to Attorney Penny Seaman, Wiggins and Dana, 265

Church Street, P.O. Box 1832, New Haven, CT 06508-1832.

Plaintiff Pro Se,

Hadley McPherson (Egan)
P.O. Box 501
Lahaska, PA   18931
(215) 325 - 1001