# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

## AT BRIDGEPORT

| | |
|---|---|
| HADLEY MACPHERSON (EGAN) | NO. 3:02CV1973 JCH |
| PLAINTIFF | |
| VS. | AUGUST 22, 2004 |
| DR. JOHN PERSING | PLAINTIFF'S AFFIDAVIT |
| and | IN OPPOSITION TO |
| YALE NEW HAVEN HOSPITAL | DEFENDANTS' MOTION TO |
| and | DISMISS ALL CLAIMS |
| YALE UNIVERSITY | AGAINST YALE-NEW HAVEN |
| DEFENDANTS | HOSPITAL, AND COUNT TWO |
| | AGAINST DR. JOHN PERSING |
| | AND YALE UNIVERSITY |
| | |
| | CIVIL ACTION |

## PLAINTIFF'S AFFIDAVIT IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ALL CLAIMS AGAINST YALE-NEW HAVEN HOSPITAL, AND COUNT TWO AGAINST DR. JOHN PERSING AND YALE UNIVERSITY

1. In early autumn of 2000, I needed to find a reputable plastic surgeon to perform surgery on my eyelids and nose, and I phoned the defendant, Yale-New Haven Hospital, in Connecticut.

2. Having previously lived in Connecticut, I knew of the defendant Yale-New Haven Hospital's reputation, and the reputation of its physicians, and since I wanted to ensure that nothing unfortunate would happen to me while under anesthesia, I wanted the security of knowing that I had minimized that risk by having a surgeon employed by Yale-New Haven Hospital, perform the surgery.

3. I had reason for being extra cautious, and I made known that reason to the defendant, Dr. John Persing, when I met him at the first appointment on October 23, 2000.

4.. At the time I was making the phone calls in September 2000 to Yale-New Haven Hospital, seeking to enlist their top physician to perform my surgery, I was very aware of the Connecticut state law that automatically awards a minor child to the other surviving parent if the custodial parent dies, realizing that there was more at risk on the operating table, than just my own well-being.

1

5. There were Restraining Orders against my ex-husband, the father of my children, and I had sole and primary custody of the children.

6. Those Restraining Orders had been in effect for two years, and neither child had any contact with their father.

7. My ex-husband was a historically violent man, and had admitted in Court to suffocating me, beating me, and putting my head in the toilet.

8. I had no reason to believe that he had changed, particularly since in the spring of 2000 he threw an ax from twenty five feet at my ten year old son.

9. Therefore, my motivation in contacting the defendant, Yale-New Haven Hospital, and inquiring about the plastic surgeons directly in its employ, was to ensure the utmost precaution against my untimely death occurring, by hiring the very best plastic surgeon in the employ of the defendant, Yale-New Haven Hospital.

10.. When I first made my inquiries to the defendant, Yale-New Haven Hospital, and asked them who was the Chief of Plastic Surgery at the hospital at that time, I was told that the defendant, Dr. John Persing, was Chief of Plastic Surgery, and one of their top plastic surgeons.

11.. Wanting to validate the defendant, Dr. John Persing's reputation, I phoned back twice, calling the Department of Plastic Surgery, and each time was told that the defendant, Dr. John Persing, had the highest reputation, and was Chief of Plastic Surgery at the hospital.

12. As a result of that information, I phoned the defendant, Dr. John Persing's office, and made an appointment to meet with the defendant, Dr. John Persing.

13. When I was given directions on how to get to his office, I was told to park in Yale-New Haven Hospital's parking garage on Howard Avenue.

14. I was told that the defendant's office was located in the Yale Physicians Building which is attached to both the main building of Yale-New Haven Hospital by a glass causeway running above Howard Avenue, and attached to Yale-New Haven Hospital's Parking Garage.

15. When I went to the appointment, the sign out in front of the defendant, Dr. John Persing's Building, read "Yale Physicians Building".

16. When I went up the elevator to the floor of the defendant, Dr. John Persing's offices, the sign above the corridor indicated that the plaintiff was entering the Plastic Surgery Department.

17. In the waiting area directly outside the door leading to the private offices and examination rooms of the Department of Plastic Surgery, a sign to the right of the door, listed all of the names of the doctors in the Department of Plastic Surgery, the top name being, the defendant's name, "Dr. John Persing", and it listed him as Chief.

18. At no time did I have reason to question whether the defendant, Dr. John Persing, was employed by the defendant, Yale-New Haven Hospital, as the name of the building, its attachment to the hospital's main building, the name above the department, and the sign on the wall, reinforced what I already believed to be true from what I had previously been told over the telephone many times, that the defendant, Dr. John Persing was an employee of the defendant, Yale-New Haven Hospital..

19. In the short two months prior to the operation on December 6, 2000, I was shown or handed only one piece of paperwork that had any letterhead on it, that being the Consent Form that I signed on November 27, 2000.

20. The letter head on that Consent Form was "Yale-New Haven Hospital". (see attached exhibit B)

21. Whenever I phoned the Yale-New Haven Hospital both prior and subsequent to the operation, in order to reach the defendant, Dr. John Persing, I asked for the Plastic Surgery Department, to which hospital's main switchboard always then transferred me to the office of the defendant, Dr. John Persing, and I would hear his secretary, Helen Rogeniel's voice in person, or on voicemail.

22. When I went to serve the defendant, Dr. John Persing, his copy of the Summons and Complaint in the lawsuit, I was told to have it served it at the legal offices of Risk Management at Yale-New Haven Hospital.

