physician knows or should know would be regarded as significant by one in the patient's position when deciding whether or not to undergo the procedure, but that <u>if the physician knows of the patient's unique concerns this may expand the scope of the required disclosure.</u>

In disclosing to the particular patient the risks which the physician knows or should know would be significant to one in the patient's position, the particular patients position "must be taken into account". In looking to the patient's position one must look to his medical history and <u>any other factors which might make certain more important to the patient.</u>  Hartke v. McKelway, 707 F.2d 1544 (D.C. Cir, 1983)

This is applicable where a patient has given their consent under <u>very specific contingent terms</u>, and the <u>physician therefore knows that those terms would be negated</u>, and <u>consent revoked,</u> if full disclosure as to the nature of a procedure, the risks and side effects to that procedure, and the alternatives to that procedure were made to the patient.

The Restatement of Torts at §62 provides:

"That an invasion of an interest of personality of another who has not consented thereto does not give rise to liability if:

(1) the other is physically or otherwise incapable of giving consent,
(2) an emergency has arisen which makes it actually or apparently necessary to invade the interest before there is an opportunity to obtain consent,
(3) the invasion is, or is reasonably believed to be, so manifestly to the other's advantage that a reasonable man would give his consent if he had the opportunity to do so, and
(4) the actor <u>neither knows nor has reason to know</u> that the other would not have given his consent were there an opportunity to ask for it.

Therefore, a consent given on a contingent set of terms, is vitiated if the physician chooses to ignore those terms completely, or allowed those terms to be stated and agreed to full knowing that he had not made a full disclosure which affected the viability of those terms.

60

Consent to surgery which could be performed <u>only by violating the patients specific instruction does not confer authority on the physician to perform such operations</u>. Demers v. Gerety, 85 N.M. 641 515 P.2d 645 (1973) rev other grounds, 92 N.M. 749, 595, P2d 387 (1978).

Further, the obtaining of consent by the use of a Consent form, does not insulate the physician from the lack of full disclosure when he had reason to know that the patient would <u>not</u> have given their consent <u>but for the contingent terms under which it was given,</u> terms made and agreed to <u>without full disclosure</u> having been appropriately made.

In, <u>Kinikin v. Heupel,</u> 305 N.W.2d 589 (Minn. 1981) the surgeon was held liable for Battery and Negligent Non-Disclosure of Surgical Risks where the patient's consent was given on a contingent basis, <u>even though they signed a Consent Form.</u>

In <u>Pugsley v. Privetter,</u> 220 Va. 892, 263 S.E.2d 69 (1980). A surgeon was held liable for operation without the consent of the patient, <u>in spite of the fact that she had signed a consent form,</u> where the evidence was clear the patient had insisted repeatedly that she was not to be operated on in the absence of her gynecologist.

In <u>Meretsky v. Ellenby,</u> 370 So. 2d 1222 (Fla. App. 1979), it was held that where a patient signed a consent form for her surgeon to perform a "Rhinoplasty" (to correct a bump" on the bridge of her nose), <u>it could not be presumed that she also gave her consent for him to operate on the "tip of her nose especially after she had expressly instructed that such surgery not be done".</u> It was further found that the plaintiff need not produce evidence that the doctor's action was contrary to accepted standards of medical practice. The case involved <u>absence of consent,</u> not the <u>absence of informed consent.</u>

The court in <u>Nolan v. Kechijian,</u> 75 RI 165, 64, A2d 866, (1949) stated that while a surgeon must necessarily be allowed reasonable latitude in performing the operation or

procedure, within the patients consent, <u>no rule of law gave to him free will to operate at will.</u>

In <u>Johnson v. McMurray</u>, 461 So. 2d 775 (Ala. 1984)  the court held that the physician-patient relationship is a fiduciary relationship, and as such the law imposes an obligation on the physician to safeguard the interests of the patient.  This justifiable expectation on the part of the patient and duty on the part of the physician  may also arise out of the confidential nature of the relationship between the parties.  <u>The withholding of material facts by the physician is a breach of that duty and constitutes Fraud.</u>

It was held in <u>Nelson v. Gaunt</u>, 125 Cal. App. 3d 623, 178 Cal Rptr. 167 (1981) that the nature of the fiduciary relationship gives the plaintiff the right to believe what the physician tells him. When a fiduciary relationship exists and the physician abuses the confidence of the patient, an action for Fraud may be proper.

In <u>Schafer v. Lehrer</u>, 476 So. 2d 781 (Fla Dist. Ct. App. 1985) it was held that due to the fiduciary nature of the relationship, the physician's duty extends beyond non-concealment.  The physician has a duty to disclose any adverse condition known to him.

Finally, it was held in <u>Funke v. Fieldman,</u> 212 Kan 524, 512 P 2d 539, (1973)  that the physician may not mislead the patient in divulging the risks, and that <u>a misleading statement is equivalent to a false statement </u>when made by the physician in obtaining consent to a surgical procedure, and as such, <u>vitiates the plaintiff's consent.</u>

The doctrine of informed consent is most important in the situation where the procedure performed is different in nature from the one previously consented to.

Consent is necessary for the performance of operations different from the one for which the original consent was given.

