UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA EGAN (a/k/a HADLEY MACPHERSON) : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. |
| V. : | 3:02-CV-1973 (JCH) |
| : | |
| YALE MEDICAL GROUP, YALE-NEW : | |
| HAVEN HOSPITAL, YALE PLASTIC : | |
| SURGERY and DR. JOHN PERSING : | |
| Defendants. : | JANUARY 9, 2006 |

## MEMORANDUM OF LAW IN SUPPORT OF GARY J. PRICE'S MOTION TO QUASH AND FOR PROTECTIVE ORDER

Plaintiff's subpoena duces tecum, dated December, 2005 (attached as Exhibit 1), should be quashed and a protective order entered because, although Gary J. Price, M.D. ("Dr. Price"), met with plaintiff on one occasion for a free cosmetic surgery consultation, he never performed a medical examination or treated plaintiff, has no relevant, factual information concerning this action, and is not willing to serve as an expert witness in this case. Further, given Dr. Price's patient obligations, requiring him to attend a deposition would be unduly burdensome to Dr. Price, a non-party.

**ARGUMENT**

    **I.   Dr. Price Has No Relevant Factual Information Concerning This Action And, Therefore, His Testimony Is Unlikely To Lead To Admissible Evidence.**

Dr. Price met with plaintiff on only one occasion for a brief, free consultation. *See Exhibit 2, Affidavit of Gary J. Price at ¶¶2-5.* Dr. Price did not examine or treat the plaintiff and has a single brief note, containing no factual medical information, of the consultation. *See Exhibit 2, Affidavit of Gary J. Price at ¶¶3-7.* Despite the fact that Dr. Price did not treat

plaintiff and does not have any relevant records, plaintiff served Dr. Price with a subpoena duces tecum, directing Dr. Price, as a "treating physician" to testify about 16 areas, listed on Exhibit 1 as follows:

1. ... <u>fact and opinion testimony</u> ... [as] <u>documented by Dr. Gary Price in the plaintiff's Medical Record</u> ...;
2. ... his medical examinations, medical assessments, and/or medical treatment of the plaintiff ...;
3. ... <u>all actions that he took</u> during his medical examinations, medical assessments, and/or medical treatment ...;
4. ... <u>substance and content of all conversations had between himself and the plaintiff</u> ...;
5. ... expert and professional assessment of the <u>physical status</u> of the plaintiff ...;
6. ... expert and professional assessment of <u>the physical damage suffered</u> to the plaintiff's fact, scalp, and skull ...;
7. ...expert and professional <u>recommendation made as to any actions to be taken to rectify any damage</u> to the plaintiff's fact, scalp, and skull ...;
8. ... <u>prognosis concerning the plaintiff's face, scalp, and skull</u> ...;
9. ... expert and professional assessment of the plaintiff's <u>mental and emotional state</u> ...;
10. ... expert and professional <u>recommendations made as to any actions to be taken to rectify any damage</u> to the plaintiff's psyche ...;
11. ... expert and professional opinion of the <u>prognosis concerning the plaintiff's mental and emotional stability in the future</u> ...;
12. ... as ... medical expert ... knowledge and understanding regarding the affects of cosmetic surgery, ... and further testify to the <u>legal, medical, and ethical standards to be adhered to when performing reconstructive or cosmetic surgery</u> ...;
13. ... <u>to all actions that he himself took regarding his documenting</u> of his medical examinations, medical assessments, and/or medical treatment ...;
14. ... <u>personal and professional knowledge and understanding, of the legal, medical, and ethical standards</u> imposed upon him and those of his profession, as defined by state and federal law, JCHO standards, Yale University Medical School, Yale New Haven Hospital, Hospital of Saint Francis ...;
15. ... as a recognized medical expert ... <u>legal, medical, and ethical standards</u> ... regarding the [(1)] <u>disclosure of, and preservation of a patient's medical record and information</u>, [(2)] the obtaining of a patient's <u>consent</u> prior to the performance of any surgical procedure ..., [(3)] <u>the definition of consent</u>, [(4)] <u>the elements of informed consent</u> ... [(5)] <u>consent obtained under false pretenses</u>, [(6)] <u>preservation of a patients right to autonomy</u>, [(7)] the Hippocratic Oath, [(8)] avoidance of malfeasance, [(9)] <u>reporting of sentinel events</u>, [(10)] <u>unauthorized performance of experimental</u>

        procedures, [(11)] the <u>preservation of the integrity of the medical record</u>, and [(12)] the <u>duties</u> and <u>obligations imposed on the physician and/or surgeon</u> ...; and

16.    ... personal and professional relationship to Dr. John Persing, Yale University, Yale New Haven Hospital, Dr. Linton Whitaker, University of Pennsylvania School of Medicine, and University of Pennsylvania Hospital Health System, Dr. Gregory Borah, Dr. Alan Brackup ...

Dr. Price is not in possession of any information addressed in the first 14 paragraphs of the attachment to plaintiff's subpoena and possesses no relevant factual information responsive to the subpoena. *See Exhibit 2, Affidavit of Gary J. Price at ¶3-7.* "A subpoena is an appropriate process for the production of documents that are relevant to the matter before the court. It may not be used, however, for the purpose of conducting a fishing expedition into the papers of a party or a stranger to the proceedings." *Three S. Dev. Co. v. Santore*, 193 Conn. 174 (1984) (internal citation omitted); *see also State v. Montgomery*, 254 Conn. 694, 728 (2000) (same).

The subpoena should be quashed because it calls for information and documents that Dr. Price does not possess. Therefore, any testimony from Dr. Price would not likely lead to admissible evidence. Moreover, plaintiff is well aware that Dr. Price has no relevant information concerning the events on which this action is based, and that he does not have any of the documents requested, if they exist at all (aside from a brief note from his March 2001 free cosmetic surgery consultation, which he will produce upon request). *See Exhibit 2, Affidavit of Gary J. Price at ¶7.* In short, the subpoena constitutes nothing more than the type of "fishing" expedition that has been denounced by the court.

