Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, North Carolina
28270
(204) 657-5252

3:02cv1973(JCH)

Wiggin & Dana
Attorney James Craven
265 Church Street, P.O. Box 1832
New Haven, Ct 06508-1832

Friday, August 12, 2005

Dear Attorney Craven,

When I arrived home today from my trip up north, I found the re-drafted Authorizations waiting here as promised. They're perfect, and re-written just as we agreed.

Thank you for deleting the portion relating to any requirement of release to the law firm of Jacobs, Grudberg, Bell, Dow and Katz, and for being reasonable about editing the rest of the Authorization so that it is much more specific to your law firm, and less open ended. I have no objections to it now.

The re-drafted Authorizations enclosed are signed with an original signature in blue ink, and each Authorization is specific only to the individual physician specifically identified by name at the top of each one. There are four signed releases in all, to four difference physicians.

Today, Friday, August 12, 2005 was my first opportunity to review and sign the re-drafted Authorizations, and mail them back out to you, since as you know, I had to leave to go out of state on Tuesday, August 9, 2005, and so was not here in North Carolina when the re-drafted Authorizations arrived here the following day on Wednesday, August, 10, 2005.

The friend that I arranged to have sign for the Fed Ex containing the new edited Medical Authorizations when I was away, so that the Fed Ex wouldn't be sent back to you as undeliverable due to my absence, could obviously however not have signed the Medical Authorizations themselves.

Though your paralegal, Diana Coppolla had previously promised me back on Thursday, August 4, 2005, that she was going to immediately mail out the re-drafted Authorization that same day of Thursday, August 4, 2005, by Overnight Fed Ex, as you know she didn't end up doing so.

When you called me the following day on Friday, August 5, 2005, you said that you

wanted to go over the changes to the Medical Authorizations again, yourself, even though she and I had already agreed to all changes and edited them together the day before.

You then promised me on Friday, August 5, 2005, that you would Overnight Fed Ex the re-drafted Authorizations out to me that same night of Friday, August 5, 2005 once you went to arrive on Saturday, after you discussed the re-draft with me again.

However, as you know, Diana Coppolla didn't actually Fed Ex the re-drafted Authorization out to me until the evening of Tuesday, August 9, 2005, after I had already left for my trip north up to Pennsylvania and Connecticut which you knew about, so I couldn't have sent them back to you before today.

The re-drafted Authorizations enclosed should arrive to you on Monday, that being Monday, August 15, 2005. The return Fed Ex envelope however, which you had enclosed in the Fed Ex envelope containing the re-drafted Authorizations mailed out to me on Tuesday, August 9, 2005, for me to use this time to send them back, and which was delivered to my home on Wednesday, August 10, 2005, was incorrectly labeled with a defunct Fed Ex label, naming a defunct return delivery date, and was therefore not able to be used as a mailing container.

The return Fed Ex envelope that you enclosed for my use, and which arrived here in Charlotte on the morning of Wednesday, August 10, 2005, bore a Fed Ex label that was dated as already having to have arrived back in Hartford that same morning of Wednesday, August 10, 2005, and was therefore useless by the time it ever got here, never mind when I got home today, on Friday, August, 12, 2005, two days after the ordered return arrival date in Hartford of "Deliver By: 10AUG05 ".

I am uncomfortable, despite how amiable our conversations have been, with using an envelope that might portray something different then reality, and since Diana Coppola and Penny Seaman and Bonnie Patten had previously enclosed regular sized standard envelopes bearing regular postage through the U.S. mail for the return of the Medical Authorizations before sending the defunct Fedex envelope, it should be fine for me to just use a regular manila envelope, since there isn't any Rule requiring me to spend the extra money on my own for Fed Ex.

Besides, there is no point in going to the expense of Fed Ex'ing the signed Authorizations out Overnight Priority, as nothing will arrive to you any faster, as tomorrow is a weekend, and your office won't even be open to accept a Fed Ex if I sent it weekend,

Given our two conversations had again on Tuesday, August 9, 2005, before I left, asking why the re-drafted Authorizations had not yet arrived to me, and expressing my concern over my not being able to be here to read and sign the re-drafted Authorizations and mail them back to you until after I returned from the trip at the end of the week, this should be fine.

You informed me on Tuesday that you had deliberately delayed in sending the newly edited Medical Authorizations out to me on Friday, because you said you were now re-drafting the Interrogatories as well, as a result of our very lengthy discussion over the overbreadth of the

July 27, 2005 Interrogatories previously sent to me, which we had gone over on Friday in detail.

