# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

### AT BRIDGEPORT



| | |
|---|---|
| HADLEY MACPHERSON (EGAN) | NO. 3:02CV1973 JCH |
| Plaintiff, | |
| | CIVIL ACTION |
| VS. | |
| | FEBRUARY 14, 2006 |
| DR. JOHN PERSING | |
| and | |
| YALE NEW HAVEN HOSPITAL | LETTER TO THE COURT |
| and | REGARDING PLAINTIFFS |
| YALE UNIVERSITY | RESPONSE TO JULY 27, 2005 |
| Defendants, | INTERROGATORIES AND |
| | LETTER SENT TO COURT |
| | ON FEBRUARY 14, 2006 |
| | REGARDING RESPONSE |

# LETTER TO THE COURT

# PERTAINING TO JULY 27, 2005 INTERROGATORIES

# AND THE COURTS ORDER FEBRUARY 1, 2006 ORDER

This letter is intended to be filed on the open docket, and not sent privately to the Court.

This letter is addressing the letter sent to the Court by the counsel for the defendants, a letter dated January 27, 2006, and received by the Court on January 30, 2006, which was then entered onto the docket on February 3, 2006, the same day that the Court's Order was docketed.

The pro se plaintiff, living in North Carolina, and only receiving her copy of the counsel for the defendants letter on January 30, 2006, did not have, and could not have had, adequate time to address anything stated in that letter before the Court issued its Orders in response to that letter the day after it received the counsel for the defendants letter.

The Court received its letter from the counsel for the defendants on January 30, 2006, the deadline date for the counsel for the defendants to have filed their Dispositive Motions.

The Court issues its Orders in response to that January 30, 2006 letter, in an Order it issued two days later on February 1, 2006.

As the pro se plaintiff, litigating from North Carolina, <u>is only allowed</u> to file her pleadings, Motions or letters, <u>if an original signature is attached with a Certification</u>, and <u>is not allowed to fax or electronically file</u> her pleadings, <u>their was neither time to draft a response to the counsel for the defendants letter, nor have it make its way back through the U.S. Mail to the District Court in Connecticut</u> in the one day turn around time from when the letter was received

1

by the Court on January 30, 2006, and the Court issued its Order in response to that letter <u>on February 1, 2006.</u>

The Court, in its February 1, 2006 Order, granted the counsel for the defendants, another 28 days by which to file their Dispositive Motions, after having already granting them a previous extra two months to file their Dispositive Motions, back on November 30, 2005, which back at that time, was already made one month beyond the already passed Discovery deadline of October 31, 2005.

At no time was any request made for an extension of the Discovery Deadline of October 31, 2005 by the counsel for the defendants, nor ever granted, which would have stayed the October 31, 2005 Discovery Deadline, prior to the counsel for the defendants requesting back on November 30, 2005, on the eve of their Dispositive Motion deadline, an extra two months to perform Discovery and file their Dispositive Motions.

After they were granted those two extra months for, and making full use of those two months, the counsel for the defendants approached the Court once more, again on the eve of the new deadline for their Dispositive Motion, that being January 30, 2006, <u>and approached the Court by way of an informal letter rather than by Motion, or any accompanying Memorandum of Law, or Supporting Affidavit.</u> , now stating claims that they again needed a movement of the Dispositive Motion deadline and Discovery deadline, due to the informal allegations they made against the plaintiff in their informal letter.

The counsel for the defendants in their January 27, 2006 Letter to the Court, suddenly claimed that the plaintiff had not responded to a set of "Interrogatories dated July 27, 2005", that the plaintiff had promised to send that response to those Interrogatories many times, and had

2

failed to do so, and that as a result, the counsel for the defendants were not able to perform Discovery, and needed more time for both Discovery, and to file their Dispositive Motions.

The counsel for the defendants, in their January 27, 2006 letter sent to the Court on January 30, 2006 were basing their request for an Extension of Discovery Deadlines and Dispositive Motion Deadlines, solely on their allegation regarding the Interrogatories dated July 27, 2005, and the plaintiffs supposed failure to respond to those "Interrogatories dated July 27, 2005".

