Original

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

### AT BRIDGEPORT

| | |
|---|---|
| **HADLEY MACPHERSON (EGAN)** | **NO.   3:02CV1973  JCH** |
| Plaintiff | |
| | **APRIL 18, 2006** |
| **VS.** | |
| | |
| **DR. JOHN PERSING** | **PLAINTIFF'S OBJECTION** |
| and | **TO DEFENDANTS** |
| **YALE NEW HAVEN HOSPITAL** | **MOTION TO DISMISS** |
| and | |
| **YALE UNIVERSITY** | |
| Defendants | |

## **PLAINTIFF'S OBJECTION TO DEFENDANTS'**

## **MOTION TO DISMISS FILED FEBRUARY 17, 2006**

The plaintiff, Hadley Macpherson, respectfully Objects to the defendants "Motion to Dismiss" filed February 17, 2006.

In support of her Objection, the plaintiff files a supporting Memorandum of Law, attached Exhibits, and attached sworn "Affidavit of Hadley Macpherson" dated March 12, 2006.

The plaintiff's Objection, supporting Memorandum of Law, attached Exhibit's A - Z, and attached sworn "Affidavit of Hadley Macpherson", <u>directly contradict the allegations and arguments made by the counsel for the defendants </u> in their Motion to Dismiss dated February 17, 2006, supporting Memorandum of Law dated February 17, 2006, and attached sworn Affidavit of Attorney James Craven, dated February 17, 2006.

The mail tampering and illegal entry which the plaintiff, Hadley Macpherson, had alleged in her several recent requests for Enlargements of Time as the caused for her being delayed in filing this Objection and accompanying Memorandum of Law, and which warranted the additional time granted to the plaintiff under the circumstances presented, was addressed in a separate, and previously filed, "Plaintiff's Motion and Affidavit of Hadley Macpherson As To Illegal Tampering of Plaintiff's Mail and Illegal Entry Into Plaintiff's Home", with attached supporting Exhibit's A - E, that was filed back on Thursday, April 6, 2006.

1

## ISSUE RAISED BY DEFENDANTS

The defendants, through the filing of their latest Motion to Dismiss dated January 17, 2006, seek to have this case dismissed on their claim that the plaintiff failed to comply with an Order issued by the Court on February 1, 2006, an Order pertaining to the defendants "Second Interrogatories and Requests for Production dated July 27, 2005".

The defendants argue that the plaintiff's alleged failure to comply with the Court's February 1, 2006 Order, warrants that the terms of the Court's February 1, 2006 Order be now enforced, and that this case be dismissed with prejudice.

The defendants' Motion to Dismiss dated February 17, 2006 is attached as an Exhibit to the plaintiff's Objection and supporting Memorandum of Law, and is quoted in its entirety below:

### MOTION TO DISMISS

"Pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure, defendants, Yale Medical Group, Yale-New Haven Hospital, Yale Plastic Surgery, and Dr. John Persing ("defendants"), hereby move to dismiss this action for plaintiff's failure to comply with this Court's February 1, 2006 Order. That Order required plaintiff to provide defendants with responses to their July 27, 2005 Second Set of Interrogatories and Requests for Production by February 14, 2006, but she has failed to do so. In support of this Motion, defendants submit the attached Memorandum of Law".

**Argument Not Requested**
**Testimony Not Required**

The Order being cited by the defendants in their Motion to Dismiss, is an Order that the Court issued on back Wednesday, February 1, 2006, in direct response to a letter that the Court had received from Attorney Kevin Budge five (5) days earlier, on Friday, January 27, 2006.

2

Attorney Kevin Budge's Letter dated Friday, January 27, 2006, which was written and

delivered to the Court on Friday, January 27, 2006, was a letter that:

a)    made numerous and specific allegations against the pro se plaintiff

b)    complained of five (5) different alleged Discovery disputes and Discovery
       Issues, which they described as the involving:

"1.  Outstanding Discovery ...."

"2.  Motions for Protective Orders ...."

"3.  Expert Disclosures .... "

"4.  Dispositive Motions ....."

"5.  Narrowing of the Issues ....".

c)    argued that the defendants had been prejudiced or put at a disadvantage as
       a result of the plaintiffs actions, and as a result of the above allegedly
       unresolved Discovery disputes and Discovery issues

d)    argued the need for various legal remedies to cure the prejudice and
       disadvantage now being borne by the defendants as a result of the
       plaintiff's actions

e)    requested the defendants be granted additional time to complete their
       Discovery, additional time to file their Dispositive Motions, and a status
       conference to address all of the allegations made against the plaintiff,
       alleged in their items "1." through "5." named above.

The defendants' Motion to Dismiss dated Friday, February 17, 2006, was accompanied by

a Memorandum of Law, and attached "Exhibits", Exhibits identified as Exhibits "A" through

"D", but which contained several items within each Exhibit "A" through "D", as shown below:

3

## DEFENDANTS' EXHIBITS "A" THROUGH "D"

**Exhibit A** -- **1.**  Copy of a "Letter" written by Attorney Kevin Budge, which was dated July 27, 2005, and sent to the plaintiff back on July 27, 2005.

