<u>Only after the plaintiff had served her Subpeonas</u> on Dr. Linton Whitaker, Dr. Gary Price, and on Dr. Brackup, in the last week of December 2005, and when the Subpeanas were being served on Helen Roginiel, Dierdre Stowe, Marion Lane, and Cynthia Gaillard, and Vicky Emery, in the first week of January 2006, did the counsel for the defendants, now suddenly, <u>after five months of silence</u>, then send the plaintiff a letter on January 4, 2006, demanding that she now immediately answer the previously negated "Second Set of Interrogatories and Requests of Production" dated July 27, 2005, <u>which Attorney James Craven had told the plaintiff five months earlier to completely ignore, and permanently disregard.</u>

The counsel for the defendants <u>knew</u> that the plaintiff had Subpeonaed Dr. Linton Whitaker, Dr. Gary Price, Dr. Alan Brackup, Helen Roginiel, Dierdre Stowe, Marion Lane, Vicky Emery and Cynthia Gaillard, because <u>each of those individuals not only had direct and personal knowledge of the plaintiff and her medical records</u>, and <u>not only would be able to authenticate certain portions of those medical records</u>, but each would be able to <u>testify to the integrity of those medical records</u>, and <u>testify to their direct and personal knowledge of the illegal withholding, illegal alteration, and illegal destruction of those medical records</u>, and <u>testify to the involvement of the defendants and their counsel in that illegal withholding, illegal alteration, and illegal destruction of those medical records.</u>

The counsel for the defendants' sudden demand on January 4, 2006, for the <u>previously negated</u> "Second Interrogatories and Requests for Production" dated July 27, 2005, a sudden demand which arrived to the plaintiff by Fed Ex on January 5, 2006, and

13

which gave the plaintiff only until January 17, 2006 to comply, <u>was not only fraudulent in the nature of the demand</u> which was now pretending that the plaintiff was five months late in responding to the previously negated "Second Interrogatories and Requests for Production" dated July 27, 2005, <u>but was also an untimely demand</u>, as that sudden demand was being made <u>two months past the formal Discovery period which had ended on October 31, 2005</u>.

The counsel for the defendants sudden demand, <u>two months after Discovery had ended</u>, now made it both impossible for the plaintiff to comply with any or all of the demands made in the 12 days time afforded by the counsel for the defendants' demand that the plaintiff's responses be now returned to them by January 17, 2006, as well as <u>impossible for the plaintiff to file a timely Motion for Protection, or timely Objection, to cure the over-breadth and overall impropriety of most of the information being suddenly demanded,</u> information that the defendants <u>were not legally entitled to</u>, and which the plaintiff had a <u>legal right to protect,</u> and which could not now be compiled in the twelve days provided even if the plaintiff had no Objections to such an unnecessary disclosure.

The plaintiff's opportunity to Object was now five months past due to her reliance on Attorney James Craven's instruction to completely ignore and permanently disregard the "Second Interrogatories and Requests for Production" dated July 27, 2005, an explicit instruction given to her verbally over the telephone back on Tuesday, August 9, 2005.

The counsel for the defendants, among other things, were now instantly demanding access to all medical information regarding all of the plaintiffs complete

14

medical history, relating to all parts of her body, and all kinds of physicians, going back ten years, including gynecological, obstetrical, etc., and all medical history prior to that period also, none of which was relevant or material to whether or not Dr. John Persing obtained the plaintiff's consent for the facial plastic surgery operation on December 6, 2000, or whether the plaintiff's face and scalp was harmed during that operation, or whether Dr. John Persing deliberately lied to the plaintiff prior to, and subsequent to that facial plastic surgery operation on December 6, 2000.

The plaintiff had already discussed her refusal to comply with that overbreadth back on Friday, August 5, 2005, which is why Attorney James Craven was drafting an entirely new set of Interrogatories in the first place.

The counsel for the defendants, among other things, was now also instantly demanding that the plaintiff state the exact nature, substance, and expected statements of every single witnesses testimony, and the expected statements of any other person that may or may not be called as a witness.

The counsel for the defendants further demanded that the plaintiff deliver all documents up to their offices 800 miles away for their examination and copying, in the less than twelve days afforded for doing so, rather than the counsel for the defendants themselves making any arrangements to meet in the middle or come to the plaintiff in North Carolina.

