UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LISA EGAN (a/k/a HADLEY MACPHERSON), : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> YALE MEDICAL GROUP, YALE-NEW : <br> HAVEN HOSPITAL, YALE PLASTIC : <br> SURGERY, YALE UNIVERSITY : <br> and DR. JOHN PERSING, : <br> : <br> **Defendants.** : <br> : | CASE NO. [illegible stamp] <br> <br> JULY 5, 2006 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a medical malpractice action arising out of cosmetic surgery that Dr. John Persing performed on plaintiff at Yale-New Haven Hospital on December 6, 2000. The essence of plaintiff's claim appears to be that she did not consent to the type of incision that Dr. Persing used for the Brow lift and that she did not consent to the surgical technique used for the Rhinoplasty. While the plaintiff argues that she has asserted a potpourri of torts from trespass to an undefined "intentional tort" in her complaint, the only legally cognizable claims that she properly pled are medical malpractice and lack of informed consent. With respect to these claims, her medical malpractice claim cannot survive as she has no expert to opine that Dr. Persing (or any other defendant for that matter) deviated from the applicable standard of care. Thus, at the end of the day, plaintiff is left with a single claim – lack of informed consent – against Dr. Persing and Yale University.

## STATEMENT OF UNDISPUTED FACTS[1]

It is undisputed that Dr. John Persing obtained plaintiff's consent to perform four cosmetic surgical procedures on her face, specifically, Blepharoplasty, Septoplasty, Rhinoplasty and "Brow Lift"[2]. *See* January 24, 2004 Amended Complaint, ¶¶ 62-64, 72, 118; November 27, 2000 Consent Form, attached as **Exhibit B**.[3] Subsequently, on December 6, 2000, Dr. Persing performed these procedures on plaintiff at Yale-New Haven Hospital. *See* December 6, 2000 Operation Report, attached as **Exhibit C**.[4] There were no complications during the surgery and plaintiff was discharged from the Hospital later the same day. *Id.*

Two years later, plaintiff filed a 228 paragraph two-count Amended Complaint against Dr. Persing, Yale University, Yale-New Haven Hospital, Yale Medical Group and Yale Plastic Surgery. *See* Amended Complaint. On its face, the Amended Complaint appears to allege claims for both medical malpractice and lack of informed consent – both claims are intermingled in each of the two counts. In Count One, plaintiff appears to allege that she did not consent to the "zigzagged" scar that was made for the "Brow Lift". *See* Amended Complaint, Count One. In Count Two, plaintiff seems to assert that she did not consent to the surgical technique that was employed for the Rhinoplasty. *Id.* at Count Two. In addition, plaintiff is of the opinion that her Amended Complaint alleges much more that just the claims for medical malpractice and lack of informed consent. Specifically, at a hearing before the Court on June 19, 2006, plaintiff identified 9 different causes of action that she believes she has asserted in her Amended Complaint, specifically identifying the following: medical malpractice, lack of informed consent, fraud, "intentional tort", intentional infliction of emotional distress, recklessness, assault

---

[1] *See* Defendants' Local Rule 56(a)1 Statement, attached hereto as **Exhibit A**.
[2] Also intermittently referred to as a forehead lift throughout plaintiff's complaint.
[3] The Consent Form, **Exhibit B**, has been filed under seal.
[4] The Operation Report, **Exhibit C**, has been filed under seal.

2

and battery and trespass.[5] Nevertheless, the only legally cognizable claim that plaintiff has adequately pled at this point in time in her Amended Complaint is one for lack of informed consent against Dr. Persing and Yale University. The short comings of the remaining claims will be examined in turn.

First, with respect to plaintiff's medical malpractice claims, she has no expert witness to testify that Dr. Persing or any other defendant deviated from the standard of care during the December 6, 2000 surgery. On November 28, 2005, she filed her initial Disclosure of Experts pursuant to rule 26(a)(2). *See* **Exhibit D**. In this disclosure, plaintiff disclosed Dr. Persing and four out-of-state plastic surgeons as treating expert witnesses. *Id.* Two days later, on November 30, 2005, plaintiff filed an Amended Disclosure of Expert Witnesses, which lists Linton Whitaker, MD, of Philadelphia, Pennsylvania, and Gregory Borah, MD, of New Brunswick, New Jersey, as the only expert witnesses who will testify on her behalf that Dr. Persing deviated from the standard of care. *See* Plaintiff's Amended Disclosure of Expert Witnesses Under Rule 26(a)(2) attached as **Exhibit E**. None of these experts will testify at trial for plaintiff.