23. When I went to the defendant, Yale-New Haven Hospital's office of Risk Management located inside the main hospital, with the indifferent person who would perform the Service of the Summons and Complaint, the hospital's General Counsel, Sarah Cohn, accepted service for the defendant, Dr. John Persing in front of me, and wrote and signed a personal note stating that she was accepting service for the defendant, Dr. John Persing.
(see attached Exhibit C)

24. When, in preparing to litigate this suit this past autumn, I began to read the ALR books in the local law library here in Pennsylvania, and learned that some physicians were only independent contractors, I immediately phoned the defendant, Yale-New Haven's Office of Risk Management, anonymously, to verify once again, just to be sure, that the defendant, Dr. John Persing, was an employee of the defendant, Yale-New Haven Hospital.

25. When I asked the staff of the Office of Risk Management whether the defendant, Dr. John Persing was an actual employee of the defendant, Yale-New Haven Hospital,

4

or merely an independent contractor, the paralegal put down the phone and retrieved a file or list by which she looked up the defendant, Dr. John Persing's name, and then assured me that he was indeed an employee, and not an independent contractor.

26. The paralegal further verified that the defendant, Dr. John Persing, was covered under the defendant, Yale-New Haven Hospital's medical malpractice insurance.

27. Wanting to be thorough and avoid any errors in information I was gathering, and wanting to understand the theories of recovery available to me, and the liabilities able to be imposed on the different parties, I again anonymously phoned the office of Risk Management again, one month later, and when asking the same question as before, was given the same answer with regards to the defendant, Dr. John Persing's employment by the defendant, Yale-New Haven Hospital.

28. On another occasion several months ago, when attempting to verify the employment status of another individual connected with this case, I phoned the Medical Staffing office of the defendant, Yale-New Haven Hospital.

29. After asking about the other individual, I then went on to ask about the employment status of the defendant, Dr. John Persing, to which it was verified to me once more that he was not an independent contractor with hospital privileges, but an actual employee of the defendant, Yale-New Haven Hospital, and Chief of Plastic Surgery.

30. There was only one occasion on which anyone associated with this case ever placed doubt in my mind as to the employment status of the defendant, Dr. John Persing, and that occasion was six months ago.

31. I had once more phoned the defendant, Yale-New Haven Hospital's Office of Risk Management, to make inquiries about the defendant, Dr. John Persing, and his

5

39.     The above facts, as averred in items 1 - 45, are true to the best of my belief and knowledge.

The Affiant,

*Hadley Macpherson* (signature)

Hadley Macpherson

P.O. Box 501

Lahaska, Pa. 18931

(215) 325 -1001

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this day, August 23, 2004, to Attorney Penny Seaman, Wiggins and Dana, 265 Church Street, P.O. Box 1832, New Haven, CT 06508-1832.

Plaintiff Pro Se,

*Hadley McPherson*
Hadley McPherson (Egan)
P.O. Box 501
Lahaska, PA   18931
(215) 325 - 1001

| | |
|---|---|
| Unit No.: | **YALE-NEW HAVEN HOSPITAL** |
| Name: Lisa Egan | **PERMISSION FOR OPERATION, SPECIAL PROCEDURE OR TREATMENT** |
| Address: | |
| Birthdate: 12 34 13 | |
| (If handwritten, record name, unit no., and birthdate.) | Date 11/27/2000   Time 4:05 PM |

### SECTION "A"

The general purpose, potential benefits, possible hazards and inconveniences of **upper lid blepharoplasty, open septorhinoplasty, allogen injection to face**
_(Specify Operation, Special Procedure or Treatment)_

have been explained to my satisfaction by Dr. **J. Persy** and alternatives have been discussed. I, **self**, hereby consent to the performance of the
_(myself or name of patient)_

operation, special procedure or treatment named above under his/her direction, along with whatever anesthesia/sedation, medication or transfusion is necessary, the risks, benefits and alternatives of which have also been explained to me.

I authorize the Hospital and its Pathology section to preserve for diagnostic, scientific or teaching purposes or otherwise dispose of tissue, body parts, blood and/or body fluids removed as a result of the procedure authorized above. If the material is to be used for scientific or educational purposes, pertinent, anonymous medical information may be released with the specimen. I hereby relinquish all right, title and interest to the tissue, body parts, blood and/or body fluid, regardless of its ultimate use or disposition.

I further authorize my physician to do whatever may be necessary in the event that any unforeseen conditions arise during the course of the operation, special procedure, or treatment.

Signed _[signature]_
(Patient or person authorized to consent for patient)

### PHYSICIAN'S NOTE

I have informed _[signature]_ of the general purpose, potential benefits, possible hazards and
(Patient/Relative/Guardian)

inconveniences and alternatives to the above operation, special procedure or treatment along with any needed anesthesia/sedation, medication or transfusion.

ADDITIONAL PHYSICIAN COMMENTS _____

DATE: 11.27.00    _[signature]_
Signature of Responsible Physician

F-1696 (R090598)

Exhibit C

YALE-NEW HAVEN HOSPITAL

3-6-03

5:45 pm

Service accepted for
Yale-New Haven Hospital
Yale University D/B/A
    Yale Medical Group
    Yale Plastic Surgery
John Persing MD

Sarah D Coh
Director

Legal Affairs and Risk Management
CB Room 230
20 York Street
New Haven, CT 06504
203.688.2291