It was held in <u>Banks v. Wittenberg,</u> 82 Mich. App. 274 266 N.W.2d 788 (1978) that

consent is vitiated if the physician acts outside the scope of the consent .

The Restatement of Torts § 54 states:

> "that to constitute a consent which would bar recovery for an invasion of plaintiff's interest of personality, the assent must be to an invasion substantially the same as that which is inflicted, adding, Comment a, that an assent to a particular operation does not permit a surgeon to perform another operation no matter how necessary to the patient's cure, except under circumstances of an emergency justifying an implication of consent."

The court in Estate of leach v. Sharipo, 13 Ohio App. 3d 393, 469 N.E.2d 1047 (1984) held that when a patient gives express consent to treatment of a particular condition through surgery, consent is implied for any procedure that will achieve the desired result except for those that were clearly not contemplated when the consent was given.

In Cross v. Trapp, 294 S.E. 2d 446 (W. Va. 1982), and Logan v. Greenwich Hospital Assn., 191 Conn. 282, 465 A.2d 294 (1983) it was held that the signing of a hospital consent form indicating that the patient consents to treatment, including surgery, is not a valid consent where the form does not specifically refer to the operation actually to be performed.

In Rogers v. Lumberman's Mutual Casualty Company, 119 So2d 649 (La. App. 1960)-- it was held that the performance of two additional procedures, not listed on the consent form, were not consented to. see also Thomsen v. Gurgeson, (1938) 26 Cal App2d 235, 79 P2d 136, Beringer v. Lackner (1947) 331 Ill App 591, 73 NE2d 620, Hively v. Higgs (1927) 120 Or 588, 23 P 363, 53 ALR 1052.; Meretsky v. Ellen by, 370 So. 2d 1222 (Fla. App. 1979)

The physician-patient relationship is a consensual one, a physician who undertakes to treat another without having obtained the patients consent express or implied, has been applied to instances where the treatment is extended beyond that expressly authorized, so that the issue in the cases has not been whether the doctor is liable if the treatment was extended without

authority, but whether, <u>under the circumstances there was actual or implied authority for the</u> <u>treatment given, which can only be determined by looking back at the specific facts, terms, and</u> <u>conditions under which consent was given, at the time it was given</u>

Further, where a procedure or treatment is safe when begun but becomes dangerous as the physician proceeds, the patient <u>must</u> be informed if possible, and given the opportunity to decide whether he wishes to undertake that risk.

In <u>Wall v. Brim</u>, 138 F.2d 478 (5th Cir. 1942). the patient had consented to the removal of a small cyst in her neck, which the physician had represented as a simple and safe operation, During surgery, the physician found the cyst to be deep seated and difficult to remove, but continued the surgery in spite of the danger to a facial nerve.  The patient suffered facial paralysis. The court held that the patient should have been given a change to reject further surgery.

In <u>Paulsen v. Gunderson</u> (1935) 218 Wis 578, 260 NW 448, where it was contended that a patient had authorized only a simple mastoid operation and that the defendant had performed a radical operation, the court reasoned that if the radical operation was performed without the consent of the patient, either express or implied, the defendant would be guilty of an Assault.

In <u>Carroll v. Chapman</u>, 139 So2d 61 La. App. (1962), the patient did not know, and was not informed that a section of bone would be removed.

Finally, the patient must also be informed where unorthodox or radical methods of treatment entailing potential serious dangers are to be used.

In <u>Fiorentino v. Wenger</u>, 26 A.D.2d 693, 272 N.Y.S.2d 557 (1966) appeal dismissed, 18 N.Y. 2d 908, 276 N.Y.S.2d 639, 223 N.E.2d 46 (1966) reversed on other grounds, 19 N.Y.2d 407, 280 N.Y.s.2d 373, 227 N.E.2d 296 (1967)  it was found that where no emergency existed,

the defendant physician was obligated to disclose that the procedure he proposed for correcting

the scoliotic condition was <u>novel</u>, unorthodox, and not recognized by the medical profession, and

that there were <u>high degrees of risk incident to or possible to its use</u>.

The physician must full inform the patient of the <u>experimental nature of the treatment</u> in

addition to the alternatives and the risks and benefits of such alternatives. <u>Ahern v. Veterans</u>

<u>Administration</u>, 537 F.2d 1098 (10th Cir. 1976)

In order for a physician to avoid liability for engaging in drastic or experimental treatment

<u>he must fully inform his patient of the experimental nature of the treatment and of the foreseeable</u>

<u>consequences of that treatment.</u> <u>Trantafelo v. Medical Center of Tarzana</u>, 182 Cal. App. 3d 315,

227 Cal. Rptr. 84 (1986)

Lastly, "The Statement of a Patients Bill of Rights" as promulgated in 1972 by the

American Hospital Association, was cited by the Court in <u>Miller v. Kennedy</u>, 11 Wah. App. 272,

522 P.2d 852 (1974), aff'd per curiam, 85 Wash. 2d 151 530 P.2d 334 (1975) provides in part:

> "The patient has the right to obtain from his physician complete current
> information concerning his diagnosis, treatment, and prognosis in terms
> the patient can be reasonably expected to understand.
>
> He has the right to know, by name, the physician responsible for his care.
>
> The patient has the right to receive from his physician information necessary
> to give informed consent prior to the start of any procedure and/or treatment.
>
> Except in emergencies, such information for informed consent should include
> but not necessarily be limited to the specific procedure and/or treatment, the
> medically significant risks involved, and the probable duration of incapacitation.
>
> Where medically significant alternatives for care or treatment exist, or when the
> patient requests information concerning medical alternatives, the patient has the
> right to such information.
> The patient also has the right to know the name of the person responsible for the
> procedures/ and or treatment.