**II.    Dr. Price Cannot Be Compelled To Serve As An Expert Against His Will**

Given the fact that Dr. Price has no personal knowledge relevant to this lawsuit, the subpoena is nothing more than an attempt by plaintiff to force him to provide expert testimony.

*See Exhibit 1.* Dr. Price does not want to serve as an expert in this case, *see Exhibit 2, Affidavit of Gary J. Price at ¶¶6 and 8*, and plaintiff cannot compel him to do so.

This issue was addressed by the Wisconsin Supreme Court in a case directly on point. *See In re the Imposition of Sanctions in Alt v. Cline*, 589 N.W.2d 21 (Wis. 1999), attached as *Exhibit 3*. In the *Alt* case, the plaintiffs claimed negligence in the performance of a cesarean section. The plaintiffs named a Dr. Acosta as an expert, a physician who had provided prenatal care to the plaintiff mother, but was not present and did not participate in the cesarean section. *Id.* At his deposition, Dr. Acosta's counsel directed him not to answer a question that called for an expert opinion. *Id.* at 24. The trial court granted the plaintiffs' motion to compel Dr. Acosta to answer the question and imposed sanctions for the refusal to answer.

The Wisconsin Supreme Court reversed, holding that Dr. Acosta was properly instructed not to provide his expert opinion because he had held a legal privilege not to provide expert testimony. *Id.* at 30. The court based its decision on Wisconsin's court-appointed expert statute, which provides as quoted by the court that "[a]n expert witness shall not be appointed by the judge *unless the expert witness consents to act.*" *Id.* at 26 (emphasis in original). From the express language of that statute, the court recognized a privilege held by experts "to refuse to testify if the expert is called by a litigant." *Id.* The court reasoned: "[i]f a court cannot compel an expert witness to testify, it logically follows that a litigant should not be able to so compel an expert. It makes little if any sense to conclude that a litigant has greater rights than a court with respect to obtaining testimony from experts." *Id.*

Connecticut has long recognized the logic and reasoning behind the Wisconsin Supreme Court's decision in *In re the Imposition of Sanctions in Alt v. Clin*. In fact, § 42-39 of the Connecticut Practice Book, entitled Judicial Appointment of Expert Witnesses, is identical to the

4

Wisconsin statute. Section 42-39 provides, as does the Wisconsin statute, that "[a]n expert witness shall not be appointed by the judicial authority *unless the expert consents to act.*" (emphasis added.) By enacting this provision, the Connecticut judiciary recognized, as did the Wisconsin legislature, that those possessing special knowledge, skill or training enjoy a privilege to refuse to act as expert witnesses.

This sound premise has been accepted in other jurisdictions. In *Carvalho v. New Rochelle Hospital*, 384 N.Y.S.2d 508 (N.Y. App. Div. 1976) (attached as *Exhibit 4*), the court addressed whether co-defendant physicians may be compelled to testify against one another. The court stated:

> [i]n an action for malpractice brought against more than one physician, one defendant physician may not be examined before trial [deposed] about the professional quality of the services rendered by a codefendant physician if the questions bear solely on the alleged negligence of the codefendant and not on the practice of the witness.

*Carvalho*, 384 N.Y.S.2d at 509 (finding record insufficient to rule as a matter of law that proposed question did not refer to both defendants); *see Forgays v. Merola*, 636 N.Y.S.2d 509 (N.Y. App. Div. 1995) (granting motion to compel physician's testimony because questions were relevant to allegations of negligence against the defendant witness) (attached as *Exhibit. 5*). In *Ondis v. Pion*, 497 A.2d 13 (R.I. 1985) (attached as *Exhibit. 6*), the Rhode Island Supreme Court upheld a treating physician's refusal to provide expert testimony beyond that relating to injuries which he had actually treated and observed. *Ondis*, 497 A.2d at 18. In that case, the court based its decision on the following rationale:

> an expert witness who ha[s] not been engaged but merely subpoenaed could not be compelled to give opinion testimony against his will . . . . It is the obligation of a party who desires expert testimony to obtain the services of a qualified person on a voluntary basis. We believe that compelling expert testimony would in essence involve a form of involuntary servitude that should normally not be inflicted upon a person merely because of his professional expertise.

5

*Id.*

In the present case, the circumstances are even more compelling. Dr. Price is not only unwilling to serve as an expert in this case, but he has never rendered treatment to plaintiff and cannot testify regarding medical care that he has not provided.

### III. The Location Of The Proposed Deposition Is Unduly Burdensome

Dr. Price is a non-party to this action. He maintains a busy plastic surgery practice in Guilford, Connecticut, and has surgery and other patient obligations that would need to be canceled for him to attend a deposition. *See Exhibit 2, Affidavit of Gary J. Price at ¶9*. Due to patient obligations and the distance between his office in Guilford and the location of the proposed deposition in Greenwich, it would be unduly burdensome for Dr. Price to appear at the deposition.

**CONCLUSION**

Accordingly, for the foregoing reasons, Dr. Price respectfully requests that the motion to quash should be granted.

RESPECTFULLY SUBMITTED,
GARY J. PRICE, M.D.

By: _____
Penny Q. Seaman (ct05813)
Kevin S. Budge (ct19097)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
His Attorneys

## **CERTIFICATION**

This is to certify that on this 9th day of January 2006, a copy of the foregoing was served via Federal Express and facsimile to the pro se plaintiff:

Lisa Egan, n/k/a Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC  28270

_____
Penny Q. Seaman

\487\5009\570997.1