You said you were re-drafting the Interrogatories so that they conformed to the issues we discussed at length over the telephone regarding the previous sets of Interrogatories, so I take it that you are narrowing them a bit, and making them more specific so that there are less issues, at least at the outset, for us to have to argue over.

    Thank you very much for doing that. As we had both already narrowed them down orally, you saved me the trouble of having to explain on each and every question on the Interrogatories previously sent, why it was that I was not fully answering, what it was specifically it was that you and I had agreed that I did not now have to answer as to each of those questions we discussed.

    If the Interrogatories had been left as they were, I would have had to file an Objection against them as I told, and your narrowing them obviously makes it unnecessary for me to have to that. The last thing either of us needs is more work.

    Given the friendliness of our discussion, and the amicableness with which you addressed my position, there may not be any significant problems once I see what you've written.

    However, since the re-drafted Interrogatories were not in the Fed Ex envelope that contained the re-drafted Authorizations, and the letter written by your paralegal, Diana Coppola, on that same day of August 9, 2005, which accompanied the re-drafted Authorizations made no mention of the re-drafted Interrogatories and was only giving instruction as to the enclosed Authorizations, I can only assume that the re-drafting of the Interrogatories is taking longer than you expected.

    I already expressed my concern to you back on Tuesday, August 9, 2005 about any further delay given the deadline for me to lodge any objection to the Interrogatories previously sent, and the deadline of my serving you my responses, but you promised me that there was no problem because the delay as far as both the Medical Authorizations and the Interrogatories was yours, and not mine, and that you would be sending me the re-drafted Interrogatories and negating the old ones.

    I arrived home today to find the Interrogatories not yet hear, and to find a letter from Attorney Kevin Budge instead, stating that I was supposed to have the un-edited Interrogatories already sent back to you. I already expressed to you my mistrust of Attorney Kevin Budge given his previous tricks, so would like you to please tell him that I am in compliance with our discussions so that he does not send me material that is contrary to those discussions, and which is done to harass.

    Attorney Kevin Budge's letter pretended that you didn't know I was away, and that you and I have an agreement, and the only benefit I can give him at this point, is that he is unaware of

that agreement, or else merely attempting to pressure me into disregarding all that we discussed, or else attempting to make me appear late in my responses. Please fill him in or tell him to cease and desist.

As far as the Interrogatories, I will of course give you the benefit of the doubt since we established a working trust, and have no cause to believe you to be untruthful at this time, but in consideration of your effort, and since your re-drafted Interogatories have not yet arrived to me, I am offering up at least the most time sensitive material so that you can have that information.

As you can see from the Medical Authorizations enclosed, I have disclosed Dr. Linton Whitaker, Dr. Gregory Borah, Dr. Alan Brackup, and Dr. John Persing, whose addresses are on the Medical Authorizations themselves. You wanted to know the name of the four doctors that I spoke with before I filed this suit, who I was referring to in my Certificate of Good Faith attached to my Amended Complaint, and the names of those four doctors are Dr. Linton Whitaker, Dr. Gregory Borah, Dr. Alan Brackup, and Dr. Gary Price.

While in a show of fairness to you as counsel for the defendants in disclosing the names

of those individuals, and giving you Medical Authorizations to obtain the records from those individuals, I am not willing to sign a Medical Authorization to Dr. Gary Price, as I am sure you already understand why given his refusal to turn my medical record over to me, and the fact that his refusal came from your law firm, as I stated quite clearly in my Objection to your Motion to Dismiss filed back in September of 2004.

It doesn't seem fair that I should have to authorize your team to obtain that which he himself will not give to me his patient, and since he works for Yale University, and was acting on you behalf, it is more than irritating that you should be making me live the pretense that you already do not possess my records that were in his possession.

As for the rest of the information you and I discussed, please send the Interrogatories as soon as possible, if you have not already done so, as the deadlines for both of us are pressing.


Sincerely,

*Hadley Macpherson*
Hadley Macpherson

*Hadley Macpherson*
Hadley Macpherson, pro se
2015 McKenzie Creek Drive
Charlotte, North Carolina 28270
(704) 675-5252

## CERTIFICATION

This is to certify that a copy of the foregoing was sent this day of February 9, 2006, to be delivered by or on February 14, 2006, to the law offices of Wiggins and Dana located at 265 Church Street, New Haven Connecticut, 06508 - 1832.

*Hadley Macpherson*
Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC  28270
(704) 675 - 5252