As already stated, when the counsel for the defendants made their allegations against the plaintiff on January 30, 2006, <u>the plaintiff had absolutely no opportunity</u> to respond to the allegation being made by the counsel for the defendants before the Court, upon hearing their argument in the letter it received on January 30, 2006, issued its Orders on February 1, 1006, regarding the supposed "Interrogatories dated July 27, 2005", an Order which ordered the plaintiff to file with the Court her responses that she had previously filed to the "Interrogatories dated July 27, 2005" by February 14, 2006, and that if she did not do so, this case would be dismissed.

The plaintiff was given no opportunity to challenge the accusation made by the counsel for the defendants, or to argue that the counsel for the defendants had used inappropriate process to obtain benefit from the Court, and done so without providing any legal argument or evidence in support of their request.

The plaintiff was given no opportunity to explain that what the counsel for the defendants were pretending to seek, they already knew did not exist, and therefore could not be filed, as the counsel for the defendants themselves had voided that set of "Interrogatories dated

3

July 27, 2005" telling the plaintiff, in no uncertain terms, back on August 9, 2005, that she did not have to ever respond to those "Interrogatories dated July 27, 2005".

The counsel for the defendants, <u>had a long discussion with the plaintiff on Friday, August 5, 2006</u>, in which <u>both sides narrowed all of Interrogatory issues</u>, and in which Attorney James Craven, <u>gave the plaintiff his instructions as to what he wanted as initial disclosure</u>.

Attorney James Craven, then on Tuesday August 9, 2006, re-clarified his intent as to those "Interrogatories dated July 27, 2005" when he informed the plaintiff over the telephone that <u>he was re-drafting the Interrogatories altogether</u>, based on their discussion had three days earlier, and <u>that the plaintiff did not have to respond to the previously sent July 27, 2006 Interrogatories given that he was now completely re-writing them to conform to the issues and boundaries discussed at length over the telephone three days earlier, on Friday, August 5, 2006.</u>

There are no responses therefore to the "Interrogatories dated July 27, 2005."

The counsel for the defendants know that.

The counsel for defendants not only know it with a certainty, but Attorney Penny Seaman and Attorney James Craven had a recent very lengthy conversation with the plaintiff, on Friday, January 6, 2006, regarding those very events of last August surrounding the "Interrogatories dated July 27, 2006", the plaintiffs "Medical Authorization" sent on August 12, 2006, so they could not have forgotten what occurred when they fraudulently portrayed to the Court only three weeks later, on January 30, 2006, that the plaintiff had not served her responses to the "Interrogatories dated July 27, 2005".

It bears noting that the counsel for the defendants, when sending their letter to the Court making numerous allegations against the plaintiff, once again chose to use the venue of a one

4

page letter by which to skirt having to file any Motions at all regarding all of the discovery issues they raised in that one page letter, eight Discovery issues in all, ranging from the Motions to Quash, the Subpeonas, the Medical Experts to Testify, Discovery Disputes, and their Dispositive Motions, and need for a new and expanded Discovery Deadline..

The counsel for the defendants <u>are required</u> by the Federal Rules of Civil Procedure and the Local Civil Rules, <u>to argue their positions in formal Motions, Motions to Compel, or Motions to Dismiss, accompanied by Memorandums of Law, and any requisite Affidavits swearing to their attempt to perform Discovery, or the opposing counsel's refusal to do so</u>.

The counsel for the defendants are required to file Motions to Compel, and make attempts to work out Discovery issues, if there be any, on their own, <u>before ever contacting the Court, or ever filing Motions to Dismiss.</u>

In the present case, the counsel for the defendants simply sent a letter, with a one page statement of allegations against the plaintiff, as to her having supposedly failed to perform certain obligations, or answer "Interrogatories dated July 27, 2005", a letter by which the counsel for the defendants immediately obtained an Order of Dismissal based on no showing of any relevant or material facts to warrant such a Dismissal, and no legal argument made to justify a Dismissal.