         **2.**  Copy of the "Second Interrogatories and Requests for Production" dated July 27, 2005.

         **3.**  Fed Ex Tracking page verifying delivery to the plaintiffs home in Charlotte, North Carolina, on July 28, 2005.

**Exhibit B** -- **1.**  "Affidavit of Attorney James Craven" dated February 17, 2006.

**Exhibit C** -- **1.**  Copy of a "Letter" written by Attorney Kevin Budge, which was dated January 4, 2006, and sent to the plaintiff back on January 4, 2006.

         **2.**  Another Copy of the same "Second Interrogatories and Requests for Production" dated July 27, 2005, as presented in Exhibit A above.

         **3.**  Fed Ex Tracking page verifying delivery to the plaintiff's home in Charlotte, North Carolina, on January 5, 2006.

**Exhibit D** -- **1.**  Copy of the Docket Entries from the CM/EMF District Court Internet Docket System, referencing the following two Docket items, but without displaying the content of the two documents referenced:

**Docket Entry 96:**  "Letter" written to the Court by Attorney Kevin Budge, dated Friday, January 27, 2006

              [filed by the Court on Tuesday, January 31, 2006, entered on the Docket on Friday, February 3, 2006]

**Docket Entry 97:**  Courts "Order" issued on February 1, 2006 in response to Attorney Kevin Budge's Letter dated January 27, 2006

              [filed by the Court on Wednesday February 1, 2006, entered on the Docket on Friday February 3, 2006]

The above Exhibits, <u>were the only documents that the counsel for the defendants</u> <u>presented to support the argument and allegations made in their Motion to Dismiss dated</u> <u>February 17, 2006,</u> <u>and supporting Memorandum of Law dated February 17, 2006.</u>

The volume of documents that actually exists however, which are directly relevant and material to the argument and allegations being made by the counsel for the defendants in their Motion to Dismiss dated February 17, 2006, <u>but which were deliberately not disclosed or</u> <u>referenced</u> by the counsel for the defendants, <u>factually and legally support the plaintiff's</u> <u>argument in defense</u> against the defendants' Motion to Dismiss dated February 17, 2006.

In order for the Court to make a full, fair, and just determination on the merits of the defendants' Motion to Dismiss, the Court <u>must consider all documents, facts, and events</u> pertaining to the defendants "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, and <u>must also consider all documents, facts, and events surrounding</u> Attorney Kevin Budge's Letter dated Friday, January 27,2006, and the Order dated February 1, 2006 that resulted from it, as any just determination, in this instance, <u>not only</u> legally hinges on outside facts and events that the Court is unaware of relating to the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, <u>but also hinges on all of the facts, and events</u> <u>surrounding Attorney Kevin Budge's Letter dated Friday, January 27, 2006, and the Court's</u> <u>Order issued in response to that letter on Wednesday, February 1, 2006, facts, and events which</u> <u>cannot be legally ignored.</u>

A specific and exact recounting, and <u>full consideration</u>, of <u>all events</u> that transpired, is in this instance<u>, legally necessary to any Determination of the Issue raised by the counsel for the</u> <u>defendants ,</u> despite the fact that the counsel for the defendants <u>deliberately omitted any</u>

discussion of Attorney Kevin Budge's Letter dated January 27, 2006 in their Motion to Dismiss dated February 17, 2006, 2006,  and deliberately omitted  any discussion of the events which led up to, and followed, the Court's Order dated February 1, 2006, being written on the face of that Letter.

The defendants, though asking this Court to enforce and uphold the Order they obtained as a result of the letter written to the Court by their counsel, Attorney Kevin Budge, on January 27, 2005, a letter which bears the Court's handwritten Order dated February 1, 2006 directly on its face, deliberately chose not to attach Attorney Kevin Budge's Letter dated January 27, 2006, as an Exhibit.

The absence of Attorney Kevin Budge's Letter dated January 27, 2006, and the absence of the handwritten February 1, 2006 Order of the Court written on its face, is an absence that admits everything, and is an absence that admits that what transpired, if openly disclosed and argued, would not withstand review, and therefore could not ever be legally used as a mechanism to Dismiss this case.

The following items factually and legally support the plaintiff's position:

a)   **"The Indisputable Fact And Events Surrounding The Issuance Of The Court's Order Dated February 1, 2006",** listed in **Part A** of the plaintiff's supporting Memorandum of Law, and proved by the plaintiff's **Exhibits A, B, and C**, attached to this Objection and its supporting Memorandum of Law.

b)   **"The Indisputable Facts And Events Surrounding The Interrogatories And Requests For Production Dated July 27, 2005",** listed in **Part B** of the plaintiff's supporting Memorandum of Law, and proved by the plaintiff's **Exhibit's A - Z,** attached to this Objection and its supporting Memorandum of law.