The defendants' Motion to Dismiss dated February 17, 2006, and supporting Memorandum of Law <u>fully admits</u> that the defendants <u>made only the one request of the plaintiff to comply</u> with the "Second Set of Interrogatories and Requests for Production"

15

dated July 27, 2005, <u>in the five months that followed Attorney James Craven's instructing the plaintiff on August 9, 2005, to completely ignore and permanently disregard</u> the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, and <u>admits that the sole request made was not made until January 4, 2006,</u> over <u>two full months after the deadline for Discovery had already passed on October 31, 2005.</u>

The defendants' Motion to Dismiss and supporting Memorandum of Law failed to offer or provide any <u>documentary proof, or testimonial proof by Affidavit,</u> to support or prove their allegation that other requests were made in the five months that passed between August 9, 2005 and January 4, 2006, that the plaintiff made numerous denials of those supposed numerous requests, or that the plaintiff made the supposed statements that the defendants vaguely hint at and reference in the footnote of their Memorandum of Law, <u>a hint and reference that is again unaccompanied by any documentary or testimonial substantiation of those supposed statements.</u>

8.     The defendants' complaint regarding the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, a complaint not made until February 17, 2006, almost four months after the formal period for Discovery had ended, <u>was untimely made,</u> and <u>is therefore waived, even if</u> all facts alleged by the counsel for the defendants were not disputed by the plaintiff, and were taken as wholly true, as any complaints about the scope of Discovery, or a parties failure to comply with Discovery, must be dealt with promptly, and must be dealt with <u>before the formal period for Discovery has ended.</u>

9.  The plaintiff <u>did in fact follow the Court's Order</u> dated February 1, 2006, <u>to the letter</u>, in that <u>she did file with the Court, on February 14, 2006</u>, the actual previous response that she previously sent to the counsel for the defendants relating to the "Second Set of Interrogatories and Requests for Production" dated July 27, 2005, and <u>did re-send a copy of that response to the counsel for the defendants</u>, by the deadline of February 14, 2006, as instructed to by the Court's Order dated February 1, 2006.

The Court's Order dated February 1, 2006, <u>was not</u>, as the defendants contend, ordering and demanding that the plaintiff now newly answer a set of Interrogatories and Request for Production never answered before.

The Court's Order dated February 1, 2006, <u>was merely ordering the plaintiff to file her previous response already sent to the counsel for the defendants</u> relating to a <u>previous set</u> of Interrogatories and Requests for Production sent to her back on July 27, 2005.

The Court's Order dated February 1, 2006, <u>could not have been ordering the Plaintiff to now newly answer a set of Interrogatories and Requests for Production not answered before</u>, as to do so would be to <u>deny the plaintiff any opportunity to challenge the over-breadth or content</u> of the Interrogatories and Requests for Production being now demanded an answer to, as the Discovery period, and the opportunity for filing any Motions for Protective Orders or Objections to the material being demanded had long since passed nearly four months earlier, <u>and was not afforded by the terms of the Court's February 1, 2006 Order which demanded immediate and total compliance in less than two weeks or the case would be Dismissed.</u>

17

Any new demand being made for the plaintiff to immediately file responses to a new set of Interrogatories and Requests for Production never answered before, if Court Ordered without affording the opportunity to challenge the legitimacy of what was being demanded, would be <u>to deny the plaintiff her legal right and opportunity to defend her civil rights to privacy</u> over information that was not pertinent to the issues to be decided in this case, which would cause undue burden on the plaintiff to produce in the time afforded, which were being demanded solely for the purpose of harassment, and <u>which the counsel for the defendants had no legal right to obtain in this present action, even if it were being demanded before the formal Discovery period had ended</u>.

The Court, back on February 8, 2006 already stated its position on the timeliness of Discovery, and the firmness of the Discovery Deadline, when it <u>granted the defendants' numerous Motions for Protection for Dr. Gary Price, Helen Roginiel., Deirdre Stowe, Marion Lane, and Cynthia Gaillard, on the sole grounds that the deadline for formal Discovery had passed nearly four months earlier on October 31, 2005</u>, a grounds not argued or claimed by the counsel for the defendants themselves.