On January 6, 2006, Dr. Borah wrote a letter to plaintiff, with a copy to defendants' counsel, stating that he was "unable to testify on [plaintiff's] behalf because of a conflict of interest." *See* **Exhibit F**. Drs. Price and Brackup, although only disclosed as treating physicians, each refused to provide plaintiff with testimony of any sort. *See* **Exhibit G** (Affidavit of Gary J. Price, M.D., filed as Exhibit 2 to Dr. Price's Motion to Quash and for Protective Order, dated January 9, 2006) and **Exhibit H** (letter from Dr. Brackup's counsel, filed as Exhibit 4 to Dr. Brackup's motion to quash, dated January 9, 2006). Moreover, at the June 19, 2006 hearing, plaintiff testified that each of the physicians she disclosed in this case has refused to testify on

---

[5] Pursuant to her June 19, 2006 testimony, this is an exhaustive list of all the claims that she believes she has pled in her Amended Complaint.

3

her behalf and will not testify at trial. *See* Transcript of June, 19, 2006 hearing on Motion to Dismiss and other pending motions.[6] Further, the only experts properly disclosed to testify at trial, Drs. Persing and Grant, will opine that Dr. Persing met the standard of care in all aspects of his care and treatment of plaintiff in this case. *See* **Exhibit I** (Affidavit of Dr. Persing, M.D. at ¶ 7) and **Exhibit J** (Expert Disclosure of Dr. Grant and attached report). Therefore, because plaintiff has no expert to testify on her behalf, she cannot carry her burden of proof with respect to any medical malpractice claim that she has attempted to assert.

Second, plaintiff has asserted a lack of informed consent claim against Yale-New Haven Hospital. However, at all times relevant to the allegations of plaintiff's Amended Complaint, Dr. Persing was not an employee of Yale-New Haven Hospital. *See* **Exhibit I** (Affidavit of Dr. Persing at ¶¶3-6), **Exhibit K** (Affidavit of Alisa Fay at ¶¶3 and 4)). Rather, at all times relevant to the care and treatment of plaintiff, Dr. Persing was an employee of Yale University. *See* **Exhibit I** (Affidavit of Dr. Persing at ¶5. Neither Yale Medical Group nor Yale Plastic Surgery are independent entities, but are part of Yale University. *See* Answer or Yale University ¶¶11 and 13.

## ARGUMENT

### A.   Legal Standard For Summary Judgment

The standard for summary judgment is well settled. Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Jute v. Hamilton Sunstrand Corp.*, 321 F.Supp. 2d 408, 413-14 (D.Conn. 2004) (Covello, *J.*). *See, also., Law v. Camp*, 116 F. Supp. 2d 295 (D. Conn. 2000); *Westbrook Ins. Co. v. Jeter*, 2000 WL 1584574 (D. Conn. 2000); *Zephyr v. Ortho McNeil Pharm.*, 62 F. Supp. 2d 599 (D. Conn. 1999).

---

[6] A transcript of the proceeding was ordered and has not yet been received.

4

"In determining whether a genuine issue of material fact exist[s], the court must consider the *competency* of the evidence on which the plaintiffs relied to substantiate their adverse claim." *Drew v. William W. Backus Hosp.*, 77 Conn. App. 645, 665 (2003) (emphasis in original). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." *Barrett*, 232 Conn. at 255 (internal quotation marks omitted). "The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." *Wilson v. City of New Haven*, 213 Conn. 277, 279 (1989).

### B.  Plaintiff Cannot Maintain Her Medical Malpractice Claims Against Defendants Without Expert Testimony

"To prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." *Gold v. Greenwich Hosp.*, 262 Conn. 248, 254-55 (2002). It is well established that in a medical malpractice action, a plaintiff must prove these elements <u>through expert testimony</u>. *Williams v. Chameides*, 26 Conn. App. 818, 822 (1992) (*quoting Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C.*, 24 Conn. App. 99, 102-103 (1991)), *cert. denied*, 221 Conn. 923 (1992); *see also, Pisel*, 180 Conn. at 334-42 (1980); *Stowe v. McHugh*, 46 Conn. App. 391, 394, 699 A.2d 279, *cert. denied*, 243 Conn. 932, 701 A.2d 662 (1997). Without proof of these elements through the introduction of expert testimony, the plaintiff's medical malpractice action fails.