65

> The patient has the right to refuse treatment to the extent permitted by law, and to be informed of the medical consequences of his actions."

The defendant, Yale-New Haven Hospital, in order to maintain its accreditation under JCHO Accreditation Standards, and continue to receive Federal Funds for Medicaid and Medicare, must honor those rights, as those same rights are outlined and protected in the JCHO Accreditation Standards themselves.

The defendant, Yale-New Haven Hospital, displays the "Patients Bill of Rights" on their walls, and hands out booklets to their patients enumerating their version of that "Patients Bill of Rights". A "right" by definition, once defined as a right, must therefore be enforceable. If it is not enforceable then what purpose is there in displaying it and offerering it up to be relied upon?

To offer the booklet lulls the prospective patient into believing that the defendant, Yale-New Haven Hospital, will enforce those rights defined, protect those rights defined, and compensate their patients if those rights are violated within their walls.

Though the defendant, Yale-New Haven Hospital, may attempt to distance themselves from surgical procedures performed without consent, by claiming they have no responsibility to ensure that the consent be obtained, but by displaying and holding out the Patient's Bill of Rights as a way of giving the would be patient a sense of security and gaining their trust, they have already accepted responsibility for that security and trust if they should be violated.

Lastly, in applying all of the above law relating to consent, to the facts of this case, the plaintiff rebuts the defendant's contentions with the following summary:

In the present case, there is not "a single requirement for consent", but a requirement of consent for <u>each and every surgical procedure</u> to be performed, as any procedure <u>not</u> named on

the Consent Form is clearly <u>not covered</u> by any consent given to the other procedures that are named.

On December 6, 2000, there were five separate and distinct surgical procedures performed on the plaintiff, Lisa Egan, each designed to treat different ailments, and therefore, the plaintiff, Lisa Egan, was entitled to decide whether any one of them should be undertaken.

That decision <u>for or against as to each, was not decisive as to all, as the decision for or against one procedure, can not, and does not, decide for the remaining procedures.</u>

The defendant, Dr. John Persing, intended to perform four separate and distinct surgical procedures on December 6, 2000, each bearing with it a separate and distinct requirement of consent, and at the end of the day there was a fifth procedure, bearing with it an additional requirement of consent.

If there were five separate and independent requirements of consent needed for the five separate surgical procedures performed, then it logically follows that <u>each surgical procedure committed without its own consent supports a separate and distinct claim for lack of consent</u>.

Were that not so, then surgeons would be free to commit any number of, and as many, assaults on a sleeping patient's body as they felt inclined to commit on any given day, knowing that the number of assaults would not matter since the amount of liability would be the same for one assault as it would be for ten, and resting in the assurance that they would be able to dismiss different counts to a plaintiffs Complaint by lumping them all together as if only one assault occurred.

The present case deals with the performance of five different and separate surgical procedures, and whether the consent for any one of them was either <u>vitiated by overstepping, vitiated by having been obtained by fraud, or not obtained altogether</u>.  The determination of

67

those issues can only founded upon an examination of <u>each of the separate consents given, or not given, under what terms and conditions they was given or not given,</u> and <u>whether upon performance of the surgical procedure they were vitiated.</u>

Therefore, the determination itself must be made <u>once for each procedure at issue,</u> and that determination as to each even defines the type of liability the defendants are able to be held liable for.

The subject of this suit relating to Lack of Consent, and the Assault and Battery that followed is with regards to only three of the surgical procedures that were performed on December 6, 2000, those being, the two Rhinoplasty procedures, and the Foreheadplasty, or Brow Lift.

At issue in this suit is the surgical actions taken with regards to the Rhinoplastys, and whether the defendant, Dr. John Persing, had authority or consent to take those riskier, more radical, and experimental actions, and whether consent was completely vitiated by the deliberate actions of the defendant, Dr. John Persing taken in direct contravention to the terms of that particular consent, and which were outside the scope of that particular consent. .

That determination can only be made by determining what the facts, conditions, and terms were during the discussions held between the plaintiff, Lisa Egan, and the defendant, Dr. John Persing, prior to, and during her giving of her written consent to that procedure in the examination room of the Yale Physicians Building on November 27, 2000.

At further and separate issue in this suit is the surgical actions taken with regards to the Foreheadplasty, or Brow Lift, whether the defendant, Dr. John Persing, had authority or consent to take those actions, and whether that consent was completely vitiated by the deliberate fraudulent actions of the defendant, Dr. John Persing, fraudulent actions committed in order to

obtain consent, and the surgical actions then taken in direct contravention to the terms of that particular consent, and which were outside the scope of that particular consent.

That determination can only be made by determining what the facts, conditions, and terms were during the discussions held between the plaintiff, Lisa Egan, and the defendant, Dr. John Persing, prior to, and during her giving of her oral consent to that procedure over the telephone, long distance, on December 1, 2000.