Further, not one Motion to Compel was ever filed in the history of this case, and no Affidavit ever testifying to any Discovery issues, has ever been filed by the counsel for the defendants swearing or alleging anything against the plaintiff.

The counsel for the defendants merely sent a letter to the Court, and two days later, on an un-testified set of allegations, without any Motions being filed at all, obtained an Order for

Dismissal that they knew they were not legally entitled to, which is why they never filed the appropriate Motions to Compel, or Affidavits, or Memorandum of Law in, in the first place.

The counsel for the defendants did not even supply the supposed "Interrogatories dated July 27, 2005" to prove their actual existence or content.

The counsel for the defendants sent their allegation in the form of a simple letter, because they knew that under the Federal Rules of Civil Procedure, they could not be granted any of the items they were seeking if they had to make a legal argument for them, or a show of proof of their allegations in support of their requests.

The plaintiff has legal rights.

The plaintiff has the legal right to defend.

The plaintiff has the legal right to require that the counsel for the defendants litigate their case on the record, with formal Motions, Memorandum of Law, and Affidavits that the plaintiff can actually make a defense against with opposing legal argument, case law, and her own Affidavits, or other evidence in her possession.

The counsel for the defendants knew that Discovery ended in this case on October 31, 2005, and though they received an extra two months extension from November 30, 2005 to January 6, 2005 by which to perform Discovery, not once in the entire eight (8) months since this Court ordered that Discovery begin back on June 28, 2005, did the counsel for the defendants ever file any Motions alleging that any Interrogatories had not been complied with.

The counsel for the defendants, had eight (8) months to perform Discovery, and resolve any Discovery issues, and it was only on the eve that their Dispositive Motions were due, that being January 30, 2006, did they suddenly claim that they were not sent the responses to a set of Interrogatories dated July 27, 2005, six months earlier.

6

The counsel for the defendants, under the Federal Rules of Civil Procedure, before ever approaching this Court, <u>must make their own effort to compel compliance from opposing counsel if some problem actually exists</u>, and that attempt to Compel, or any complaint against opposing counsel for not complying, <u>must be timely made, or that complaint is legally waived</u>.

In the present case, the counsel for the defendants were asking this Court to suddenly accept <u>an unsupported allegation made six (6) months after the fact</u>, by which to obtain a Dismissal of this case with, which is exactly what they got, and without ever even filing a single Motion.

The plaintiff was not late in filing any response to the "Interrogatories dated July 27, 2006", <u>as those Interrogatories were made void by Attorney James Craven back on August 9, 2006,</u> an action <u>which Attorney James Craven, Attorney Penny Seaman, Attorney Bonnie Patten, and Attorney Kevin Budge are fully aware.</u>

The fact that the counsel for the defendants <u>never raised the issue in the past six (6) months speaks for itself</u>.

Wiggin & Dana is a huge law firm, and four attorneys are attorneys of record in this case.

It cannot be believed that in the eight (8) months that transpired between the Court's June 28, 2005 Order, and January 30, 2006, that the counsel for the defendants sat waiting for their Interrogatories which were never sent.

The defendants complaint regarding any Discovery Issues is coming four (4) months after Discovery was formally ended in this case on October 31, 2005, and without any excuse for the delay, or any evidence of attempts made to force compliance, and any Affidavits regarding the "Interrogatories dated July 27, 2006, any Motions to Compel being filed, and Memorandum of

7

Law being timely filed, the counsel for the defendants <u>cannot legally be granted a Dismissal based on a two sentence accusation made six (6) months too late in a letter sent to the Court.</u>

Further, at the time that the counsel for the defendants sent their letter to the Court, a letter dated January 27, 2006, the plaintiff was attempting to finish her responses to the Motions to Quash filed by the counsel for the defendants and Attorney Matthew Frechette, involving six (6) witnesses who <u>all have direct and personal knowledge of the plaintiff in this case, direct and personal knowledge regarding her medical records which are substantively relevant and material to a determination of the issues in this case, and a just determination of those issues.</u>

The plaintiff had in fact served Subpeonas on nine (9) individuals <u>who all had first hand knowledge of, and were a participant in, events involving the plaintiff which are directly relevant and material to the issues to be determined in this case, and the just determination of those issues.</u>

Six (6) of the individuals Subpeonaed filed Motions to Quash, while the other three (3) individuals just ignored the Subpeonas altogether.