6

c)        The plaintiff's sworn **"Affidavit of Hadley Macpherson"**.

d)        The **judicial admissions made by the counsel for the defendants** during the **Telephone Status Conference** held **on June 22, 2005**.

e)        **Attorney Penny Seaman's Letter to the Court dated January   , 2005**.

f)        The plaintiffs' previous **Motion for Relief Under Rule 60(b) dated June 22, 2005, and attached Exhibits**.

g)        The **Court's Oral Orders issued during the Telephone Status Conference held on June 22, 2005**, relating to the behavior of the counsel for the defendants, and the content of any future letters being sent to the Court.

The plaintiff's items identified as **a)** through **g)** listed above, factually and legally support the plaintiff's factual and legal defenses identified below:

## PLAINTIFF'S FACTUAL AND LEGAL DEFENSES

1.        The Order dated Wednesday, February 1, 2006, which the defendants now ask this Court to enforce, was issued in violation of the tenants of Due Process, cannot be upheld, and therefore cannot be legally used or relied upon as the legal foundation or justification for the granting of the defendants' Motion to Dismiss.

2.          The counsel for the defendants, though experienced attorneys, and though

knowing how to file appropriate and formal Motions and supporting Memorandum of

Law to address complaints or issues involving Medical Experts, Outstanding Discovery,

Interrogatories, Motions for Protection, Narrowing of the Issues, etc., deliberately

attempted to avoided having to meet the legal bar required for each of those Motions by

simply sending an informal letter to the Court, <u>a letter absent of any attached Exhibits or</u>

<u>Affidavits</u>, and <u>absent of any attached Certification</u>, a <u>letter that informally alleged</u>

<u>everything against the plaintiff</u>, and <u>yet substantiated nothing</u>, a letter which <u>made no</u>

<u>attempt to argue the law,</u> but which immediately succeeded in obtaining an Order issued

in favor of the defendants, <u>an Order issued without the plaintiff being afforded any time</u>

<u>or opportunity to respond to the allegations made</u>, an Order the defendants are now

demanding that this Court use as the legal basis, legal foundation, and legal justification,

for the granting of the defendants' Motion to Dismiss dated February 17, 2006.


3.          The <u>actual events that occurred</u>, and <u>actual onversations that took place between</u>

<u>the plaintiff pro se and the counsel for the defendants,</u> relating to the defendants' "Second

Set of Interrogatories and Requests for Production" dated July 27, 2006, <u>are not in any</u>

<u>way as the counsel for the defendants allege and describe</u>, and <u>do not in any way support</u>

<u>the allegations and argument made</u> by the counsel for the defendants in their Motion to

Dismiss dated February 17, 2006, supporting Memorandum of Law, and sworn Affidavit

of Attorney James Craven.

          The sworn "Affidavit of Attorney James Craven", <u>is patently false</u>, and <u>omits</u>

8

numerous facts and events that Attorney James Craven knows with a certainty to be true, facts and events which if admitted, would factually and legally destroy the allegations and argument put forth by the counsel for the defendants, in their Motion to Dismiss.

The plaintiff was expressly instructed by Attorney James Craven personally, on Tuesday, August 9, 2005, to completely ignore and permanently disregard the "Second Set of Interrogatories and Requests for Production" dated July 27, 2006, and to wait for a completely new set of interrogatories that he himself claimed to be drafting as a result of a two and half hour discussion he had with the plaintiff on Friday, August 5, 2006, relating to the content and over breadth of the demands made in the "Second Set of Interrogatories and Requests for Production dated July 27, 2006.

The sworn "Affidavit of Hadley Macpherson", swears under penalty of perjury to the truth of the actual events and actual conversations had between the her and counsel for the defendants, as well as their paralegal, Diana Coppolla, regarding the "Second Set of Interrogatories and Requests for Production" dated July 27, 2006.

4.        The sworn Affidavit of Attorney James Craven cannot legally overcome the sworn Affidavit of  Hadley Macpherson, as the sworn statement of an attorney, with not only his own interests, but the interests of his law firm and clients at stake, does not carry, and cannot carry, a legal presumption of truth over the sworn statements of a pro se, and therefore cannot legally outweigh the sworn statements of a pro se.

5.        The factual dispute surrounding the two different versions of facts and events

involving the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, facts and events which directly and personally involved Attorney Penny Seaman, Attorney Bonnie Patten, Attorney Kevin Budge, Attorney James Craven, their paralegal Diana Coppola, and the plaintiff, Hadley Macpherson, is a factual dispute that can only be legally resolved, or fully and fairly adjudicated, by every one of the above named individuals being made to take the witness stand, and give their sworn testimony, under Oath, to the allegations made, and being required to answer for, and be openly cross-examined as to any evidence that can be produced which would contradict their dated testimony, and contradict the statements and allegations made in their Motion to Dismiss dated February 17, 2006, supporting Memorandum of Law, and other documents previously filed with the Court that pertain to this matter.