In doing so, the Court itself ruled on February 8, 2006, that <u>any new attempt</u> made by any of the parties to demand compliance through the Discovery tools known as Requests for Admission, Interrogatories, Requests for Production, or the holding of Depositions, made after October 31, 2006, <u>could not now be legally demanded given that the period for formal Discovery had ended on October 31, 2006</u>.

10.      This Court, back during the Telephone Status Conference held on June 23, 2005,

specifically Ordered that <u>**absolutely no informal letters were to be sent to the Court except those containing a simple request asking for a Status Conference if one was needed, a request that should not contain any substantive information or argument, or any allegation about the opposing party**</u>.

The Court had issued that instruction during the Telephone Status Conference on June 23, 2003, because it had just been served the plaintiff's "Motion for Relief Under Rule 60(b)" dated June 23, 2005, in the hour prior to the Telephone Status Conference, and just listened to the plaintiff's verbal complaints made during the Telephone Status Conference about the counsel for the defendants bad acts committed during their litigation of this case.

The plaintiff complained of the counsel for the defendants habit of <u>informally litigating the interests of their clients through informal letters sent to the Court instead of through formal Motions and supporting Memorandum of Law, letters which were unaccompanied by any Certifications, letters which were not immediately filed or docketed, or not filed at all, letters which never afforded the plaintiff any opportunity to respond before the defendants were granted the relief sought in those letters.</u>

The plaintiff had further complained of the counsel for the defendants failing to serve their Motions, signing false Certifications, and of the <u>counsel for the defendants outright refusal to disclose the content of their Motions which were not served on the plaintiff</u> when the plaintiff learned of their existence but was unable to view them on the Internet, and so had telephoned the counsel for the defendants asking for them to read the Motion over the telephone to the plaintiff so that she could timely respond.

19

The plaintiff had further complained of <u>of Attorney Kevin Budge falsely promising to Withdraw a particular Motion that they admittedly never served on the plaintiff</u>, a false promise that Attorney Kevin Budge <u>left on the plaintiffs voicemail</u>, and that the plaintiff had <u>relied on to her detriment as no Withdrawal was in fact then ever made</u> and that particular Motion was <u>immediately granted</u>.

The Court, before the Telephone Status Conference of June 23, 2005 even began, was already aware of some of the plaintiffs complaints before it received the plaintiffs' "Motion for Relief Under Rule 60(b)" filed earlier that same day of June 23, 2005, as the plaintiff had filed a Motion six months earlier complaining about the behavior of the counsel for the defendants, a behavior that the lead counsel for the defendants, Attorney Penny Seaman, had herself, six months earlier, <u>already admitted to in a private letter sent to the Court back on December 28, 2004</u>, a letter <u>absent any attached Certification</u>, and which <u>was never filed by the Court or by the Clerk's Office</u>, and <u>which still does not appear anywhere on the Docket</u>.

The lead counsel for the defendants, Attorney Penny Seaman, had herself, in her private letter sent to the Court back on December 28, 2004, a full <u>six months before</u> the Telephone Status Conference was held on June 23, 2005, fully admitted <u>to the counsel for the defendants' not serving their Motions on the plaintiff as required, and to Attorney Kevin Budge's leaving a false promise of Withdrawal on the plaintiff's voicemail.</u>

Attorney Penny Seaman, in her private letter sent to the Court, <u>fully admitted that the counsel for the defendants had</u> committed <u>the activities which the plaintiff complained of</u>, activities which Attorney Penny Seaman called "mistakes", but which,

20

according to Attorney Penny Seaman's private letter, were "mistakes" that had not prejudiced the plaintiff or her case against the defendants.

Attorney Penny Seaman, in her private letter sent to the Court on December 28, 2004, promised that the counsel for the defendants were going to try to do better in the future, and make less "mistakes".

The Court having received Attorney Penny Seaman's Letter six months prior to the Telephone Status Conference of June 23, 2005, was therefore already aware of the some of the plaintiffs complaints named above, when it received the plaintiffs' "Motion for Relief Under Rule 60(b)" filed on June 23, 2005, in the hour just before the Telephone Status Conference began, a "Motion for Relief Under Rule 60(b) which was also at the same moment served on Attorney Penny Seaman that same day at Wiggin & Dana, just before the Telephone Status Conference began.