Plaintiff has testified that she does not have an expert who will testify at trial that Dr. Persing deviated from the standard of care. See Transcript June 19, 2006 hearing on Motion to Dismiss and pending motions. Furthermore, Dr. Persing and Dr. Grant will testify that Dr.

Persing did not deviate from the standard of care. See Affidavit Dr. John Persing ¶7 attached as **Exhibit I**. See also, **Exhibit J**. With no expert to testify on her behalf, plaintiff cannot meet her burden of proof. Thus, plaintiff's claims of medical malpractice against defendants must fail and defendants are entitled to summary judgment on those allegations.

**C.    Plaintiff has not alleged the necessary elements or facts to support claims of fraud, intentional infliction of emotional distress, recklessness, assault and battery, trespass and intentional tort in her Amended Complaint.**

Claims in pro se plaintiffs' complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S 519, 520 (1972). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90,95 (2d Cir. 1983) (citations omitted). Moreover, Rule 8, Fed.R.Civ.P., requires, at a minimum, that a complaint provide each defendant with "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ferro v. Ry. ExpressAgency, Inc.,* 296 F.2d 847, 851 (2d Cir. 1961).

At the June 19, 2006 hearing, plaintiff argued that, in addition to her claims of medical malpractice and informed consent, her Amended Complaint asserted causes of action for fraud, intentional infliction of emotional distress, recklessness, assault and battery, trespass and tort. It does not. At most, plaintiff's Amended Complaint makes claims for medical malpractice and lack of informed consent. *See* Amended Complaint Count One ¶¶177-193 and Count Two, 215-224. To the extent plaintiff's Amended Complaint is supposed to be grounded on the torts of fraud, intentional tort, intentional infliction of emotional distress, recklessness, assault and battery and trespass, summary judgment should be entered in favor of defendants because she has failed to allege the elements and facts necessary to support such claims. Each tort that plaintiff purports to allege will be examined in turn.

### 1. *Plaintiff has not alleged a claim of fraud.*

"The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Wallenta v. Moscowitz*, 81 Conn.App. 213, 219 (Conn.App. 2004). Further, under Rule 9(b) of Federal Rules of Civil Practice, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Fed.R.Civ.P. 9(b)*. "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "In addition, the complaint should explain how the misrepresentations were fraudulent and 'plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (citing *Connecticut Nat'l. Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)).

Plaintiff's only reference to "fraud" appears in paragraphs 164 and 166 of Count One of her Amended Complaint wherein she alleges that Dr. Persing "fraudulently misrepresented the nature of the incision he was going to make..." and failed to inform her that another procedure "known as an Endoscopic Forehead Lift, was the alternative procedure most often used to effect the same goal." *See* Amended Complaint, Count One ¶¶164 and 166. Presumably, plaintiff believes that such allegations support a claim for fraud. They do not, nor do any other allegations in plaintiff's Amended Complaint. Plaintiff's allegations arise in the context of her

7

claims that Dr. Persing failed to fully inform her of the risks and alternative procedures and that she did not consent to the specific way in which Dr. Persing performed the procedure. These allegations rest squarely in plaintiff's claims for lack of informed consent, not fraud.

Additionally, at a minimum, plaintiff was required to allege facts to demonstrate that Dr. Persing intended to defraud her. Nowhere in the Amended Complaint has plaintiff alleged facts that support an inference that Dr. Persing intended to defraud her or that he did so with reckless disregard for the truth. Quite to the contrary, the undisputed evidence shows that Dr. Persing obtained consent for the procedures performed and met the standard of care in performing these procedures. *See* Amended Complaint ¶¶63, 64, 72 and 118. *See also*, Consent Form attached as **Exhibit B,** Affidavit of Dr. Persing ¶7, attached as **Exhibit I** and Defendant's Disclosure of Expert attached as **Exhibit J**. Consequently, plaintiff cannot satisfy her burden under Rule 9(b) and allege any facts that support a claim of fraud. Therefore, summary judgment should enter in favor of defendants on this alleged claim.

2. *Plaintiff has not alleged the necessary elements or facts to support a claim of intentional infliction of emotional distress*

The elements of intentional infliction of emotional distress in Connecticut are well-established. *See Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (citing *Appleton v. Bd. of Edu. of the Town of Stonington*, 254 Conn. 250, 253 (2000)). "In order for the plaintiff to prevail in a case for liability under ... [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was

8

severe... *Petyan v. Ellis*, 200 Conn. 243, 253, (1986)." (Internal quotation marks omitted.) *Appleton v. Board of Education, supra,* at 210.