As those acts of consent, and the representations, misrepresentations, and promises made by the defendant, Dr. John Persing, occurred at different times, and are dependant on which surgical procedures was being address, , the causes of action cannot be seen to be one and the same.

Consent is proved by the time and place it was given, the terms under which it was given, and whether the procedure itself overstepped that consent at the time of its performance.

In this case the five procedures were not consented to at the same time, in the same manner, nor under the same conditions and terms, and the five procedures  did not all occur at the same exact moment.  One cannot operate on an eye by operating on a nose or a scalp.

Finally, the causes of action available to the plaintiff under the fact patterns alleged are themselves separate and have different elements to prove.

Fraud is proved by the specific words or representations made at a particular time and place, the mind or intent of the speaker at that time and place, the belief and reliance of the hearer at that time and place, and whether the fraud later caused damage.

Assault and Battery  is proved by physical actions taken at a particular time and place, and whether there was any consent previously given which would make those actions permissible, the consent of which is related to particular time and place.

69

Lack of informed Consent is proved by the time and place consent was given, the manner it was given, and whether the risks, side effects and alternatives were explained prior to the patient's giving of their consent.

In this case, as stated before, those particular dates and times, and terms and conditions, are completely different for the five surgical procedures performed on December 6, 2000.

Further, the violation of one set of terms or conditions to one surgical procedure, does not render all other surgical procedures as having been performed without consent.

If a patient goes into a hospital for the removal of a kidney stone, and the surgeon also removes the patient's tonsils without consent, the surgeon would be liable for the removal of the tonsils as having committed an assault and battery, but he would not be liable for removal of the kidney stone, as that was the permitted act.

In this case, the plaintiff alleged that the defendant, Dr. John Persing, deliberately overstepped the consent given as to the Rhinoplasty, not only in performing it under complex and unusual circumstances which had been expressly forbidden by the plaintiff, Lisa Egan, prior to the operation, but then performing a second Rhinoplasty that the plaintiff, Lisa Egan, had no knowledge of until after it was performed, rendering even the original Rhinoplasty, a different surgical procedure than the procedure originally contemplated or consented to,  a much more riskier surgical procedure, and an experimental procedure.

The plaintiff alleged that in taking those surgical actions, the defendant, Dr. John Persing, vitiated all consent to the original Rhinoplasty completely, as if it had never been given.

In this case also, the plaintiff alleged that the defendant, Dr. John Persing, deliberately overstepped the consent given as to the Foreheadplasty or Brow Lift, by performing the operation in the manner that he had expressly promised the plaintiff, Lisa Egan, he would not perform prior

70

to the operation,. rendering the surgical procedure a different surgical procedure than that which was consented too.

The plaintiff further alleged that the defendant, Dr. John Persing, further operated on portions of the plaintiff, Lisa Egan's face and head, during the performance of the Foreheadplasty or Brow Lift, that he had never received any permission to operate on at all, thereby vitiating any consent to the Foreheadplasty or Brow Lift., given under any terms.

In taking those surgical actions, the plaintiff alleged that the defendant, Dr. John Persing, vitiated all consent to the original Foreheadplasty or Brow Lift completely, as if it had never been given.

The plaintiff alleged that the defendant, Dr. John Persing, further deliberately misrepresented the manner in which the Foreheadplasty or Brow Lift would be performed, and used that misrepresentation to obtain the plaintiff, Lisa Egan's consent, which vitiates her consent to the Brow Lift, as it was obtained by fraud.

The plaintiff further alleged that the defendant, Dr. John Persing, further deliberately misrepresented to the plaintiff, Lisa Egan, that there was no other method by which to effect a cure of the hooding of her eyes by the excess skin, other than the Foreheadplasty or Brow Lift, omitting the existence of the much more common and less scarring procedure known as an Endoscopic Lift.

The plaintiff further alleged that in taking those fraudulent actions, the defendant, Dr. John Persing, vitiated all consent to the original Foreheadplasty or Brow Lift completely, as if it had never been given.

Further, in the present case, the plaintiff, Lisa Egan, further alleged that the defendant, Dr. John Persing, failed to disclose <u>any</u> risks, side effects, and alternative procedures to the

Foreheadplasty, prior to his obtaining her Oral Consent to that procedure.

The plaintiff, Lisa Egan, also alleged that the defendant, Dr. John Persing, failed to disclose any of the risks, side effects, and alternative procedures, to the Blepharoplasty, Rhinoplasty, and Septoplasty, when he obtained the plaintiff, Lisa Egan,'s consent to that procedure on the written Yale-New Haven Hospital Consent Form dated November 27, 2000.

The plaintiff, Lisa Egan, further also alleged that the defendant, Dr. John Persing, failed to disclose any of the risks, side effects, or alternatives to the extra, separate and distinctly different second Rhinoplasty procedure, which was performed impromptu on the plaintiff while she was under anesthesia, and which disclosures for could never have been made as the plaintiff, Lisa Egan, was asleep.

The plaintiff, Lisa Egan, alleged that the consent to the original Rhinoplasty procedure, was given on a contingent basis, dependent on specific terms.