The plaintiff had served those Subpeonas <u>beyond the previous Discovery Deadline of October 31, 2005,</u> because the Court, back on December 5, 2005, in response to a request for an Enlargement of Time made by the counsel for the defendants on November 30, 2006, granted the counsel for the defendants <u>another two months to file their Dispositive Motions based on the counsel for the defendants unsupported claim that they had not been able to perform Discovery.</u>

The Court <u>granted the counsel for the defendants another two months until January 30, 2006 to perform the allegedly unperformed Discovery</u>, and by which to then have their Dispositive Motions filed based <u>on what they now would learn in the extra two months granted to them.</u>

8

During the extra two months that were granted to the counsel for the defendants to perform the Discovery that they allegedly had not performed before, the counsel for the defendants <u>continued to conduct Discovery</u>, from November 30, 2006 through January 30, 2006.

The plaintiff had <u>every reason</u> to believe therefore that the extension of the Discovery period afforded to the defendants, and the counsel for the defendants, <u>was equally granted to her given that she had not been found guilty of any wrong doing which would justify the defendants being granted two more months of Discovery, and her being denied those two months.</u>

The circumstance under which the counsel for the defendants had been granted the extra two months were as follow:

The counsel for the defendants filed a Motion to Dismiss back on August 24, 2005, and Motion to Preclude back on September 6, 2005, alleging that the plaintiff had not sent them her Medical Authorizations.

<u>The counsel for defendants had not filed any Motion to Compel previous to filing their Motion to Dismiss and Motion to preclude, and neither filed any Affidavit in support of the allegations made in those two Motions</u>, that would <u>legally testify</u> to the events which they had alleged in their Motion to Dismiss and Motion to Preclude, any attempts they had made to demand compliance, or the plaintiffs supposed refusal to comply with their demands.

The plaintiff had responded with her "Objection to the Motion to Dismiss and Motion to Preclude," on September 19, 2005, an Objection which <u>flatly denied</u> the allegations made by the counsel for the defendants in their August 24, 2005 Motion to Dismiss and September 6, Motion to Preclude.

In the plaintiff's "Objection to the Motion to Dismiss and Motion to Preclude", the

9

plaintiff argued that <u>before</u> the counsel for the defendants allegations could be legally considered, ruled upon, or granted, the counsel for the defendants <u>were under the legal burden to produce sworn Affidavits to each and every one of the allegations made in their "Motion to Dismiss" dated August 24, 2005, and "Motion to Preclude" dated September 6, 2005, and made to appear at a Hearing to testify under Oath and on the record to the truth of the statements made in those sworn Affidavits.</u>

The plaintiff challenged Attorney Penny Seaman, Attorney James Craven, Attorney Kevin Budge, Attorney Bonnie Patten, and their paralegal, Diana Copolla, to do so.

The plaintiff knew with a certainty that each of the four Attorneys of record, and their paralegal, named above, had <u>direct and personal knowledge</u> pertaining to the allegations they had made in their "Motion to Dismiss" dated August 24, 2005, and "Motion to Preclude" dated September 6, 2005.

The plaintiff stated in her "Objection to the Motion to Dismiss and Motion to Preclude" that she herself would gladly appear at an Evidentiary Hearing for the purposes of getting to the truth, and would produce her own Affidavit, and testify under Oath to that Affidavit, right along with Attorney Penny Seaman, Attorney James Craven, Attorney Kevin Budge, Attorney Bonnie Patten, and Diana Coppola.