6.       Attorney James Craven's sworn Affidavit cannot be afforded the extra weight of an Affidavit of an Officer of the Court , given that the counsel for the defendants are no longer litigating in the sole position of advocate for the defendants, but are litigating to protect their own interests due to the liability that they themselves have incurred from their commission of illegal acts during the course of this case.

      The counsel for the defendants themselves committed illegal acts when they aided the defendants Dr. John Persing, Yale University, and Yale New Haven Hospital, in the illegal alteration, illegal withholding, and illegal destruction of the plaintiff's medical records, and illegal disclosure of private patient medical information, as well as illegally aided Dr. Gary Price, Dr. Linton Whitaker, and Dr. Alan Brackup in their illegal

alteration, <u>illegal withholding</u>, and <u>illegal destruction of the plaintiff's medical records</u>, and <u>illegal disclosure of private patient medical information, illegal acts which carry Federal criminal penalties for the physicians involved, a $250,000,00 fine for each act, and ten years in Federal prison.</u>

The counsel for the defendants intentionally committed those illegal acts with forethought in order to shield, aid, and protect the defendants in this case, and in order to cause the plaintiff to lose this case and suffer the resultant substantial financial judgment incurred by the awarding of costs to the defendants and the law firm of Wiggin & Dana.

The counsel for the defendants <u>are fully aware that the plaintiff intends to prove their involvement with that illegal alteration, illegal withholding, illegal destruction, and illegal disclosure with a certainty, by the volume of paper already in her possession, in a later and separate action</u> against Attorney Penny Seaman, Attorney Kevin Budge, Attorney James Craven, Attorney Bonnie Patten, their paralegal Diana Coppola, and the law firm of Wiggin& Dana, as well as Dr. John Persing, Yale University, Yale New-Haven Hospital, Dr. Linton Whitaker, Dr. Gary Price, and Dr. Alan Brackup.


7.       The Motion to Dismiss itself <u>lacks the required documentation to support</u> the counsel for the defendants claims that   **a)** an <u>ongoing dispute</u> surrounding the July 27, 2005 Interrogatories and Requests for Production existed for seven months; or **b)** that <u>numerous requests</u> were made to the plaintiff to produce the July 27, 2005 Interrogatories and Request for Production during those seven months; or **c)** that those supposed numerous requests were ever denied, never mind denied numerous times by the

plaintiff during those seven months, or **d**) that the counsel for the defendants <u>ever took</u> <u>any of the appropriate or required steps to resolve any supposed dispute involving the</u> <u>"Second Set of Interrogatories and Requests for Production" dated July 25, 2006, during</u> <u>the seven months that passed</u> before they complained of the plaintiffs supposed non-compliance in Attorney Kevin Budge's Letter sent to the Court on Friday, January 27, 2006, on the eve their Dispositive Motion deadline, that being Monday, January 30, 2006.

The counsel for the defendants <u>never filed any Motion to Compel in the history of</u> <u>the case, or took any of the appropriate or timely actions as required by the Federal Rules</u> <u>of Civil Procedure and Local Civil Rules, to resolve any supposed dispute</u> regarding the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, <u>during</u> <u>the seven (7) months</u> that passed between July 27, 2005 and the filing of the Motion to Dismiss on February 17, 2006.

The counsel for the defendants made no attempt to contact the plaintiff regarding the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, in the five months that followed Attorney James Craven's instructing the plaintiff on August 9, 2005 to completely ignore and permanently disregard the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, refused her many attempts to reach them by telephone for five months, and never sent her any correspondence regarding the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, until January 4, 2006, over <u>two months after the formal</u> <u>Discovery Deadline had already passed</u> on October 31, 2006.

<u>Only after the plaintiff had served her Subpeonas</u> on Dr. Linton Whitaker, Dr.

12

Gary Price, and on Dr. Brackup, in the last week of December 2005, and when the

Subpeanas were being served on Helen Roginiel, Dierdre Stowe, Marion Lane, and

Cynthia Gaillard, and Vicky Emery, in the first week of January 2006, did the counsel for

the defendants, now suddenly, <u>after five months of silence</u>, then send the plaintiff a letter

on January 4, 2006, demanding that she now immediately answer the previously negated

"Second Set of Interrogatories and Requests of Production" dated July 27, 2005, <u>which</u>

<u>Attorney James Craven had told the plaintiff five months earlier to completely ignore, and</u>

<u>permanently disregard.</u>

   The counsel for the defendants <u>knew</u> that the plaintiff had Subpeonaed Dr. Linton

Whitaker, Dr. Gary Price, Dr. Alan Brackup, Helen Roginiel, Dierdre Stowe, Marion

Lane, Vicky Emery and Cynthia Gaillard, because <u>each of those individuals not only had</u>

<u>direct and personal knowledge of the plaintiff and her medical records</u>, and <u>not only</u>