The plaintiff's "Motion for Relief Under Rule 60(b)" filed on June 23, 2005, was asking for remedy for the wrongs committed by the counsel for the defendants, and asking for an Evidentiary Hearing by which to bring forth evidence of their deliberate wrongs <u>which had caused the plaintiff to suffer unequal access and inadequate process</u>, and <u>which had resulted in the plaintiff suffering a chilling and infringement of her Due Process Rights</u>, and a substantive loss to the manner in which she prosecuted her case.

The plaintiff's "Motion for Relief Under Rule 60(b)" dated June 23, 2005, was <u>128 pages</u> long, with an <u>attached 28 page Memorandum of Law, and numerous Exhibits</u> which provided <u>full and complete documentary proof of the acts committed.</u>

The plaintiff had argued during the Telephone Status Conference, as well as in her

21

"Motion for Relief Under Rule 60(b)" dated June 23, 2005, that if the situation were not dealt with that the counsel for the defendants would continue to commit similar wrongs if not checked or penalized, and would continue to misuse and abuse the Process to the plaintiff's detriment.

The plaintiff argued that she was legally entitled to enjoy the rights she was guaranteed under the Federal Rules of Civil Procedure, the Local Civil District Rules, and the Due Process Clause of the Fourteenth Amendment, and legally entitled to a process that did not cause her unequal burden, and an unequal opportunity for success in this suit.

The Court, during the Telephone Status Conference on June 23, 2005, having only just been served the plaintiff's "Motion for Relief Under Rule 60(b)" just prior to the start of the Telephone Status Conference, and not yet having any opportunity to read or fully address all of the plaintiffs' allegations and arguments made in her "Motion for Relief Under Rule 60(b)" dated June 23, 2005, which had just been filed, <u>assured the plaintiff during the Telephone Status Conference, with the counsel for the defendants present on the telephone line, that any future similar behavior would not be tolerated by the Court</u>, and that if that behavior had in fact been occurring, it <u>would cease, and would not now occur in the future.</u>

The Court's assurance was offered to the plaintiff <u>as a result of the</u> counsel for the defendants' <u>failure to deny the plaintiffs allegations or make adequate defense to those allegations</u>, and as a result of <u>the admissions made by Attorney Penny Seaman in the letter she had sent to the Court six month earlier, on December 28, 2004</u>, a behavior she simply described as "mistakes", which letter was discussed during the Telephone

22

Status Conference on June 23, 2005.

Though the plaintiff's "Motion for Relief Under Rule 60(b)" dated June 23, 2005 was served on the counsel for the defendants just prior to the Telephone Status Conference on June 23, 2005, and the counsel for defendants during the telephone conference admitted to receiving it by courier before the Hearing, the counsel for the defendants <u>never filed any Objection or response to the allegations made by the plaintiff in her " Motion for Relief under Rule 60(b)"</u> dated June 23, 2005, a failure to deny, and silence <u>which was a legal admission to that which was alleged against them</u>.

Three weeks later, on July 12, 2005, the Court denied the plaintiff's "Motion for Relief Under Rule 60(b)" dated June 23, 2005 <u>despite the lack of response from the counsel for the defendants to the allegations made, allegations supported by documentary evidence attached as Exhibits to that 128 page Motion</u>, and denied the plaintiff's request for an Evidentiary Hearing to bring forth Evidence of the counsel for the defendants bad acts which had caused her to suffer unequal access and inadequate process, <u>bad acts which the counsel for the defendants never denied, and never filed any Objection or any other Motion denying those bad acts</u>.

Attorney Kevin Budge's Letter sent to the Court nine months later, on January 27, 2006, again absent any Certification, which resulted in the Order dated February 1, 2006, being written on its face on February 1, 2006, <u>a letter and an Order which the defendants now seek to further profit from by the filing of their present Motion to Dismiss</u>, evidences that the counsel for the defendants <u>ignored the Court's admonition that it would not tolerate any further informal letters being sent</u>, or any further behavior that would result in

23

unequal access or unequal or inadequate process being afforded to the pro se plaintiff, and evidences <u>that the assurance given to the plaintiff on June 23, 2006 was inadequate</u>.