> The Connecticut Supreme court in *Appleton* explained:
>
> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society.... *Petyan v. Ellis, supra,* 200 Conn. at 254 n. 5, *quoting W. Prosser & W. Keeton, Torts* (5th Ed.1984) § 12, p. 60. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. *Mellaly v. Eastman Kodak Co.,* 42 Conn.Supp. 17, 19, (1991). (Internal quotation marks omitted.)

*Appleton v. Board of Education, supra,* 254 Conn. at 210-11.

Whether defendants' conduct was sufficiently "extreme and outrageous" is initially a question for the court to decide. *Id.* at 253 (*quoting Bell v. Bd. of Educ.* 55 Conn.App. 400, 409-410 (1999)); *Whitaker v. Haynes Const. Co. Inc.,* 167 F. Supp. 2d 251, 254 (D.Conn. 2001). Only where reasonable minds may disagree on this question does it become an issue for a jury. Id. In this case, plaintiff cannot meet this burden.

Plaintiff alleges in her Amended Complaint that "[a]s a direct an proximate result of the surgical actions taken without consent by Dr. Persing ... the plaintiff suffered and continues to suffer emotional distress." *See* Amended Complaint, ¶¶192 and 223, *See also,* Amended Complaint ¶¶134,138-139 and 144.[7] This limited allegation presumably forms the basis for plaintiff's belief that she has alleged a claim for intentional infliction of emotional distress. She

---

[7] Emotional injury is alleged throughout the Amended Complaint but consistently in the context of medical malpractice and lack of informed consent.

9

has not. Plaintiff's allegations are merely her alleged damages attached to her medical malpractice and lack of informed consent claim.

The facts of the Amended Complaint allege that four surgical procedures were performed by Dr. Persing on plaintiff's face and that plaintiff was unhappy with the results. Plaintiff has not and cannot allege any facts to support a claim that Dr. Persing intended to cause emotional distress. Moreover, plaintiff cannot allege any supportable facts that would sustain a claim that Dr. Persing intended to cause her emotional distress or that his conduct was, in any way, extreme or outrageous. In a fair reading of the Amended Complaint, plaintiff alleges that the surgical procedures took place and she was unhappy with the results. *See* Amended Complaint ¶¶124-128 and Counts One and Two. She alleges that she was not fully informed regarding the procedures performed and she alleges that she did not consent to the way in which certain procedures were performed. *See* Amended Complaint Counts One and Two. As a result, she claims she suffered physical and emotional injuires. *See* Amended Complaint ¶¶134, 138-139, 144, 192 and 223. Clearly, her allegations are that the emotional distress is a result of the alleged medical malpractice and lack of informed consent and nothing else. Plaintiff has not alleged any facts that would support a claim for intentional infliction of emotional distress. Therefore, summary judgment should enter in defendants' favor.

3.    *Plaintiff has not alleged the necessary facts to support a claim of recklessness*

It is clear that the facts and allegations of plaintiff's Amended Complaint do not support a claim for recklessness. *See, e.g., Matthiessen v. Vanech*, 266 Conn. 822, 832 (2003) ("Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk

substantially greater than that which is necessary to make his conduct negligent.") (quotation marks and alteration omitted). Under Connecticut law, the mere use of the words "reckless" and "wanton" or "willful" in a complaint is insufficient to raise an actionable claim of reckless and wanton misconduct. *Sheiman v. Lafayette Bank & Trust Co.*, 4 Conn. App. 39, 46 (1985), citing *Kostuik v. Queally*, 159 Conn. 91, 94 (1970).

In *Kostuik*, 159 Conn. at 94, the Connecticut Supreme Court stated that "[t]here is a wide difference between negligence and a reckless disregard of the rights or safety of others...." *Id.*, quoting *Brock v. Waldron*, 127 Conn. 79, 81 (1940). "Simply using the word 'reckless' or 'recklessness' is not enough. A specific allegation setting out the conduct that is claimed to be reckless ... must be made." *Dumond v. Denehy*, 145 Conn. 88, 91 (1958). Further elaborating, in *Dubay v. Irish*, 207 Conn. 518, 532, (1988), our Connecticut Supreme Court defined recklessness as

> a state of consciousness with reference to the consequences of one's acts. It is more than negligence, more than gross negligence. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them.