The plaintiff, Lisa Egan, alleged that the consent to the original Foreheadplasty procedure, was given on a contingent basis, dependent on specific terms.

The plaintiff, Lisa Egan, alleged that the defendant, Dr. John Persing, deliberately overstepped the contingent terms of the Rhinoplasty, and knew when he did so that he was performing an operation different than the one consented to, an operation much more risky, experimental, and in direct contravention to the contingent terms of the plaintiff, Lisa Egan, consent previously given..

The plaintiff, Lisa Egan, alleged that the defendant, Dr. John Persing, deliberately overstepped the contingent terms of the Foreheadplasty, and knew when he did so that he was performing an operation different than the one consented to, an operation in direct contravention to the contingent terms of the plaintiff, Lisa Egan, consent previously given..

72

The plaintiff, Lisa Egan, alleged that the defendant, Dr. John Persing, made express promises and representations as to the manner in which the Foreheadplasty would be performed, promises used to obtain the plaintiff, Lisa Egan's consent to that procedure, and which he knew when he made them were false, yet on which the plaintiff, Lisa Egan, was relying when she gave her consent to that procedure.

The plaintiff, Lisa Egan, alleged that the defendant, Dr. John Persing, further deliberately withheld pertinent information as to both the manner in which the Foreheadplasty, was to be performed, and as to the existence of alternative procedures to the Foreheadplasty, or Brow Lift.

The plaintiff, Lisa Egan, alleged that the defendant, Dr. John Persing, performed the Foreheadplasty, or Brow Lift in the full and complete knowledge that the plaintiff, Lisa Egan, would not consent to it if she knew what was happening to her.

Finally, the plaintiff, Lisa Egan, alleged that she was <u>never</u> informed of the risk that the nerves in her forehead and scalp could be damaged by the performance of the Foreheadplasty, or Brow Lift, that she was <u>never</u> informed the lengthwise incisions were to be made down to her ears, that she was <u>never</u> informed that her scalp and head could be permanently numb and suffering a squeezed sensation, that she was <u>never</u> informed that sections of muscle were going to be removed from her forehead in order to deliberately prevent her from being able to use the muscles in her face, and that she was <u>never</u> informed of the existence of the birth defect in her nose and in the increased risk in going forward with the initial Rhinoplasty procedure, and then the subsequent second Rhinoplasty procedure.

The plaintiff, Lisa Egan,'s Amended Complaint directly alleges that had the plaintiff been informed of the risks, side effects, and alternatives to the Foreheadplasty, or Brow Lift, she <u>would have refused consent to that procedure</u>, and that had she been aware, and not asleep at the

73

time the defendant, Dr. John Persing, chose to go forward with the Rhinoplasty under the new condition of the birth defect <u>she would have refused her consent to that procedure and the extraa impromptu second Rhinoplasty, as well.</u>

Finally, as the plaintiff, Lisa Egan, is alleging <u>not</u> that the defendant, Dr. John Persing, made an incomplete disclosure of the risks, side effects, and alternatives, to the five procedures he performed on December 6, 2000, <u>but that he failed completely to ever disclose any of the risks, side effects, or alternatives to the procedures,</u> allows this suit to be brought both under Lack of Informed Consent, which is typically Negligence, and also a complete Lack of Consent, which is an Intentional Tort able to be brought under the theories of Assault and Battery, Trespass to Person, Invasion of Privacy, False Imprisonment, and if induced by a knowingly false statement, or deliberately withholding of material information, can also be brought under the theory of Fraud. .

This suit is not a suit <u>only</u> addressing whether "Dr. John Persing performed facial surgery on December 6, 2000, without  the plaintiff's informed consent", as the defendant contends, nor do the facts alleged only represent "a single Negligence claim" unable to be alleged in two counts.

This suit against the defendant, Dr. John Persing, the defendant, Yale-New Haven Hospital,  the defendant, Yale University, and future defendants, Nurse Rosemary Aiedu, Dr. Gopal Grandhige, Dr. Peter Atanassoff, and Dr. Gary Price, alleges numerous Intentional Torts, and is therefore entitled to be alleged in different counts, under different claims specific to the facts surrounding the performance of each surgical procedure, the manner in which consent was or was not given, the unauthorized manner in which anesthesia was administered, the operation performed by a physician other than the one consented to, and the fraudulent alteration,

74

concealment, and withholding of the plaintiff, Lisa Egan's Medical Record.

If there was Negligence involved in this case, it was willful, wanton, and reckless, and committed with total indifference to the rights and well being of the plaintiff, Lisa Egan.

The rest was Intentional.


**Wherefore**, the plaintiff, Hadley Macpherson, respectfully requests that the defendant's Motion to Dismiss be denied.


Respectfully Submitted,

Hadley Macpherson (Egan)

P.O. Box 501

Lahaska, PA   18931

# YALE NEW HAVEN HOSPITAL

Unit No.:

Name: _Lisa Egan_

Address:

Birthdate: _124 34 13_

If handwritten, record name, unit no., and birthdate.)