The plaintiff did not produce her own Affidavit in advance however, <u>as the burden was not upon her but upon the counsel for the defendants to produce some sort of evidence</u> of their allegations made in their "Motion to Dismiss" and "Motion to Preclude", and to support those Motions with Affidavits testifying to personal knowledge of the events alleged in those Motions, prior to the Courts ever considering their request for Dismissal or Preclusion.

10

The plaintiff <u>was under no legal burden to offer up her Affidavit in advance of the opposing counsels Affidavits,</u> by which the counsel for the defendants could then attempt to design or fashion their own Affidavits in a way in which would help them escape their being exposed for having directly lied in their previous relating of facts and events in their "Motion to Dismiss" and "Motion to Preclude" which was then pending before the Court.

Under the Rules, the burden to produce and persuade was the counsel for the defendants.

While the plaintiff prepared her own Affidavit and Memorandum of Law swearing to the events as she knew them with a certainty to be, she waited for Attorney Penny Seaman, Attorney Bonnie Patten, Attorney Kevin Budge, and Attorney James Craven, as well as their paralegal Diana Coppola, to sign sworn Affidavits attesting to their own personal knowledge of the allegations made in their Motions to Dismiss and Motions to Preclude.

The burden of proof was on the attorneys for the defendants who had made the allegations as to time, place, and content of conversation, and documents sent, to produce at least the evidence of their own personal and professional sworn testimony in an Affidavit, to be later further testified to at an Evidentiary Hearing.

That being the case, the plaintiff did not believe that she should be made to afford them any information in advance, relating the events as she knew them to be, or pertaining to the contents of her own Affidavit, as she was not required to offer them a set of circumstances by which they could then mold their testimony.

Several weeks later, on October 20, 2005, the counsel for the defendants finally <u>filed an untimely Reply</u> to the plaintiffs "Objection to the Motion to Dismiss and Motion to Preclude", but only came forward with one (1) Affidavit, the Affidavit of Diana Coppola, a paralegal, an

11

Affidavit that <u>only testified to her personally not having received the plaintiffs Medical Authorizations,</u> but which <u>did not in any way testify to the knowledge</u> of the Attorney Penny Seaman, Attorney Kevin Budge, Attorney James Craven, or Attorney Bonnie Patten.

The Affidavit of Diana Coppolla, <u>a paralegal</u> with no law license to lose if she should be proved to be committing perjury, <u>in no way addressed any of the statements and allegations made by the four attorneys in their "Motion to Dismiss" dated August 18, 2006 and "Motion to Preclude" dated August 30, 2006, as to events</u> which they claimed with specificity had occurred, and upon which supposed events they were asking this Court to grant them a Dismissal of this action, or a Preclusion of the plaintiffs ability to call a Medical Expert to testify on her behalf.

The Affidavit of Diana Coppolla, which <u>did not in way testify to the events alleged</u> in the "Motion to Dismiss" and "Motion to Preclude" filed by the counsel for the defendants, <u>could not in any way legally satisfy the requirement as to the personal knowledge</u> of Attorney Penny Seaman, Attorney James Craven, Attorney Kevin Budge, and Attorney Bonnie Patten, who had drafted and filed those "Motions to Dismiss" and "Motions to Preclude", and therefore, <u>could not in any way be legally sufficient to support the "Motions to Dismiss" or "Motion to Preclude"</u>

<u>Without Attorney Penny Seaman, Attorney James Craven, Attorney Kevin Budge, Attorney Bonnie Patten being willing to supply their own Affidavits</u>, testifying to their own personal knowledge of the events that they had alleged in their "Motion to Dismiss" and "Motion to Preclude", and <u>without their being willing to testify to the truth of those Affidavits, and without any "Motion to Compel"</u> having been filed in advance of the Motions to Dismiss and Motion to Preclude demonstrating attempts to resolve any outstanding issues, the counsel for the defendants' filing of a "Motion to Dismiss" and "Motion to Preclude" absent the required

12

Affidavits, and any previous Motion to Compel <u>was not only premature, but fraudulently and frivolously filed.</u>

The counsel for the defendants <u>blatant refusal to supply sworn Affidavits</u> in support of the <u>numerous statements that they themselves already made</u> in the "Motion to Dismiss" and "Motion to Preclude", rendered the "Motion to Dismiss" and "Motion to Preclude" unable to be legally granted, as the un-sworn allegations of a paid advocate can be given no weight..