<u>would be able to authenticate certain portions of those medical records</u>, but each would

be able to <u>testify to the integrity of those medical records</u>, and <u>testify to their direct and</u>

<u>personal knowledge of the illegal withholding, illegal alteration, and illegal destruction of</u>

<u>those</u> medical records, and <u>testify to the involvement of the defendants and their counsel</u>

<u>in that  illegal withholding, illegal alteration, and illegal destruction of those medical</u>

<u>records.</u>

   The counsel for the defendants' sudden demand on January 4, 2006, for the

<u>previously negated</u> "Second Interrogatories and Requests for Production" dated July 27,

2005,  a sudden demand which arrived to the plaintiff by Fed Ex on January 5, 2006, and

which gave the plaintiff only until January 17, 2006 to comply, <u>was not only fraudulent in</u>

the nature of the demand which was now pretending that the plaintiff was five months late in responding to the previously negated "Second Interrogatories and Requests for Production" dated July 27, 2005, but was also an untimely demand, as that sudden demand was being made two months past the formal Discovery period which had ended on October 31, 2005.

The counsel for the defendants sudden demand, two months after Discovery had ended, now made it both impossible for the plaintiff to comply with any or all of the demands made in the 12 days time afforded by the counsel for the defendants' demand that the plaintiff's responses be now returned to them by January 17, 2006, as well as impossible for the plaintiff to file a timely Motion for Protection, or timely Objection, to cure the over-breadth and overall impropriety of most of the information being suddenly demanded, information that the defendants were not legally entitled to, and which the plaintiff had a legal right to protect, and which could not now be compiled in the twelve days provided even if the plaintiff had no Objections to such an unnecessary disclosure.

The plaintiff's opportunity to Object was now five months passed due to her reliance on Attorney James Craven's instruction to completely ignore and permanently disregard the "Second Interrogatories and Requests for Production" dated July 27, 2005, an explicit instruction given to her verbally over the telephone back on Tuesday, August 9, 2005.

The counsel for the defendants, among other things, were now instantly demanding access to all medical information regarding all of the plaintiffs complete medical history, relating to all parts of her body, and all kinds of physicians, going back

14

ten years, including gynecological, obstetrical, etc., and all medical history prior to that

period also, none of which was relevant or material to whether or not Dr. John Persing

obtained the plaintiff's consent for the operation on December 6, 2000, or whether the

plaintiff was harmed  during that operation, or whether Dr. John Persing deliberately lied

to the plaintiff prior to, and subsequent to that operation on December 6, 2000

     The plaintiff had already discussed her refusal to comply with that overbreadth

back on Friday, August 5, 2005, which is why Attorney James Craven was drafting an

entirely new set of Interrogatories in the first place.

     The counsel for the defendants, among other things, was now also instantly

demanding that the plaintiff state the exact nature, substance, and expected statements of

every single witnesses testimony, and the expected statements of any other person that

may or may not be called as a witness.

     The counsel for the defendants further demanded that the plaintiff deliver all

documents up to their offices 800 miles away for their examination and copying, in the

less than twelve days afforded for doing so, rather than the counsel for the defendants

themselves making any arrangements to meet in the middle or come to the plaintiff in

North Carolina.

     The defendants' Motion to Dismiss dated February 17, 2006, and supporting

Memorandum of Law fully admits that the defendants made only the one request of the

plaintiff to comply with the "Second Set of Interrogatories and Requests for Production"

dated July 27, 2005, in the five months that followed Attorney James Craven's

instructing the plaintiff on August 9, 2005, to completely ignore and permanently

disregard the "Second Set of Interrogatories and Requests for Production" dated
July 27, 2005, and <u>admits that the sole request made was not made until January 4, 2006,</u>
over <u>two full months after the deadline for Discovery had already passed on October 31,</u>
<u>2006.</u>

 The defendants' Motion to Dismiss and supporting Memorandum of Law failed to
offer or provided any <u>documentary proof or testimonial proof by Affidavit,</u> to support or
prove their allegation that other requests were made in the five months that passed
between August 9, 2005 and January 4, 2006, that the plaintiff made numerous denials of
those supposed numerous requests, or that the plaintiff made the supposed statements that
the defendants vaguely hint at and reference in the footnote of their Memorandum of
Law, <u>a hint and reference that is again unaccompanied by any documentary or testimonial</u>
<u>substantiation of those supposed statements.</u>

**8.** The defendants' complaint regarding the "Second Set of Interrogatories and
Requests for Production" dated July 27, 2005, a complaint not made until February 17,
2006, almost four months after the formal period for Discovery had ended, <u>was untimely</u>
<u>made,</u> and <u>is therefore waived,</u> <u>even if</u> all facts alleged by the counsel for the defendants
were not disputed by the plaintiff, and were taken as wholly true, as any complaints about
the scope of Discovery, or a parties failure to comply with Discovery, must be dealt with
promptly, and must be dealt with <u>before the formal period for Discovery has ended.</u>

**9.** The plaintiff <u>did in fact follow the Court's Order</u> dated February 1, 2006, <u>to the</u>

letter, in that <u>she did file with the Court, on February 14, 2006</u>, the actual previous

response that she previously sent to the counsel for the defendants relating to the "Second

Set of Interrogatories and Requests for Production" dated July 27, 2005, and <u>did re-send a</u>

<u>copy of that response to the counsel for the defendants,</u> by the deadline of February 14,

2006, as instructed to by the Court's Order dated February 1, 2006.