The Court's Oral Order given during the Telephone Status Conference on June 23, 2005, regarding the sending and content of informal letters, superceded its later Order dated February 1, 2006, issued in response to Attorney Kevin Budge's January 27, 2006 Letter to the Court, and therefore not only negates the legitimacy of the access that was afforded to the counsel for the defendants, and the process that occurred through the use of Attorney Kevin Budge's Letter dated January 27, 2006, but also negates the Order dated February 1, 2006 that resulted from that unequal access and inappropriate process.

11.   Attorney Kevin Budge, in his letter dated January 27, 2006, used the plaintiff's being a pro se as an excuse for his wanting to address all of the counsel for the defendants Discovery Issues and Discovery Disputes in a Status Conference rather than by the filing of any formal Motions, but the fact of the plaintiff's being a pro se, <u>rather than relieving</u> the counsel for the defendants of their duty to file formal Motions and Memorandum of Law with attached Exhibits and required Affidavit, <u>actually heightens the counsel for the defendants' duty to strictly adhere to all boundaries set by the Federal Rules of Civil Procedure, the Local Civil Rules of the District of Connecticut, and the Due Process Clause of the Fourteenth Amendment</u>, in order <u>to ensure that no unjust advantages would be taken of a pro se</u>, and that a pro se <u>be given the full and adequate opportunity to prepare and respond to all arguments being made</u>, an in order that <u>no professional consideration be afforded to attorneys over the legal rights and entitlements of the pro se</u>

24

<u>plaintiff standing in like position to the defendants, and their counsel, in a court of law</u>.

12.      If the plaintiff, a pro se, had written the Court a simple and private letter, unaccompanied by any Certification, complaining of numerous Discovery Issues and Discovery Disputes, and alleging that the defendants failed to answer the plaintiffs Interrogatories and Requests for Production, were late in responding to the plaintiffs Motions for Protection, and appeared to be unable to obtain a Medical Expert, requiring the Court to Narrow the Issues as a result, <u>the Court would have immediately informed the plaintiff that it was improper for her to attempt to litigate her Discovery Issues and Discovery Disputes through an informal and privately sent letter</u> to the Court, a letter unaccompanied by any Certification, and unaccompanied by any required formal Motion, supporting Memorandum of Law, or attached Exhibits and Affidavit.

The Court would have informed the pro se plaintiff that her being a pro se does not relieve her of the requirement to <u>both file and serve formal Motions, and supporting Memorandum of Law,</u> with attached Exhibits and Affidavits addressing any of her complaints, <u>with the Clerk's Office and on opposing counsel</u>, as required by the Federal Rules of Civil Procedure, and the Local Civil Rules of the District of Connecticut, and that if the pro se plaintiff was not up to the task, that she should hire an attorney to do so for her, as the <u>District Court is not permitted to resolve disputes between parties through private one sided communications which afford one party unequal and private access to the Court, and which result in inadequate and unequal process to be suffered by the opposition</u>.

## **CONCLUSION**

The documentary items identified on page 5 of this Objection as letters **a)** through **g)**, and the factual and legal defenses outlined above in numbers **1** through **12**, which are argued with appropriate specificity in the plaintiff's supporting Memorandum of Law, and proved by the plaintiff's attached Exhibits, and attached sworn Affidavit of Hadley Macpherson, legally require that the defendants' Motion to Dismiss dated February 17, 2006, be Denied, and that it be Denied with Prejudice as to the raising of any further complaints involving or relating to the defendants "Second Interrogatories and Requests for Production" dated July 27, 2005.

**Wherefore**, the plaintiff respectfully requests that the defendants' Motion to Dismiss dated February 17, 2006, be Denied, and that it be Denied with Prejudice as to the raising of any further complaints involving or relating to the defendants "Second Interrogatories and Requests for Production" dated July 27, 2005.

Respectfully Submitted,

*Hadley Macpherson*
Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC 28270
(704) 675-5252

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been delivered/sent this day of April 19, 2006, to Attorney Penny Seaman, of Wiggins and Dana, 265 Church Street, P.O. Box 1832, New Haven Connecticut, 06508 - 1832.

Respectfully,

*Hadley Macpherson*
Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC 28270
(704) 675 - 5252