*Id.* (citations omitted). "Reckless", "wanton" and "willful" have often been used interchangeably. *Id.*, at 533. Wilful misconduct, the Court noted,

> has been defined as intentional conduct designed to injure for which there is no just cause or excuse. Its characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. Not only the action producing the injury but the resulting injury also must be intentional.

Id. at 533 (citations omitted). Consequently, "[w]hile [Connecticut courts] have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing." Id.; see also State v. Alterio, 154 Conn. 23,

11

25-26 (1966) ("Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct.").

Here, plaintiff alleged negligence. *See* Amended Complaint Counts One and Two. Specifically, she alleged that Dr. Persing improperly performed the Rhinoplasty, Septoplasty. *See* Amended Complaint Count Two. She further alleged that Dr. Persing improperly performed the "Brow Lift " leaving a "zigzagged scar". *See* Amended Complaint Count One. Plaintiff's other claim is lack of informed consent. She alleged that Dr. Persing did not adequately inform her of the risks, alternatives and consequences of the procedures. *See* Amended Complaint Counts One and Two. Now she is claiming that the Dr. Persing's alleged improper performance of the "Brow Lift" and his alleged failure to obtain adequate consent was reckless.

The allegations contained in the Amended Complaint are insufficient to demonstrate reckless or intentional misconduct as a matter of law. Plaintiff underwent four outpatient plastic surgery procedures performed by Dr. Persing. See Amended Complaint ¶¶63, 64, 72, 118 and 124-128. After the procedures were performed, she was unhappy with the results. She alleges that she now has a "zigzagged" scar on her forehead, *see* Amended Complaint ¶¶178, and her "hanging columnella greater and more asymmetrical than the one before, and made the nose more bulbous, less refined and more asymmetrical than it was before." See Amended Complaint ¶¶209. However, plaintiff has alleged no conduct that could be reasonably construed as intentionally injurious conduct designed to injure her. As such, plaintiff has not alleged a claim of recklessness and summary judgment should enter in favor of defendants.

4.  *Plaintiff has not alleged the necessary elements or facts to support a claim of assault and battery*

For good reason, the Connecticut Supreme Court has narrowly circumscribed the applicability of intentional tort claims, such as assault and battery, in the medical context. "The theory of battery as a basis for recovery against a physician has generally been limited to situations where he fails to obtain any consent to the particular treatment or performs a different procedure from the one for which consent has been given, or where he realizes that the patient does not understand what the operation entails." *Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 289 (1983) (citations omitted); *see also Lambert v. Stovell*, 205 Conn. 1, 4 (1987). Similarly, the Appellate Court of Connecticut has stated: "Our courts have long adhered to the principle that the theory of *assault* or *battery* as a basis for recovery against a physician is applicable to the situation where that physician fails to obtain any consent at all from his patient prior to performing an operation, or 'performs a different procedure from the one for which consent has been given . . . .'" *Shenefield v. Greenwich Hosp. Ass'n*, 10 Conn. App. 239, 248 (1987) (citations omitted) (emphasis in original).

A physician's failure to obtain *any* consent is a medical battery. In other words, as the Connecticut Supreme Court explained in *Logan v. Greenwich Hospital Ass'n,*, 191 Conn. 282, the legal issue is whether there has been "an effective consent which would preclude an action for battery." Battery should not be confused with informed consent, as *Logan* instructs: " The failure to make sufficient disclosure ... is ordinarily the basis for claiming lack of informed consent." An informed consent claim presupposes a consent, albeit a claim that it is an ill-informed one. Therefore, plaintiff's claims for lack of consent and assault and battery are

13

synonomous claims, which cannot stand because plaintiff did provide consent for the medical procedures performed on her.

Plaintiff cannot claim the absence of consent with regard to any of the four procedures performed in this case.[8] She has admitted that she consented to and signed a consent form (after having read the form) for the Blepharoplasty, Septoplasty and Rhinoplasty. See Amended Complaint, ¶¶63, 64 and 72; *See also*, Consent Form, attached as **Exhibit B**. Furthermore, plaintiff admitted that she consented to the brow lift. See Amended Complaint, ¶118. Because she provided consent for the very procedures that she alleges caused her injuries, she cannot establish a claim for lack of consent. *See Goodwin v. Danbury Eye Physicians and Surgeons*, 254 Conn. 131, (Court found that because the plaintiff admitted that he gave oral consent to the procedure, there was no basis upon which a jury reasonably could have found that the defendant had failed to obtain any consent for the procedure). Plaintiff's allegations of assault and battery fail as a matter of law, and this Court should therefore enter summary judgment in defendants' favor