## PERMISSION FOR OPERATION, SPECIAL PROCEDURE OR TREATMENT

Date ___11 / 27 / 2000___ Time ___4:0___

### SECTION "A"

The general purpose, potential benefits, possible hazards and inconveniences of _upper lid blepharoplasty, open septorhinoplasty_ _____

_(Specify Operation, Special Procedure or Treatment)_

have been explained to my satisfaction by Dr. ___J. Percy___ and alternatives have been

discussed. I, ___self___, hereby consent to the performance of the

_(myself or name of patient)_

operation, special procedure or treatment named above under his/her direction, along with whatever anesthesia/sedation, medication or transfusion is necessary, the risks, benefits and alternatives of which have also been explained to me.

I authorize the Hospital and its Pathology section to preserve for diagnostic, scientific or teaching purposes or otherwise dispose of tissue, body parts, blood and/or body fluids removed as a result of the procedure authorized above. If the material is to be used for scientific or educational purposes, pertinent, anonymous medical information may be released with the specimen. I hereby relinquish all right, title and interest to the tissue, body parts, blood and/or body fluid, regardless of its ultimate use or disposition.

I further authorize my physician to do whatever may be necessary in the event that any unforeseen conditions arise during the course of the operation, special procedure, or treatment.

DEC 6 2000

Signed X _____
_(Patient or person authorized to consent for patient)_

### PHYSICIAN'S NOTE

I have informed _____ of the general purpose, potential benefits, possible hazards and

_(Patient/Relative/Guardian)_

inconveniences and alternatives to the above operation, special procedure or treatment along with any needed anesthesia/sedation, medication or transfusion.

ADDITIONAL PHYSICIAN COMMENTS _____

DATE: ___11.27.06___    _____
Signature of Responsible Physician

F-1696 (R090596)

# TABLE OF AUTHORITIES

Aamski v. Tacoma General Hospital 20 Wash. App. 98 579 P.2d 970 (1978).....................24

Ahern v. Veterans Administration, 537 F.2d 1098 (10th Cir. 1976) ..............................  65

Arango v. Rayka        507 So. 2d 1211 (Fla. Dist. Ct. App. 1987)................................  24

Arthur v. St. Peter's Hospital 169 NJ. Super. 575     405 A2d 443 (1979)....................  24

Banks v. Wittenberg, 82 Mich. App. 274 266 N.W.2d 788 (1978) ............................  63

Beringer v. Lackner (1947) 331 Ill App 591, 73 NE2d 620  .....................................  63

Berkey v. Anderson, 1 Cal App3d 790, 82 Cal Rptr 67 (1969) ..................................  59

Bing v. Thunig (1957) 2 NY2d 656   163 NYS2d 3  143 NE2d 3 .................................  20

Blanton v. Moses H. Cove Memorial Hosp, Inc. 319 N.C. 372, ......................................  30

      354 s.eE.2d 455 (N.C. 1987)

Bost v. Riley, 44 N.C. App. 638, 262 S.e. 2d 391 (1980).................................................  31

Bowers v. Olch (1953) 120 Cal App 2d 108  260 P2d 997 .............................................  25

Boyd v. Bulala 647  F.Supp. 781 (Va. 1986) ..............................................................  28

Brickner v. Normandy Osteopathic Hospital Inc. 746 S.w.2d 108 (Mo. Ct. App. 1988) .........  26

Brown v. Moor (1957 CA3 Pa) 247 F2d 711 69 ALR2d 288 Cert den 355 US ...............  23, 56

      882 L ed 2d 112

Brown v. Wood , 202 So. 2d 125 (Fla. Dist. Ct. App. 1967) ............................................  56

Calabrese v. Trenton State College, 162 N.J.Super. 145, 392, A.2d 600 (A.D. 1978).............49

Canterbury v. Spence, 64 F.2d 772 (D.C. Cir. 1972) cert . Denied, 409 U.S. 1064, ......49, 51, 52

      93 S. Ct. 560 (1972)

Capan v. Divine Providence Hospital 169 Pa. Super. 364 430 A2d 647 (1980) ................... 24

Carling v. Charleston Memorial Hospital 33 Ill. 2d 326, 211 N.E.2d 253 (1965) cert............. 29

    Denied, 383 U.S. 946 (1966)

Carroll v. Chapman, 139 So2d 61 La. App. (1962) ......................................................56, 64

Cobbs v. Gant, 8 Cal. 3d 229,104 Cal. Rptr. 505, 502 P.2d 1 (1972) ..................... 50, 51, 57

Cole v. Wiggins, 487 So. 2d 203 (Miss. 1986)................................................................ 58

Congrove v. Holmes (1973) 37 Ohio Misc. 95, 66 Ohio Ops 2d 295, 308 NE2d 765 ....... 51, 56

Convalescent Servs., Inc. V. Schultz, 921 S.W.2d 731 (Tex. App. 1996) ........................ 32

Cooper v. Roberts, 220 Pa. Super. 260, 286 A.2d 647 (1971) ...........................................52

Corleto v. Shor Mem. Hosp., 138 N.J. Super. 302, 350 A2d 534 (1975) ........................... 29

Cross v. Trapp, 294 S.E. 2d 446 (W. Va. 1982) ......................................................50, 63

Cunninham v. Yankton, 262 N.W. 2d 508 (S.D. 1978) ................................................ 59