The counsel for the defendants had merely attempted to make an end run around the Federal of Civil Rules of Civil Procedure in an effort to get this case dismissed, and to cripple the plaintiff ability to prosecute this case at Trial, and were caught red-handed doing so when they failed to make any sworn substantiation of their allegations.

Swearing to their own personal knowledge, a personal knowledge that they themselves already stated without an Oath, and previously alleged in their Motion to Dismiss dated August 24, 2005 and Motion to Preclude dated September 6, 2005, should have been an easy an instant task if the attorneys for the defendants had been telling the truth when filing their Motion to Dismiss and Motion to Preclude.

The Court, in response to the counsel for the defendants tardy Reply, which Reply was <u>only accompanied by the one (1) Affidavit of Diana Coppola</u>, an Affidavit that <u>only testified</u> to <u>her personally not receiving the Medical Authorizations</u>, but <u>which did not, and could not, testify to the actual or personal knowledge of the four attorneys involved in this case</u>, or <u>testify to the supposed events alleged to have taken place by the counsel for the defendants</u> in their "Motion to Dismiss" and "Motion to Preclude", Ordered told the plaintiff re-send her Medical Authorizations to the counsel for the defendants.

13

The counsel for the defendants "Motion to Dismiss" dated August 24, 2005 and Motion to Preclude dated September 6, 2005, <u>were not granted, and no Finding was ever made by which the plaintiff was found guilty of any wrong doing, or guilty of any delay.</u>

On November 3, 2006, the Court Ordered that the plaintiff re-serve her Medical Authorizations to the counsel for the defendants, and a copy of those Medical Authorizations to be filed in the Court also, that service to take place by November 15, 2005.

The plaintiff re-delivered her Medical Authorizations to the counsel for the defendants by November 15, 2005,

On November 30, 2006, the deadline date that the Dispositive Motions were due, the counsel for the defendants filed a Motion for Enlargement of Time by which to file their Dispositive Motions, claiming they had been denied opportunity as to the plaintiffs Medical Experts from their supposedly not having received her Medical Authorizations until November 15, 2005, for the supposedly the first time.

The Discovery deadline had already passed a full month earlier, on October 31, 2005, and at no time had the counsel for the defendants ever made any motion to Stay the Discovery while their Motion to Dismiss dated August 24, 2005 and Motion to Preclude dated September 6, 2005 were being litigated, therefore no stay of Discovery had occurred.

The Court, on December 5, 2005 granted the counsel for the defendants November 30, 2006 request for an Enlargement of Time, granted them an extra two months until January 30, 2006 to file their Dispositive Motions, which granting them, as stated afforded the counsel for the defendants and extra two months of Discovery.

14

On the eve of that two month new deadline for Dispositive Motions, that being January 30, 2006, the counsel for the defendants then sent their letter to the Court requesting another extension which was then immediately granted to them, another extension of 28 days based on no showing of circumstance, no proof of wrongdoing on the part of the plaintiff, no Affidavit in support of their allegations, and which further afforded them a sua sponte Dismissal if the plaintiff did not immediately comply with producing that which could not be produced, as it did not exist, and was not expected to exist.

Further, the Court then quashed the Subpeonas of the six (6) individuals that the plaintiff had served in late December and in the first week of January, on the basis that Discovery ended on October 31, 2005.