  The Court's Order dated February 1, 2006, <u>was not</u>, as the defendants contend,

ordering and demanding that the plaintiff now newly answer a set of Interrogatories and

Request for Production never answered before.

  The Court's Order dated February 1, 2006, <u>was merely ordering the plaintiff to</u>

<u>file her previous response already sent to the counsel for the defendants</u> relating to a

<u>previous set</u> of Interrogatories and Requests for Production sent to her back on July 27,

2005.

  The Court's Order dated February 1, 2006, <u>could not have been ordering the</u>

<u>Plaintiff to now newly answer a set of Interrogatories and Requests for Production not</u>

<u>answered before,</u> as to do so would be to <u>deny the plaintiff any opportunity to challenge</u>

<u>the over-breadth or content</u> of the Interrogatories and Requests for Production being

now demanded an answer to, as the Discovery period, and the opportunity for filing any

Motions for Protective Orders or Objections to the material being demanded had long

since passed nearly four months earlier, <u>and was not afforded by the terms of the Court's</u>

<u>February 1, 2006 Order which demanded immediate and total compliance in less than two</u>

<u>weeks or the case would be Dismissed.</u>

  Any new demand being made for the plaintiff to immediately file responses to a

new set of Interrogatories and Requests for Production never answered before, if Court
Ordered without affording the opportunity to challenge the legitimacy of what was being
demanded, would be <u>to deny the plaintiff her legal right and opportunity to defend her
civil rights to privacy</u> over information that was not pertinent to the issues to be decided
in this case, which would cause undue burden on the plaintiff to produce in the time
afforded, which were  being demanded solely for the purpose of harassment, and <u>which
the counsel for the defendants had no legal right to obtain in this present action, even if it
were being demanded before the formal Discovery period had ended</u>.

The Court, back on February 8, 2006 already stated its position on the timeliness
of Discovery, and the firmness of the Discovery Deadline, when it <u>granted the
defendants' numerous Motions for Protection for Dr. Gary Price, Helen Roginiel.,
Deirdre Stowe, Marion Lane, and Cynthia Gaillard, on the sole grounds that the deadline
for formal Discovery had passed nearly months earlier on October 31, 2006,</u> a grounds
not argued or claimed by the counsel for the defendants themselves.

In doing so, the Court itself ruled that <u>any new attempt</u> made by any of the parties
to demand compliance through the Discovery tools known as Requests for Admission,
Interrogatories, Requests for Production, or the holding of Depositions, made after
October 31, 2006, <u>could not now be legally demanded given that the period for formal
Discovery had ended on October 31, 2006</u>.

10.          This Court, back during the Telephone Status Conference held on June 23, 2005,
**<u>specifically Ordered</u> that <u>absolutely no informal letters were to be sent to the Court</u>**

**except those containing a simple request asking for a Status Conference if one was**
**needed, a request that should not contain any substantive information or argument,**
**or any allegation about the opposing party**.

The Court had issued that instruction during the Telephone Status Conference on
June 23, 2003, because it had just been served the plaintiff's "Motion for Relief Under
Rule 60(b)" dated June 23, 2005, in the hour prior to the Telephone Status Conference,
and just listened to the plaintiff's verbal complaints made during the Telephone Status
Conference about the counsel for the defendants bad acts committed during their
litigation of this case.

The plaintiff complained of the counsel for the defendants bad habit of <u>informally</u>
<u>litigating their interests of their clients off the record through informal letters sent to the</u>
<u>Court instead of filing formal</u> Motions and supporting Memorandum of Law, <u>letters</u>
<u>which were unaccompanied by any Certifications, letters which were not immediately</u>
<u>filed or docketed, or not filed or docketed at all, letters which never afforded the plaintiff</u>
<u>any opportunity to respond before the defendants were granted the relief sought in those</u>
<u>letters.</u>

The plaintiff had further complained of the counsel for the defendants failing to
serve their Motions, signing false Certifications, and of the <u>counsel for the defendants</u>
<u>outright refusal to disclose the content of their Motions which were not served on the</u>
<u>plaintiff,</u> when the plaintiff learned of their existence but was unable to view them on the
Internet and so telephoned the counsel for the defendants asking for them to read the
Motion over the telephone to the plaintiff so that she could timely respond.