    5.    *Plaintiff has not alleged a claim of trespass*

The elements of a common-law trespass are well established. In order to recover on a claim for trespass under the common law, a plaintiff must show "ownership or possessory interest in property; the physical invasion, entry or intrusion by defendant which affects the plaintiff's possessory rights; intent to do that which causes the invasion and a direct injury to the plaintiff's property." *Caltabiano v. Jimmo*, Superior Court, judicial district of Middlesex, Docket No. CV 93 0068929 (May 5, 1995, Higgins, J.) (quoting *Avery v. Spicer*, 90 Conn. 576, 579 (1916)).

---

[8] Plaintiff does not make any claim with regard to the Blepharoplasty. *See* Amended Complaint Counts One and Two.

Plaintiff has not alleged, nor can she, any facts to support a claim of trespass or the necessary elements of trespass. The allegations in this case concern cosmetic plastic surgery and have nothing to do with plaintiff's property. As such, summary judgment should enter in favor of defendants on this claim.

### 6. *Intentional Tort is not a claim in and of itself.*

Intentional Tort is not a cognizable claim in and of itself. Plaintiff has not identified any intentional tort, aside from assault and battery already addressed, *supra*. Under Rule 8, of the Federal Rules of Civil Procedure, the defendants are entitled to "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Ferro v. Ry. ExpressAgency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961). By attempting to allege a claim for "intentional tort", plaintiff has provided defendant with no notice of what she is claiming. As such summary judgment should enter in favor of the defendants to the extent plaintiff is making a claim for "intentional tort".

### D.  Plaintiff Cannot Maintain An Action For Lack Of Informed Consent Against Yale-New Haven Hospital

The Connecticut Supreme Court in *Sherwood v. Danbury Hospital*, ___ Conn. ___ (May 16, 2006) confirmed that, as a general matter, an informed consent claim may not be brought against a hospital. The Court held in *Sherwood*:

> We agree with the courts of Oklahoma and Washington that "[t]o impose upon a hospital the duty to inform would be to require a hospital to intervene into the physician/patient relationship, more disruptive than beneficial to [the] patient. ... In short ... it [is] the duty of the physician ... rather that the hospital filling the physician's orders, to inform patients of the risks, general and specific, involved in the surgical procedures." (Citations Omitted; internal quotation marks omitted).

*Id.* at ___, citing, *Goss v. Oklahoma Blood Institute* 856 P.2d 998, 1007 (Okla. Ct. App. 1990), quoting *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wash. 2d at 55-56.

15

It is well settled in Connecticut that a hospital has "no duty to obtain [a patient's] informed consent for surgery to be performed by a nonemployee physician" or "that a hospital, whose facilities are utilized by independent physicians, as a kind of surety, must guarantee that informed consent is obtained prior to the commencement of any surgical procedure." *Petriello v. Kalman*, 214 Conn. 377, 384–85 (1990) (citing *Logan v. Greenwich Hosp. Ass'n*, 191 Conn. 282, 292, 306 (1983)) see also, *Sherwood v. Danbury Hospital*, ___ Conn. ___ (May 16, 2006). Rather, it is the non-employee surgeon's "responsibility, and his responsibility alone, to obtain the informed consent of his patient, prior to commencing any surgical procedure." *Petriello*, 214 Conn. at 387–88. As the Court in *Goss v. Oklahoma Blood Institute*, 856 P.2d 998, 1001, 1006–07 (Okla. Ct. App. 1990) explained, there is *no authority* "imposing a like duty on *hospitals* to inform patients of potential risks and/or available alternatives to a particular procedure or treatment." *Id.* at 1007 (emphasis in original). Instead, it found that authority from other jurisdictions "reveals a consistent rejection of imposition of the duty to inform on hospitals, even in the presence of a statutorily mandated duty to inform." *Id.* (collecting cases). It, therefore, held that the plaintiff could not proceed against the hospital:

> Like these jurisdictions, we now refuse to impose upon hospitals the duty to inform patients of the material risks of a procedure prescribed by the patient's physician. To impose upon a hospital the duty to inform would be to require a hospital to intervene into the physician/patient relationship, more disruptive than beneficial to [the] patient.