Delany v. Rosenthal  347 Mass. 143 196 N.E.2d 878 (1964) ...................................... 28

Demers v. Gerety, 85 N.M. 641 515 P.2d 645 (1973) rev'd on other grounds,.................. 61

    92 N.M. 749, 595, P2d 387 (1978).

Edmonds v. Chamberlain Memorial Hospital, 629 S.w.2d 28 (Tenn. Ct. App. 1981)............ 24

Elam v. College Park Hospital. 132 Cal. App. 3d 332, 183 Ca. Rptr. 156 (1982) ................. 30

Estate of leach v. Sharipo, 13 Ohio App. 3d 393, 469 N.E.2d 1047 (1984) .................. 58, 63

Estrada v. Jacques, 321 S.e.2d 240 (N.C. Ct. App. 1984) ............................................. 58

Felice v. St. Agnes Hospital, 65 A.D.2d 388 411 Y.Y.S. 2d 901 (1978) ........................... 29

Fiorentino v. Wenger, 26 A.D.2d 693, 272 N.Y.S.2d 557 (1966) appeal dismissed,......... 29, 64

    18 N.Y. 2d 908, 276 N.Y.S.2d 639, 223 N.E.2d 46 (1966) reversed on other

    grounds, 19 N.Y.2d 407, 280 N.Y.s.2d 373, 227 N.E.2d 296 (1967)

Flannery v. President & Director of Georgetown College, 679 F.2d 960 (D.C. Cir. 1982)...... 58

Foster v. Englewood Hospital Assoc. 19Ill. App. 3d 1055    313 N.E. 2d 255 (1974)............ 27

Foy v. Greenbolt, 141 Cal. App. 3d 1, 190 Cal. Rptr.84 (1983)...................................... 50

Fridena v. Evans, 127 Ariz. 516, 622 P.2d 463 (1980) ...................................................... 30

Funke v. Fieldman, 212 Kan 524, 512 P 2d 539, (1973) ...........................................................62

Gasman v. United States, 589 F. Supp. 1534 (M.D. Fla. 1984)...................................... 55

Giusti v. C.H.Weston Co. (1941) 165 Or 525 108 P2d 1010 ......................................... 20

Haley v. United States, 739 F.2df 1502 (10th Cir. 1984) ........................................... 51, 58

Hansbrough v. Kosyak, 490 N.E.2d 151 (ill. Ct. App. 1986) ...................................... 58

Hardy v. Brantley, 471 So. 2d 358 (Miss. 1985)............................................................ 24

Harrigan v. United States 408 F. Supp, 177 (E.D. Pa. 1976) .................................. 51, 59

Hartke v. McKelway, 707 F.2d 1544 (D.C. Cir, 1983) ...................................... 60

Hippocrate Mertsaris. V. 73rd Corp.  105 A.D.2d 67482 N>Y>S.2d 792 (1984) ............... 22

Hively v. Higgs (1927) 120 Or 588, 23 P 363, 53 ALR 1052. ..................................... 63

Hood v. Philips, 537 S.W.3d 291 (Tex. Civ. App. 1976) ........................................ 52

Jackson v. Power 743 P.2d 1376 (1987) .................................................................. 29

Johnson v. McMurray  461 So. 2d 798 (Ala. 1984) ..............................................26, 62

Kinikin v. Heupel, 305 N.W.2d 589 (Minn. 1981) ....................................... 61

Lambert v. Park, 597 F2d 236 (10th Cir. 1979)  ......................................... 52

Logan v. Greenwich Hosp. Assn. 191 Conn. 282, 465 A.2d 294 (1983) ..........    50, 59, 63

Martel v. St. Charles Hosp., 523 N.Y.S.2d 342 (Sup. Ct. 1987) .................................. 29

McGrady v. Wrights, 151 Ariz. 534, 729 P2d 338 (Ct. App. 1986) .............................. 59

McKinney v. Nash, 120 Cal. App. 3d 428, 174 Cal. Rptr. 64 (1981). ............................... 52

McNamara v. Honeyman, 406 Mass. 43, 546 N.E.2d 139 (1989) ...............................31, 32

Mduba v. Benedicitn Hospital, 52 A.D.2d 450, 384 NYS. 2d 527 (1976) ....................    24

Meretsky v. Ellen by, 370 So. 2d 1222 (Fla. App. 1979) .....................................56, 61, 63

Miller v. Atkins, 142 G. App. 618, 236 S.E. 2d 838 (1977) .......................................28

Miller v. Kennedy, 11 Wah. App. 272, 522 P.2d 852 (1974), aff'd per curiam, ................... 65

     85 Wash. 2d 151 530 P.2d 334 (1975)

Moeller v. Hauser , (1952) 237 Minn. 368 54 NW2d 639, 57 ALR2d 364 ........................24

Mohr v. Williams 95 Minn. 261, 104 N.W. 12 (1905) ........................................... 50

Morwin v. Albany Hospital (1959) 7 App Div 2d 582 185 NYS2d 85 .............................. 20

Moser v. Stallings, 387 N.W. 2d 599 (Iowa 1986) .......................................... 56, 58

Moskovitz v. Mt. Sinai Medical Center, 169 Ohio St. 3d 638, 635 N.E.2d 331 (1994)......... 31