Yet the counsel for the defendants have been performing Discovery in this case, upon Court Order and allowance, right up until January 30, 2005, as per the Court's Order dated December 5, 2005 in response to the counsel for the defendants Motion for An Enlargement of Time filed on November 30, 2005, a full month after the Discovery Deadlline of October 31, 2005, had already passed.

The plaintiff served those Subpeanas in response to actions taken by the counsel for the defendants and the individuals Subpeoaned, actions which have been ongoing, and which the counsel for the defendants continued to engage in during the past several months right up until this past week, actions which involved the plaintiffs medical record in this case, and the withholding, alteration, and destruction of that medical record.

The plaintiff in serving those Subpeonas upon each of the nine witnesses, who all have had previous knowledge and personal and direct knowledge of this case, this plaintiff, and this

15

plaintiffs medical record, was attempting to disclose that which had occurred, and to preserve that which remains before it too can be altered or destroyed.

The defendants knew the names of the plaintiffs Medical Experts since August 12, 2005, when the plaintiff sent them to Attorney James Craven.

The defendants, knew from Dr. John Persings connection to those individuals what their testimony in this case would mean, if compelled, and if their records were allowed into evidence.

When the defendants could not get this case dismissed on a baseless allegation of the plaintiff having not previously sent them those names, they then asked for extra time to set about destroying and altering those records as their last hope of preventing the plaintiff from bringing them into evidence.

The counsel for the defendants were granted two months by which to perform extra Discovery and file Dispositive Motions until January 30, 2006.

The Court's December 5, 2005 Order cannot be read to mean anything else, as it was giving the counsel for the defendants a further and extended period of time by which to obtain documents from the plaintiffs physicians, and to speak to those physicians, before having to file their Dispositive Motions on January 30, 2006.

The plaintiff herself, out of equity and fairness, having done no wrong, would have to have able to be afforded to conduct equal Discovery of those same individuals in response to the actions proposed and then taken by the counsel for the defendants during that time, particularly if that which the plaintiff was seeking was testimony from her own physicians.

Though the plaintiff did not finish her responses to the Motions to Quash because the evidence of collusion was so great, and the exhibits so many that it was an enormous in the time

16

allotted, she still believes that she should have legal right to Depose those witnesses, or to make an argument as to why those witnesses should be compelled to Testify, and does not believe that her right to do so, was lost with the passing of the October 3,1 2005 Deadline given the Orders which came after.

The defendants latest letter to the Court on January 30, 2006 was nothing more but another attempt to try any inappropriate and unofficial way to get this case dismissed.

The plaintiff argues in response, that all Discovery issues and all Dispositive issues are required to be argued in formal Motion, with supporting Affidavit and Memorandum of Law, and that any determinations absent a formal record, fought through formal papers, according to the Rules, should not be afforded to any litigant, never mind practiced attorneys who have no excuse, and offer no excuse for ignoring those Rules.

The plaintiff is willing to attend a Hearing as the counsel for the defendants asked for in their January 30, 2006 letter, but any Hearing called on Discovery Issues should only be held after papers from both sides have the fair and full opportunity to officially, and fully, defend their position in Motions, Memorandum of Law, and supporting Affidavits, which can become a part of the formal record in this case.

If it were the plaintiff who had written the January 30, 2006 letter to the Court, the Court would have issued an Order telling the plaintiff to follow the Federal Rules of Civil Procedure when attempting to address any Discovery Disputes.

If it were the plaintiff who were complaining of a set of supposed "Interrogatories dated July 27, 2005" which had supposedly never been responded to, the Court would have told the plaintiff that her complaint was untimely, and that her right to complain was waived.

*Hadley Macpherson*
Hadley Macpherson, pro se
2015 McKenzie Creek Drive
Charlotte, North Carolina 28270
(704) 675-5252

## CERTIFICATION

This is to certify that a copy of the foregoing was sent this day of February 14, 2006, to be delivered by or on February 15, 2006, to the law offices of Wiggins and Dana located at 265 Church Street, New Haven Connecticut, 06508 - 1832.

*Hadley Macpherson*
Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC 28270
(704) 675 - 5252