The plaintiff had further complained of of Attorney Kevin Budge falsely promising to Withdraw a particular Motion that they admittedly never served on the plaintiff, a false promise that Attorney Kevin Budge left on the plaintiffs voicemail, and that the plaintiff had relied on to her detriment as no Withdrawal was in fact then ever made and that particular Motion was immediately granted.

The Court, before the Telephone Status Conference of June 23, 2005 even began, was already aware of some of the plaintiffs complaints before it received the plaintiffs' "Motion for Relief Under Rule 60(b)" filed earlier that same day of June 22, 2005,  as the plaintiff had filed a Motion six months earlier complaining about the behavior of the counsel for the defendants, a behavior that the lead counsel for the defendants, Attorney Penny Seaman, had herself, six months earlier, already admitted to in a private letter sent to the Court back on December 28, 2004, a letter absent any attached Certification, and which was never filed by the Court or by the Clerk's Office, and which still does not appear anywhere on the Docket.

The lead counsel for the defendants, Attorney Penny Seaman, had herself,  in her private letter sent to the Court back on December 28, 2004, a full six months before the Telephone Status Conference was held on June 22, 2003, fully admitted to the counsel for the defendants not serving their Motions on the plaintiff as required, and to Attorney Kevin Budge's leaving a false promise of Withdrawal on the plaintiff's voicemail.

Attorney Penny Seaman, in her private letter sent to the Court, fully admitted that the counsel for the defendants had committed the activities which the plaintiff

complained of, activities which Attorney Penny Seaman called "mistakes", but which, according to Attorney Penny Seaman's private letter, were "mistakes" that had not prejudiced the plaintiff or her case against the defendants.

Attorney Penny Seaman, in her private letter sent to the Court on December 28, 2004, promised that the counsel for the defendants were going to try to do better in the future, and make less "mistakes".

The Court having received Attorney Penny Seaman's Letter six months prior to the Telephone Status Conference of June 23, 2005, was therefore already aware of the some of the plaintiffs complaints named above, when it received the plaintiffs' "Motion for Relief Under Rule 60(b)" filed on June 23, 2005, in the hour just before the Telephone Status Conference began, a "Motion for Relief Under Rule 60(b) which was also at the same moment served on Attorney Penny Seaman that same day at Wiggin & Dana, just before the Telephone Status Conference began.

The plaintiff's "Motion for Relief Under Rule 60(b)" filed on June 23, 2006, was asking for remedy for the wrongs committed by the counsel for the defendants, and asking for an Evidentiary Hearing by which to bring forth evidence of their deliberate wrongs which had caused the plaintiff to suffer unequal access and inadequate process, and which had resulted in the plaintiff suffering a chilling and infringement of her Due Process Rights, and a substantive loss to the manner in which she would have prosecuted her case.

The plaintiff's "Motion for Relief Under Rule 60(b)" dated June 23, 2005, was 128 pages long, with an attached 28 page Memorandum of Law, and numerous Exhibits

which provided <u>full and complete documentary proof of the acts committed.</u>

The plaintiff had argued during the Telephone Status Conference, as well as in her "Motion for Relief Under Rule 60(b) that if the situation were not dealt with that the counsel for the defendants would continue to commit similar wrongs if not checked or penalized, and would continue to misuse and abuse the Process to the plaintiff's detriment.

The plaintiff argued that she was legally entitled to enjoy the rights she was guaranteed under the Federal Rules of Civil Procedure, the Local Civil District Rules, and the Due Process Clause of the Fourteenth Amendment, and legally entitled to a process that did not cause her unequal burden, and an unequal opportunity for success in this suit.

The Court, during the Telephone Status Conference on June 23, 2005, having only just been served the plaintiff's "Motion for Relief Under Rule 60(b)" just prior to the start of the Telephone Status Conference, and not yet having any opportunity to read or fully address all of the plaintiffs' allegations and arguments made in her "Motion for Relief Under Rule 60(b)" which had just been filed, <u>assured the plaintiff during the Telephone Status Conference, with the counsel for the defendants present on the telephone line, that any future similar behavior would not be tolerated by the Court,</u> and that if that behavior had in fact been occurring, it <u>would cease, and would not now occur in the future.</u>

The Court's assurance  was offered to the plaintiff <u>as a result of the</u> counsel for the defendants' <u>failure to deny the plaintiffs allegations or make adequate defense to those allegations,</u> and as a result of <u>the admissions made by Attorney Penny Seaman in the letter she had sent to the Court six month earlier, on January 28, 2005,</u> a behavior she

simply described as "mistakes", which letter was discussed during the Telephone Status Conference on June 23, 2005.

Though the plaintiff's "Motion for Relief Under Rule 60(b)" was served on the counsel for the defendants just prior to the Telephone Status Conference on June 23, 2005, and the counsel for defendants during the telephone conference admitted to receiving it by courier before the Hearing, the counsel for the defendants never filed any Objection or response to the allegations made by the plaintiff in her " Motion for Relief under Rule 60(b)", a failure to deny, and silence which was a legal admission to that which was alleged against them.