*Id.* (internal quotation marks and citations omitted).

In refusing to impose a duty on hospitals to inform patients of the risks and alternatives involved with procedures performed by non-employee physicians, courts have consistently explained that such a duty would force hospitals to interject themselves unwisely into the physician-patient relationship, to the possible detriment of the patient. *Goss v. Oklahoma Blood*

16

*Inst.*, 856 P.2d 998, 1001, 1007 (Okla. Ct. App. 1990) (citing *Howell v. Spokane & Inland Empire Blood Bank*, 785 P.2d 815, 822 (Wash. 1990), and *Alexander v. Gonser*, 711 P.2d 347, 351 (Wash. Ct. App. 1985)); *accord, e.g., Giese v. Stice*, 567 N.W.2d 156, 164 (Neb. 1997); *Cooper v. Curry*, 589 P.2d 201, 204 (N.M. Ct. App. 1978); *Parr v. Palmyra Park Hosp.*, 228 S.E.2d 596, 598 (Ga. Ct. App. 1976). As the court in *Roberson v. Menorah Medical Center* explained:

> The presentation to the patient of risks involved in prospective surgery cannot but call for some very nice judgments. On the one hand the patient is entitled to such information as he needs to make an intelligent decision and to give an informed intelligent consent. And yet the patient may have his apprehensions unnecessarily and unduly heightened if risks are unwisely presented, leading him to an imprudent choice. Risks must be placed in perspective. The one dealing with the patient at this point must have knowledge of the patient, his temperament, his intelligence, his mental condition and his physical condition. He must also have a knowledge of the surgery itself, its risks, whether imminent or remote, and whether it is pressing, deferrable or optional. He must know the availability of conservative methods of treatment, if any, and their promises for success as compared to the surgery. All these factors must be placed in the equation. The physician alone is equipped to make the delicate judgments called for.

588 S.W.2d 134, 137 (Mo. Ct. App. 1979) (citing *Fiorentino v. Wenger*, 280 N.Y.S.2d 373 (1967)).[9]

In this case, at all relevant times, Dr. Persing was an employee of Yale University and not an employee of Yale-New Haven Hospital. See Affidavits of Dr. Persing, Alisa Fay and Julie Carter, attached as **Exhibits I and K.** Because case law makes clear that the Hospital owed Ms. Egan no duty to obtain her consent itself or to ensure that her private treating physician did so, this Court should grant summary judgment in favor of Yale-New Haven Hospital.

---

[9] Regardless of the distinction between the torts of lack of informed consent or failure to obtain any consent, one element remains common to both – the need to establish a duty on the part of the alleged tortfeasor to obtain consent. In this case, however, as has been clearly articulated above, the Hospital had no duty to obtain Ms. Egan's consent or to insure that such consent had been obtained by her private physician. *See supra.*

## CONCLUSION

With respect to her medical malpractice claim, the plaintiff bears the burden of proving (through competent expert testimony), as a necessary element of her cause of action, that Dr. Persing deviated from the standard of care in performing plastic surgery on her. She does not have any expert who will testify regarding standard of care or any alleged deviation from the standard of care. Further, plaintiff has failed to allege the necessary elements or facts to support claims for fraud, intentional infliction of emotional distress, recklessness, assault and battery, trespass and "intentional tort". And finally, Yale-New Haven Hospital owed Ms. Egan no duty to obtain her consent itself or to ensure that her private treating physician did so.

Accordingly, defendants are entitled to the entry of judgment as a matter of law with respect to these claims.

RESPECTFULLY SUBMITTED BY
DEFENDANTS,
YALE UNIVERSITY D/B/A
YALE MEDICAL GROUP
YALE PLASTIC SURGERY
YALE-NEW HAVEN HOSPITAL
JOHN PERSING, M.D.

By: _____
Penny Q. Seaman (ct05813)
Kevin S. Budge (ct19097)
Wiggin and Dana LLP
P. O. Box 1832
New Haven, CT 06508-1832
Tel: (203) 498-4400; Fax: (203) 782-2889
Email: pseaman@wiggin.com
       kbudge@wiggin.com

## CERTIFICATION

I hereby certify that on this 5th day of July 2006, a copy of the foregoing was sent via Federal Express to the following pro se party of record:

Lisa Egan, n/k/a Hadley Macpherson
2015 McKenzie Creek Drive
Charlotte, NC 28270

Kevin S. Budge

\487\5009\601271.3