Mucciolo v. Fernandez 195 A.d.3d 623, 599 N.Y.S.2d 757 (1993) .................................31

Nelson v. Gaunt, 125 Cal. App. 3d 623, 178 Cal Rptr. 167 (1981) .................................. 62

Nelson v. Patrick, 58 N.C. App. 546, 293 S.E.2d 829 (1982) ......................................... 57

Nolan v. Kechijian, 75 RI 165, 64, A2d 866, (1949) ............................................... 61

Parikh v. Cunningham, 493 So. 2d 999 (Fla. 1986) .......................................... 50, 57

Patrick v. Sedwick, 391 P2d 453 (Ala. 1964) ...................................................... 59

Paulsen v. Gunderson (1935) 218 Wis 578, 260 NW 448 .........................................    64

Pedroza v. Bryant, 101 Wash. 2d 226, 677, P.2d (1984)...........................................30

Powers v. United States, 589 F. Supp. 1084 (D. Conn. 1984) .......................................58

Pugsley v. Privetter, 220 Va. 892, 263 S.E.2d 69 (1980). .........................................61

Quintal v. Laurel Gove Hosp. 41 Ca. Rptr. 577, 7 P.2d 161 (Cal. 1964); ........................22

Roberts v. Wood, 206 F. Supp 579 (SD Ala 1962) ............................................... 55

Rodgers v. St. Mary's Hosp. O Decatur, 198 Ill. App. 3d 871, 556 N.E.2d 913 (1990)......30, 40

Rogers v. Lumberman's Mutual Casualty Company, 119 So2d 649 (La. App. 1960) ...40, 55, 63

Rural Educational Assoc. V. Bush (1956) Tenn App. 298 SW2d 761 ........................ 20, 22

Russel v. Hardwick, 166 So. 2d 904 (Fla. App. 1964) ........................................................ 59

Sauro v. Shea, 257 Pa. Super. 87, 390 A.2d 259 (1978) ................................................ 58

Schafer v. Lehrer, 476 So. 2d 781 (Fla Dist. Ct. App. 1985) ........................................ 62

Schendel v. Hennepin County Med. Ctr. , 484 N.W.2d 803 (Minn. App. 1993)................. 31

Scott v. Brooklyn Hospital, 125 Misc. 2d 765 480 N.Y.S. 2d 270 (1984) ......................... 20

Seneris v. Haas (1955) 45 Cal 2d 811,291 P2d 915, 53 ALR2d 124. ........................    21,22

Smith v. St. Therese Hosp, 106 Ill. App. 3d 268, 62 Ill. Dec. 141, 435 N.E.2d 939 (1982) ....   31

Smock v. Brantley 76 N.C. App. 73  331 S.E.2d 714 (1985) .....................................    20

Stahlin v. Hilton Hotels Corp. 484 F.2d 580 (7th Cir. 1973) ............................................28

State Bd. Of Med. Examiners v. McCroskey, 880 P.2d 1188 (Colo. 1994) ........................32

Stratso v. Song, 17 Ohio App. 3d 39, 477 N.E.2d 1176 (1984) ..................................... 22

Thomas v Raleigh Gneral Hospital    358 S.E.2d 222 (W.Va.1987) ............................... 22

Thompson v. Nason Hosp., 535 A.2d 1177 (Pa. Super.Ct.1988) .................................... 30

Thomsen v. Gurgeson, (1938) 26 Cal App2d 235, 79 P2d 136 ..................................... 63

Todd v. United States, 570 F. Supp. 670 (D.S.C. 1983) ............................................ 59

Trantafelo v. Medical Center of Tarzana, 182 Cal. App. 3d 315, 227 Cal. Rptr. 84 (1986) ..... 65

Truman v. Thomas, 27 Cal. 3d 285, 165 Cal. Rptr. 308, 611 P.2d 902 (1980) .....................59

Vananman v. Milford Memorail Hospital Inc. 272 A.2d 718 (Del. 1970) ........................... 24

Wall v. Brim, 138 F.2d 478 (5th Cir. 1942). ....................................................... 64

Wheeler v. Barker,  92 Cal. App2d 776. 208 P2d 68 (1949) ....................................... 56

Wiles v. Myerly 210 N.W. 2d 619 (Iowa 1973) ……………………………….............................28

Wilson v. Lahman, 379 SW2d 478 (Ky. App. 1964) ………………………………...................... 55

Ybaarra v. Spangard  25 Cal. App. 3d 66 211 Cal. Rptr. 445 (1985) …………………………. 26

Young v. Carpenter 694 P.2d 861 (Colo. App. 1984) ………………………………................. 26

Zahorsky v. Griffy, Dysart, Taylor, Penner & Lay, P.C.., 690 S.W. 2d 144 …………………   58

     (Mo. Ct. App. 1985).  51

# CERTIFICATION

This is to certify that a copy of the foregoing has been mailed this

day, September 10, 2004, to Attorney Penny Seaman, of Wiggins and Dana, 265 Church Street,

P.O. Box 1832, New Haven Connecticut, 06508 - 1832..

Plaintiff Pro Se

*Hadley Macpherson*
Hadley Macpherson
P.O. Box 501
Lahaska, PA   18931
(215) 325 -1001