Three weeks later, on July 12, 2005, the Court denied the plaintiff's "Motion for Relief Under Rule 60(b)", despite the lack of response from the counsel for the defendants to the allegations made and supported by documentary evidence attached as Exhibits to that 128 page Motion, denied her request for an Evidentiary Hearing to bring forth Evidence of the counsel for the defendants bad acts which had caused her to suffer unequal access and inadequate process, acts which the counsel for the defendants never denied, and never filed any Objection or any other Motion denying those acts.

Attorney Kevin Budge's Letter sent to the Court nine months later, on January 27, 2006, again absent any Certification, which resulted in the Order dated February 1, 2006, being written on its face on February 1, 2006, a letter and an Order which the defendants now seek to further profit from by the filing of their present Motion to Dismiss, evidences that the counsel for the defendants ignored the Court's admonition that it would not tolerate any further informal letters being sent, or any further behavior that would result in

23

unequal access or unequal or inadequate process being afforded to the pro se plaintiff, and evidences that the assurance given to the plaintiff on June 23, 2006 was inadequate.

The Court's Order regarding informal letters superceded its later Order dated February 1, 2006, and negates the legitimacy of the access that was afforded, the process that occurred through the use of Attorney Kevin Budge's Letter dated January 27, 2006, and the Order dated February 1, 2006 that resulted from that unequal access and inappropriate process.

11.         Attorney Kevin Budge, in his letter dated January 27, 2006, used the plaintiff's being a pro se as an excuse for his wanting to address all of the counsel for the defendants Discovery Issues and Discovery Disputes in a Status Conference rather than by the filing of any formal Motions, but the fact of the plaintiff's being a pro se, rather than relieving the counsel for the defendants of their duty to file formal Motions and Memorandum of Law with attached Exhibits and required Affidavit, actually heightens the counsel for the defendants' duty to strictly adhere to all boundaries set by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of Connecticut, and the Due Process Clause of the Fourteenth Amendment, in order to ensure that no unjust advantages would be taken of a pro se, and that a pro se be given the full and adequate opportunity to prepare and respond to all arguments being made, an in order that no professional consideration be afforded to attorneys over the legal rights and entitlements of the pro se plaintiff standing in like position to the defendants, and their counsel, in a court of law.

12.     If the plaintiff, a pro se, had written the Court a simple and private letter, unaccompanied by any Certification, complaining of numerous Discovery Issues and Discovery Disputes, and alleging that the defendants failed to answer the plaintiffs Interrogatories and Requests for Production, were late in responding to the plaintiffs Motions for Protection, and appeared to be unable to obtain a Medical Expert, requiring the Court to Narrow the Issues as a result, <u>the Court would have immediately informed the plaintiff that it was improper for her to attempt to litigate her Discovery Issues and Discovery Disputes through an informal and privately sent letter</u> to the Court, a letter unaccompanied by any Certification, and unaccompanied by any required formal Motion, supporting Memorandum of Law, or attached Exhibits and Affidavit.

The Court would have informed the pro se plaintiff that her being a pro se does not relieve her of the requirement to <u>both file and serve formal Motions, and supporting Memorandum of Law,</u> with attached Exhibits and Affidavits addressing any of her complaints, <u>with the Clerk's Office and on opposing counsel,</u> as required by the Federal Rules of Civil Procedure, and the Local Civil Rules of the District of Connecticut, and that if the pro se plaintiff was not up to the task, that she should hire an attorney to do so for her, as the <u>District Court is not permitted to resolve disputes between parties through private one sided communications which afford one party unequal and private access to the Court, and which result in inadequate and unequal process to be suffered by the opposition.</u>

25

## **CONCLUSION**

The documentary items identified on page 5 of this Objection as letters **a)** through **g)**, and the factual and legal defenses outlined above in numbers **1** through **12,** which are argued with appropriate specificity in the plaintiff's supporting Memorandum of Law, and proved by the plaintiff's attached Exhibits, and attached sworn Affidavit of Hadley Macpherson, legally require, and legally demand, that the defendants' Motion to Dismiss dated February 17, 2006, be Denied, and that it be Denied with Prejudice as to the raising of any further complaints involving or relating to the defendants "Second Interrogatories and Requests for Production" dated July 27, 2005.

**Wherefore,** the plaintiff respectfully requests that the defendants' Motion to Dismiss dated February 17, 2006, be Denied, and that it be Denied with Prejudice as to the raising of any further complaints involving or relating to the defendants "Second Interrogatories and Requests for Production" dated July 27, 2005.

Respectfully Submitted,

Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC  28270
(704) 675-5252

26

## CERTIFICATION

This is to certify that a copy of the foregoing has been delivered by courier this day of April 18, 2006, to Attorney Penny Seaman, of Wiggins and Dana, 265 Church Street, P.O. Box 1832, New Haven Connecticut, 06508 - 1832.

Respectfully,

*Hadley Macpherson*

Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC  28270
(704) 675 - 5252